## UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUL-BUR ASSOCIATES INC. AND JULIE'S BOTTEGA**<br><br>                              **Plaintiffs,**<br><br>       **vs.**<br><br>**SELECTIVE INSURANCE COMPANY OF AMERICA and SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST**<br><br>                                        **Defendants.** | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Jul-Bur Associates, Inc., and Julie's Bottega, bring this Complaint, alleging against Defendants, Selective Insurance Company of America and Selective Insurance Company of the Southeast, as follows:

## I.   NATURE OF THE CASE

1.      This is a civil action seeking declaratory relief arising from Plaintiffs' contract of insurance with the Defendants.

2.      In light of the Coronavirus global pandemic and state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home, Plaintiffs shut their doors on March 16, 2020.

3.      Plaintiffs' insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.      As a result, Plaintiffs are entitled to declaratory relief that their business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## II.   JURISDICTION

5.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiffs and the Defendants.

Plaintiffs are a Pennsylvania Corporation.  Defendant Selective Insurance Company of America is a New Jersey Corporation with its principal place of business in New Jersey. Defendant Selective Insurance Company of the Southeast is an Indiana Corporation with its principal place of business in Indiana.  Further, Plaintiff have suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value those business losses. *Id.* at § 1332(a).

6.      The Court has personal jurisdiction over the Defendants because at all relevant times they have engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times Defendants transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the Defendants are corporations that have substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result are subject to personal jurisdiction in this District.

8.      The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.    **PARTIES**

9.      At all relevant times, Plaintiffs Jul-Bur Associates, Inc and Julie's Bottega (Julie's Bottega") was authorized to do business and was doing business in the Commonwealth of Pennsylvania, County of Montgomery, Lower Merion Township, in Bala Cynwyd, PA, 19004. Julie's Bottega owns, operates, manages, and/or controls a retail clothing store located at 156 Montgomery Avenue, Bala Cynwyd, PA 19004-2969.

10.     At all relevant times, Defendants Selective Insurance Company of America and Selective Insurance Company of the Southeast (collectively hereinafter referred to as "Selective") are corporations doing business in the Commonwealth of Pennsylvania, subscribing to Policy Number S 2273553 issued to the Plaintiffs for the period of March 15, 2020 to March 15, 2021. *See* Policy Declaration page, attached hereto as Exhibit 1. Defendants Selective transact business of insurance in the Commonwealth of Pennsylvania and within the County of Montgomery and the basis of this suit arises out of such conduct.

### IV.    FACTUAL BACKGROUND

#### A.    Insurance Coverage

11.     On or about March 15, 2020, Selective entered into a contract of insurance with the Plaintiffs, whereby Plaintiffs agreed to make payments to Selective in exchange for the Defendants' promise to indemnify the Plaintiffs for losses including, but not limited to, business income losses at Plaintiffs' place of business located in Bala Cynwyd, PA at the address noted above in this Complaint (the "Insured Property").

12.     The Insured Property consists of offices and a retail store located at 156 Montgomery Avenue, Bala Cynwyd, PA 19004-2969 which is owned, leased by, managed, and/or controlled by the Plaintiffs.

13.     The Insured Property is covered under a policy issued by Selective with Policy Number S 2273553 (hereinafter "Policy").

14.     The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages between the period of March 15, 2020 through March 15, 2021.

15.     Plaintiffs faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order

of Civil Authority.

16. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiffs' Insured Property. This additional coverage is identified as coverage under "Civil Authority."

17. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

18. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic.

19. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here.

**B.      The Coronavirus Pandemic**

20. The scientific community, and those personally affected by the virus, recognize the Coronavirus (also known as Covid-19) as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the offices and retail store constituting the Insured Property.

21. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three

days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

22.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

23.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

24.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

## C.     Civil Authority

25.     On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, the first formal recognition of an emergency situation in the Commonwealth as a result of COVID-19. *See* Exhibit 2.

26.     On March 19, 2020 Governor Wolf issued an Order requiring all non-life-sustaining businesses in Commonwealth to cease operations and close all physical locations. Businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control."

*See* Exhibit 3;  https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited April 7, 2019).

27.     On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. *See* Exhibit 4. On that same date, the Pennsylvania Department of Health issued a similar Order, noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary

gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit 5.

28.     On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit 6.

29.     The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

30.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when

they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

31.     The President is articulating a few core points:

    a.     Business interruption is a common type of insurance, especially for restaurants (and by extension, other forms of retail establishments).

    b.     Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.     This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.     If insurers deny coverage, they would be acting in bad faith

32.     These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

### D.     Impact on Julie's Bottega

33.     As a result of the Orders referenced herein, Plaintiffs ceased retail operations on March 16, 2020 and continues to be shutdown.

34.     As a further direct and proximate result of the Orders, Plaintiffs have been forced to lay off a part-time employee.

35.     Plaintiffs' business, prior to the Orders, had normal business hours of Monday through Saturday, from 10 am to 5 pm, each day.

36.     The months of March and April are typically the business months of the year for Plaintiffs 'business, and during those months, Plaintiffs typically held "trunk shows" involving the showing of a variety of the kinds of goods and materials that Plaintiffs sold, i.e., clothing,

accessories, etc., which typically attracted a high volume of customers entering the Insured Property to view the goods and materials being displayed in the trunk shows. The trunk shows typically caused high foot traffic into the Insured Property of Plaintiffs.

37.     Plaintiffs' business is not a closed environment, and because people – staff, customers, community members, and others – cycle in and out of the retail store, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated. Such risk of contamination would have been heightened during March and April because of the aforesaid trunk shows causing high foot traffic inside of the Insured Property.

38.     The Insured Property is more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to other facilities with open-air ventilation.

39.     Plaintiffs' business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the staff require them to work in  close proximity to one another and because staff routinely assist customers in selecting clothing, provide tailoring services, and assist in customers in trying on clothing for fit..

40.     The virus is physically impacting Julie's Bottega and the Insured Property. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiffs and the public.

41.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiffs from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary.  As a result of these Orders, Plaintiffs have incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## V.   <u>CAUSE OF ACTION</u>
## DECLARATORY RELIEF

42.     Plaintiffs re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

43.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder*, No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut. Grp.*, 97 F. Supp. 2d 672 (W.D. Pa. 2000).

44.     An actual controversy has arisen between Plaintiffs and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiffs contend and, on information and belief, the Defendants disputes and denies that:

   a.     The Orders constitute a prohibition of access to Plaintiffs' Insured Property;

   b.     The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c.     The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here.

   d.     The Orders trigger coverage;

   e.     The Policy provides coverage to Plaintiffs for any current and future civil authority closures of retail establishments in Montgomery County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

   f.      The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

   g.     Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

45.     Plaintiffs seeks a Declaratory Judgement to determine whether the Orders constitute

a prohibition of access to Plaintiffs' Insured Property as Civil Authority as defined in the Policy.

46.    Plaintiffs further seek a Declaratory Judgement to affirm that the Orders trigger coverage.

47.    Plaintiffs further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future Civil Authority closures of retail businesses such as Plaintiffs' in Montgomery County due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

48.    Plaintiffs do not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

1)    For a declaration that the Orders constitute a prohibition of access to Plaintiffs' Insured Property.

2)    For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3)    For a declaration that the Orders trigger coverage under the Policy.

4)    For a declaration that the Policy provides coverage to Plaintiffs for any current, future and continued civil authority closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5)    For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiffs' Insured Property or the immediate area of the Plaintiffs' Insured Property.

6)    For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: April 21, 2020                          Respectfully submitted,

                                               */s/ Richard M. Golomb*
                                               Richard M. Golomb, Esq.
                                               Kenneth J. Grunfeld, Esq.
                                               **GOLOMB & HONIK, P.C.**
                                               1835 Market Street, Suite 2900
                                               Philadelphia, PA 19103
                                               Telephone: (215) 985-9177
                                               Facsimile: (215) 985-4169
                                               rgolomb@golombhonik.com
                                               kgrunfeld@golombhonik.com

                                               Arnold Levin, Esq.
                                               Laurence S. Berman,
                                               Esq.
                                               Frederick Longer, Esq.
                                               Daniel Levin, Esq.
                                               **LEVIN SEDRAN & BERMAN, L.L.P.**
                                               510 Walnut Street, Suite 500
                                               Philadelphia, PA 19106-3697
                                               Telephone: (215) 592-1500
                                               alevin@lfsblaw.com
                                               lberman@lfsblaw.com
                                               flonger@lfsblaw.com
                                               dlevin@lfsblaw.com

                                               ***Counsel for Plaintiff***