## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JUL-BUR ASSOCIATES, INC. and JULIE'S BOTTEGA, | : CIVIL ACTION : : Case No. 2:20-cv-01977-TJS |
| Plaintiffs | : : |
| v. | : : |
| SELECTIVE INSURANCE COMPANY OF AMERICA and SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | : : : : |
| Defendants. | : : |

### ORDER

AND NOW, on this _____ day of _____, 2020, upon consideration of the motion by Defendants, Selective Insurance Company of America and Selective Insurance Company of the Southeast, to Dismiss Plaintiffs' Amended Complaint, and any response to it, it is hereby ORDERED that the Motion is GRANTED.

BY THE COURT,

_____
                                                                                                      J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JUL-BUR ASSOCIATES, INC. and JULIE'S BOTTEGA, | : : | CIVIL ACTION |
| | : | Case no. 2:20-cv-01977-TJS |
| Plaintiffs | : : | |
| v. | : : | |
| SELECTIVE INSURANCE COMPANY OF AMERICA and SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | : : : | |
| Defendants. | : : | |

---

**MOTION BY SELECTIVE INSURANCE COMPANY OF AMERICA
AND SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

Defendants, Selective Insurance Company of America and Selective Insurance Company of the Southeast (collectively "Selective"), move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint of Plaintiffs, Jul-Bur Associates, Inc. and Julie's Bottega. In support of this motion, Selective relies on and incorporates by reference the accompanying memorandum and exhibit.[1]

---

[1] This case has been identified as a member case in *In re: COVID-19 Business Interruption Insurance Coverage Litigation*, MDL no. 2942. The Panel has not entered a transfer order. Accordingly, jurisdiction remains with this Court. Glasstech, Inc. v. AB Kyro OY, 769 F.2d 1574 (Fed. Cir. 1985) (finding that jurisdiction remained with the U.S. District Court for the District of Michigan until the U.S. Judicial Panel on Multidistrict Litigation entered its order transferring the case to the U.S. District Court for the Northern District of Ohio.).

Respectfully submitted,

Dated: July 22, 2020

/s/ David Smith
David Smith (Pa. I.D. 21480)
Theresa E. Loscalzo (Pa. I.D. 52031)
Raymond J. Hunter (Pa. I.D. 87797)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Attorneys for defendants, Selective Insurance
Company of America and Selective Insurance
Company of the Southeast*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JUL-BUR ASSOCIATES, INC. and JULIE'S BOTTEGA, | : | CIVIL ACTION |
|  | : |  |
|  | : | Case no. 2:20-cv-01977-TJS |
| Plaintiffs | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SELECTIVE INSURANCE COMPANY OF AMERICA and SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | : |  |
|  | : |  |
| Defendants | : |  |

**MEMORANDUM OF LAW OF SELECTIVE INSURANCE COMPANY
OF AMERICA AND SELECTIVE INSURANCE COMPANY
OF THE SOUTHEAST IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

Respectfully submitted,

Dated: July 22, 2020

*/s/ David Smith*
David Smith (Pa. I.D. 21480)
Theresa E. Loscalzo (Pa. I.D. 52031)
Raymond J. Hunter (Pa. I.D. 87797)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Attorneys for defendants, Selective Insurance
Company of America and Selective Insurance
Company of the Southeast*

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................ii

FACTUAL BACKGROUND ................................................................................. 1

LEGAL STANDARD............................................................................................ 2

ARGUMENT ........................................................................................................ 3

I.      The Civil Authority Provision of the Policy Does Not Cover Loss of Business Income Incurred as a Result of Compliance with the Closure Order Issued by the Governor to Combat the Coronavirus Pandemic. ................................................................ 6

        A.      Plaintiffs Cannot Satisfy the Requirement of a Covered Cause of Loss. ............... 7

        B.      Plaintiffs Have Not Pleaded Damage to "Other Property." ................................. 11

        C.      Plaintiffs Have Not Pleaded That Access to Their Place of Business is Prohibited Because of Damage to Another Property or to Enable a Civil Authority to have Unimpeded Access to the Other Damaged Property. .............. 12

II.     For the Same Reasons Plaintiffs Fail to State a Claim Under the Civil Authority Provision of the Policy, They Cannot State a Claim Under the Loss of Business Income Provision of the Policy.......................................................................... 13

III.    Plaintiffs' Allegation that the Policy is an Unenforceable Contract of Adhesion has no Merit............................................................................................................ 14

IV.     The Doctrine of Reasonable Expectations does not Apply. ........................................... 22

CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*84 Lumber Co., L.P. v. Bryan Const. Co.*,
   No. 2:09-CV-1030, 2011 WL 666209 (W.D. Pa. Feb. 14, 2011)................................16, 17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................2

*Bayne v. Smith*,
   965 A.2d 265 (Pa. Super. Ct. 2009).................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................2

*Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*,
   38 F.3d 1303 (3d Cir. 1994)............................................................................................22

*Brezan v. Prudential Ins. Co. of Am.*,
   507 F. Supp. 962 (E.D. Pa. 1981) ...................................................................................16

*In re Burlington Coat Factory Securities Litigation*,
   114 F.3d 1410 (3d Cir. 1997)............................................................................................2

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)..........................................................................................2, 8

*Denlinger, Inc. v. Dendler*,
   608 A.2d 1061 (Pa. Super Ct. 1992) ...............................................................................16

*Frantz v. Nationwide Ins. Co.*,
   2018 WL 4207742 (M.D. Pa. Sept. 4, 2018) .............................................................22, 23

*Friends of DeVito, et. al v. Wolf*,
   2020 WL 1847100 (Pa. April 13, 2020) ..........................................................................10

*Gavrilides Management Company v. Michigan Insurance Company*,
   20-258-CB (Cir. Ct. Mich., Ungham Cty., July 1, 2020) ..........................................11

*Estate of Hodges v. Meadows*,
   No. 12-CV-01698, 2013 WL 1294480 (E.D. Pa. Mar. 29, 2013)....................................16, 17

*Motorists Mutual Insurance Co. v. Hardinger*,
   131 F. App'x. 823 (3d Cir. 2005) ....................................................................................10

*Reliance Ins. Co. v. Moessner*,
    121 F.3d 895 (3d Cir. 1997)......................................................................................22

*Rezro, Inc. v. Maximo Lanfranco*,
    No. 107 EDA 2015, 2016 WL 597205 (Pa. Super. Ct. Feb. 12, 2016) ...................15

*Rivera v. Marriott International, Inc. & International Hospitality Enterprises,Inc.*,
    No. CV 19-1894 (GAG), 2020 WL 1933968 (D.P.R. Apr. 22, 2020) ....................15

*Social Life Magazine, Inc. v. Sentinel Insurance Company Limited*,
    20 Civ. 3311 (VEC) (S.D.N.Y., May 14, 2020) ....................................................11

*Tricome v. Ebay, Inc.*,
    No. CIV.A.09-2492, 2009 WL 3365873 (E.D. Pa. Oct. 19, 2009).........................16

*Velazquez v. State Farm Fire & Cas. Co.*,
    2020 WL 1942784 (E.D. Pa. Mar. 27, 2020)................................................. *passim*

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007).......................................................................................2

*West v. Lincoln Ben. Life Co.*,
    509 F.3d 160 (3d Cir. 2007).....................................................................................22

*Windowizards, Inc. v. Charter Oak Fire Insurance Company*,
    2015 WL 1400726 (E.D. Pa. March 27, 2015).........................................................9

*Zion Hill Baptist Church of Philadelphia, Inc. & Robert P. Paskings, Esq.,*
    *Custodian of the Assets of Zion Hill Baptist Church of Philadelphia, Inc. v.*
    *Ben Weinstein*,
    1989 WL 817111 (Pa. Ct. Com. Pl. Jan. 6, 1989) ...................................................9


**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .....................................................1, 8, 15, 20

www.juliesbottega.com................................................................................................15

Defendants, Selective Insurance Company of America and Selective Insurance Company of the Southeast (collectively "Selective") submit this memorandum of law in support of their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint of Plaintiffs, Jul-Bur Associates, Inc., and Julie's Bottega.  Plaintiffs' amended complaint should be dismissed because:

1.      The Civil Authority provision of Plaintiffs' insurance policy (the "Policy") does not cover loss of Business Income[2] incurred as a result of compliance with the closure order issued by the Governor to combat the Coronavirus pandemic; and

2.      For the same reasons Plaintiffs fail to state a claim under the Civil Authority provision of the Policy, they cannot state a claim under the loss of Business Income provision of the Policy; and

3.      Plaintiffs' allegation that the Policy is an unenforceable contract of adhesion has no merit; and

4.      The doctrine of reasonable expectations does not apply.

## FACTUAL BACKGROUND

Plaintiffs seek a declaratory judgment that the civil authority coverage in the Businessowners Coverage insurance policy dated March 15, 2020 covers their claimed loss of Business Income incurred when, according to their amended complaint, they "shut their doors on March 16, 2020" "[i]n light of the Coronavirus global pandemic and state orders mandating all

---

[2]      Capitalized terms not defined in this memorandum are defined terms in the Policy.

non-life-sustaining businesses in the Commonwealth to cease operations and stay at home."  Am. Compl. ¶¶ 2, 11.

## <u>LEGAL STANDARD</u>

Plaintiffs' amended complaint must be dismissed because it does not contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiffs' claim is not plausible on its face because Plaintiffs have failed to plead facts that would allow the court to "draw the reasonable inference that the defendant is liable for [their claim]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although there is no probability requirement, plaintiffs must allege more than a "sheer possibility" that the defendant is liable. *Id.*

Plaintiffs' amended complaint cannot withstand the required scrutiny of the *factual* basis for their entitlement to relief. *Twombly*, 550 U.S. at 559.  The Third Circuit has made clear that, unlike *factual* allegations, the "conclusory" allegations in Plaintiffs' amended complaint "are not entitled to assumptions of truth."  *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 225 (3d Cir. 2011) (citing *Twombly*, 550 U.S. at 557).  Therefore, Plaintiffs cannot rely on mere "labels and conclusions, and [their] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Although Plaintiffs did not attach a copy of the insurance policy (the "Policy") under which they claim to their amended complaint, this Court can, and should, consider the dispositive language of the Policy.  *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary

judgment"). The Policy issued to Plaintiffs *the day before* they "shut their doors on March 16, 2020" is both integral to and explicitly relied upon in Plaintiffs' amended complaint. Accordingly, Selective has attached a true and correct copy of the Policy issued to Plaintiffs as Exhibit "A" to this memorandum of law.

## **ARGUMENT**

Plaintiffs' amendments to their complaint (*see* redline attached as Exhibit "B") cannot alter that the Policy does not cover the Business Income Plaintiffs claim to have lost when they "shut their doors" "[i]n light of the Coronavirus global pandemic and state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home." Plaintiffs' new allegation that the Policy is an unenforceable contract of adhesion has no merit and the doctrine of reasonable expectations has no application here.

For ease of reference, the pertinent Policy provisions are set forth below in the order they appear in the Policy:

Section I of the Policy defines the coverage for property damage. The Policy provides on page 1 of 53:

> A.  Coverage
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

Covered Causes of Loss is defined in Section I(A)(3), on page 3 of 53 of the Policy:

> 3.  Covered Causes of Loss
>
> Direct physical loss unless the loss is excluded or limited under Section I — Property.

3

Section I(A)(5), which begins on page 3 of 53, provides for "Additional Coverages," including Section I(A)(5)(f) on page 6 of 53 "Business Income" and Section I(A)(5)(i) on page 9 of 53 "Civil Authority."

Section I(A)(5)(f)(1) defines the Business Income coverage:

(1)     Business Income

      (a)     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Section I(A)(5)(i) defines the Civil Authority coverage:

i.     Civil Authority

      When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

      (1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 1 mile from the damaged property; and

      (2)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Exclusions from Covered Causes of Loss are found in Section I(B) of the policy, which begins on page 17 of 53. Two of the exclusions from Covered Causes of Loss apply here. Section I(B)(1)(a) on page 17 of 53, excludes loss or damage caused directly or indirectly by

ordinance or law; and Section I(B)(1)(j) on page 20 of 53, excludes loss or damage caused directly or indirectly by virus or bacteria.

B.    Exclusions

1.    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

a.    Ordinance Or Law

(1)    The enforcement of or compliance with any ordinance or law.

(a)    Regulating the construction, use or repair of any property; or

(b)    Requiring the tearing down of any property, including the cost of removing its debris.

(2)    This exclusion, Ordinance Or Law, applies whether the loss results from:

(a)    An ordinance or law that is enforced even if the property has not been damaged.

*       *       *

j.    Virus or Bacteria

(1)    Any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

5

I.      The Civil Authority Provision of the Policy Does Not Cover Loss of Business Income
        Incurred as a Result of Compliance with the Closure Order Issued by the Governor to
        Combat the Coronavirus Pandemic.

        Plaintiffs' claim of coverage under the Civil Authority provision of the Policy (Am.

Compl. ¶¶ 15-6) is misplaced because Plaintiffs do not – and cannot – plead facts that satisfy any

of the requirements for coverage under the Civil Authority provision.  Section I(A)(5)(i) of the

Policy provides as follows:

        i.      Civil Authority

                When a Covered Cause of Loss causes damage to property other than
                property at the described premises, we will pay for the actual loss of
                Business Income you sustain and necessary Extra Expense caused by
                action of civil authority that prohibits access to the described premises,
                provided that both of the following apply:

                (1)     Access to the area immediately surrounding the damaged property
                        is prohibited by civil authority as a result of the damage, and the
                        described premises are within that area but are not more than 1
                        mile from the damaged property; and

                (2)     The action of civil authority is taken in response to dangerous
                        physical conditions resulting from the damage or continuation
                        of the Covered Cause of Loss that caused the damage, or the action is
                        taken to enable a civil authority to have unimpeded access to the
                        damaged property.

        The allegations in Plaintiffs' amended complaint demonstrate that Plaintiffs cannot

satisfy the following essential requirements for Civil Authority Coverage:

                (a)     There must have been a "Covered Cause of Loss," which is defined as
                        "[d]irect physical loss unless the loss is excluded or limited under Section
                        I — Property";

                (b)     The "damage" must have been "to a property other than" Plaintiffs'
                        insured place of business; and

                (c)     The civil authority must have prohibited access to Plaintiffs' place of
                        business in response to dangerous physical conditions resulting from the
                        damage or continuation of the Covered Cause of Loss that caused the

damage or to enable the civil authority to have unimpeded access to the damaged property.

All three requirements must be satisfied, but Plaintiffs cannot satisfy any of them.

A.    <u>Plaintiffs Cannot Satisfy the Requirement of a Covered Cause of Loss.</u>

Plaintiffs have no claim under the Policy because neither the Coronavirus pandemic nor the "state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home" can be a Covered Cause of Loss.

The phrase "Covered Cause of Loss" is defined in Section I(A)(3) of the Policy as a "direct physical loss *unless the loss is excluded or limited under Section I — Property*." (emphasis added).

There are two exclusions in Section I — Property that preclude coverage here:

- The Virus or Bacteria exclusion found in Section I(B)(1)(j) excludes any loss or damage caused directly or indirectly from any virus or bacteria;

- The Ordinance or Law exclusion found in Section I(B)(1)(a)(1)(a) excludes loss or damage caused directly or indirectly by ordinance or law.

Both exclusions apply "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area."  Section I(B)(1).

<u>The Virus or Bacteria Exclusion</u>.  Plaintiffs continue to plead in paragraphs 2 and 11 of their amended complaint that they "shut their doors on March 16, 2020" "[i]n light of the Coronavirus global pandemic and state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home," and again in paragraph 33 of their amended complaint that "Plaintiffs' losses were caused by the entry of Civil Authority Orders, particularly those by Governor Wolf and by the Pennsylvania Department of Health, *to mitigate the spread of COVID-19*."  (emphasis added).  Those unavoidable admissions eliminate any

7

plausible argument for a Covered Cause of Loss because the Policy provides (at Section I(B)(1)) that the Virus or Bacteria exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area."

While Plaintiffs assert the Virus or Bacteria exclusion does not apply, that bare conclusion unsupported by any facts, does not provide a basis to avoid dismissal under Rule 12(b)(6). *See Burtch*, 662 F.3d, at 225 (citing *Twombly*, 550 U.S. at 555-57) (finding that "conclusory" allegations in a complaint "are not entitled to assumptions of truth" and that the mere formulaic recitation of the elements of a cause of action are insufficient in terms of defeating a motion to dismiss).

In a futile effort to avoid the Virus or Bacteria exclusion, Plaintiffs allege that the "virus and bacterium exclusions do not apply because Plaintiffs' losses were not *directly* caused by a virus, bacterium or other microorganism, but rather were caused by the entry of Civil Authority Orders by Governor Wolf and by the Pennsylvania Department of Health, to mitigate the spread of COVID-19." Am. Compl. ¶ 33.  (emphasis added).[3]  However, as stated above, Section I(B)(1)(j) excludes loss or damage caused "directly *or indirectly*" by virus or bacteria, "regardless of any other cause or event that contributes concurrently or in any sequence."  For these reasons, the Virus or Bacteria exclusion bars Plaintiffs' claim, and their amended complaint should be dismissed.

---

[3]     In paragraph 69 of their amended complaint, Plaintiffs admit the inaccuracy of their allegation that "Plaintiffs' losses were not *directly* caused by a virus" in alleging that "[t]he virus is . . . physically impacting" Plaintiffs' business and that "[a]ny effort by the Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiffs and the public." Am. Compl. ¶ 69.

The Ordinance or Law Exclusion.  Plaintiffs' claims are also barred by the Ordinance or Law exclusion in Section 1(B)(1)(a), which excludes from coverage loss or damage caused directly or indirectly, and regardless of any other cause or event that contributes concurrently or in any sequence, by the enforcement of or compliance with any ordinance or law regulating the use of any property, without regard to whether the property has been damaged.  Plaintiffs admit that they closed in light of "state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home."  Those state orders are laws "regulating the . . . *use*" of Plaintiffs' property.  *See Windowizards, Inc. v. Charter Oak Fire Insurance Company*, 2015 WL 1400726, at *5 (E.D. Pa. March 27, 2015) (finding that the policy language regarding coverage of "loss or damage caused by the enforcement of any ordinance or law" was triggered at the point in time when action taken by the insured became "necessary under the law") (citing *Regents of Mercersburg College v. Republic Franklin Insurance Co.*, 458 F.3d 159 (3d. Cir. 2006) (holding that the policy language addressing coverage of "Covered Causes of Loss," which were "caused by enforcement of building, zoning or land use ordinance or law" applied under circumstances in which action taken by the insured was mandated by the Americans with Disabilities Act, and the Pennsylvania Handicapped Act)); *see also Zion Hill Baptist Church of Philadelphia, Inc. & Robert P. Paskings, Esq., Custodian of the Assets of Zion Hill Baptist Church of Philadelphia, Inc. v. Ben Weinstein*, 1989 WL 817111 (Pa. Ct. Com. Pl. Jan. 6, 1989) (finding that the "major flaw" in the insured's argument that coverage included the cost of installation of a sprinkler system in their church, which was mandated by a city ordinance, was the fact that the policy contained a specific exclusion for any loss "[o]ccasioned directly or indirectly by enforcement of any local or state ordinance or law regulating the construction, repair, or demolition of buildings and structures.").  Accordingly, the provision

excluding loss or damage caused directly or indirectly by Ordinance or Law also precludes coverage here.

<div align="center">*          *          *</div>

Plaintiffs' claims would not be covered even if the Virus or Bacteria and Ordinance or Law exclusions were not in the Policy.  Business Income coverage requires a "direct *physical* loss," which Plaintiffs do not – and cannot – allege.  Plaintiffs do not allege that the virus was *actually present*; only that the societal need for social distancing required them to shut their doors.  *Friends of DeVito, et. al v. Wolf*, 2020 WL 1847100 (Pa. April 13, 2020) (a copy of which is attached as Exhibit "C."), cited by Plaintiffs in support of their conclusory statement in paragraph 50 of their amended complaint that "physical loss and damage exists resulting in coverage here," does not help.  The issue in *Friends of DeVito* was whether Governor Wolf had the authority to order businesses to close.  *Friends of DeVito* does not pertain in any way to insurance or interpretation of contracts (insurance or otherwise), or to the definition and scope of the phrase "direct physical loss."

Cases decided by the Third Circuit Court of Appeals offer no support for Plaintiffs' argument that government regulation of the use of business premises to control the spread of the Coronavirus is a "direct *physical* loss of or damage to" property.  For example, in *Motorists Mutual Insurance Co. v. Hardinger*, 131 F. App'x. 823 (3d Cir. 2005), plaintiff's residential well was alleged to have been *actually contaminated* with e-coli bacteria and that the contamination rendered plaintiff's home uninhabitable and totally precluded plaintiff's use thereof.  *Id.* at 824.[4]

---

[4]     *See Hardinger*, 131 F. App'x at 828 (finding that there existed a genuine issue of material fact with respect to the issue of whether plaintiff's home, having been rendered uninhabitable as a result of e-coli bacteria contamination of plaintiff's well, constituted
*…Continued*

By contrast, as noted above, the Plaintiffs here fail to plead that any relevant property was *actually contaminated* with COVID-19.  Even if *actual* COVID-19 contamination could, in theory, constitute direct physical loss or damage, the mere *risk* of such contamination would fail to qualify as such.[5]

Plaintiffs' inability to plead a Covered Cause of Loss mandates dismissal of their amended complaint.

B.    Plaintiffs Have Not Pleaded Damage to "Other Property."

For there to be coverage for acts of civil authority under Section 1(A)(5)(i), the damage caused by the Covered Cause of Loss must be to property *other than* Plaintiffs' insured property. Plaintiffs' amended complaint is devoid of any allegations of damage to property other than their own.  Rather, the allegations in Plaintiffs' amended complaint address only alleged damage to

---

*Continued from previous page*

"direct physical loss") and the New Jersey federal case on which it relied, *Port Authority of New York & New Jersey Affiliated FM Insurance Co.*, 311 F.3d 226 (3d Cir. 2002) (applying New Jersey law and holding that "actual release" of asbestos fibers at the insured property which did not cause any physical damage to the structures but rendered the structures "useless or uninhabitable" constituted "physical loss or damage").

[5]    See also the May 14, 2020 transcript of oral arguments in *Social Life Magazine, Inc. v. Sentinel Insurance Company Limited*, 20 Civ. 3311 (VEC) (S.D.N.Y., May 14, 2020) (denying the plaintiff-insured's motion for a preliminary injunction and finding that the pandemic-related governmental closure orders which resulted in loss of use of plaintiff's business did not constitute damage to property because the Coronavirus "damages lungs. It doesn't damage printing presses.") and the July 1, 2020 transcript of oral arguments in *Gavrilides Management Company v. Michigan Insurance Company*, 20-258-CB (Cir. Ct. Mich., Ungham Cty., July 1, 2020) and corresponding July 21, 2020 Order (granting defendant-insurer's motion for summary disposition and finding that no "direct physical loss of or damage to" the plaintiff's restaurant was sustained as a result of pandemic-related governmental orders restricting business operations because direct physical loss of or damage to property "has to be something with material existence.  Something that is tangible . . . that alters the physical integrity of the property.") attached as Exhibit C.

Plaintiffs' Insured Property.  For this reason as well, Plaintiffs' amended complaint should be dismissed.

C.      Plaintiffs Have Not Pleaded That Access to Their Place of Business is Prohibited Because of Damage to Another Property or to Enable a Civil Authority to have Unimpeded Access to the Other Damaged Property.

Plaintiffs fail to state a claim for which relief can be granted for the additional reason that they do not – and cannot – allege that access to their place of business has been prohibited by a civil authority because of physical damage that a Covered Cause of Loss has caused another property within a mile of their place of business or to enable a civil authority to have unimpeded access to the other damaged property.  Section I(A)(5)(i) requires both of the following to be satisfied for there to be coverage for an act of a civil authority that prohibits access to the Plaintiffs' place of business:

(1)      Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 1 mile from the damaged property; and

(2)      The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Again, Plaintiffs' amended complaint is devoid of any allegations of damage or impeded access to any property other than their own.  Rather, the allegations in Plaintiffs' amended complaint address only alleged damage and impeded access to Plaintiffs' Insured Property.  For this reason as well, Plaintiffs' amended complaint should be dismissed.

II.   For the Same Reasons Plaintiffs Fail to State a Claim Under the Civil Authority Provision of the Policy, They Cannot State a Claim Under the Loss of Business Income Provision of the Policy.

Plaintiffs would fare no better if they were to shift their emphasis to the Loss of Business Income coverage provision in Section I(A)(5)(f)(1) because that section also requires a Covered Cause of Loss and direct physical loss of or damage to property, as follows:

(1)   Business Income

(a)   We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

Plaintiffs do not – and cannot – satisfy the Policy requirement that loss of Business Income "must be caused by or result from a Covered Cause of Loss." Again, the phrase "Covered Causes of Loss" is defined in Section I(A)(3), on page 3 of 53 of the Policy as a "[d]irect physical loss *unless the loss is excluded or limited* under Section I — Property."

As discussed at length above, there are two exclusions that preclude coverage:

- Excludes loss or damage caused directly or indirectly by virus or bacteria. Section I(B)(1)(j) on page 20 of 53.

- Exclusion of loss or damage caused directly or indirectly by ordinance or law Section I(B)(1)(a) on page 17 of 53; and

Consequently, Plaintiffs fail to sufficiently plead a "Covered Cause of Loss" under the loss of Business Income provision.

Further, the language of the loss of Business Income provision is clear: the suspension of business operations "must be caused by direct physical loss of or damage to property." The Policy contemplates that, when this specific type of damage is sustained, business is suspended – and Business Income coverage is provided "during the 'period of restoration.'"

13

Here, Plaintiffs have not alleged in the amended complaint that the loss of use of Plaintiffs' premises because of the Governor's orders or the mere threat of COVID-19 contamination required that Plaintiffs' premises be "restored" in any way, i.e., via repairs, demolition and reconstruction, etc.   Accordingly, Plaintiffs have failed to plead that they sustained a "direct physical loss of or damage to property."   Therefore, the type of loss allegedly sustained by Plaintiffs is not covered by the loss of Business Income provision.

III.   Plaintiffs' Allegation that the Policy is an Unenforceable Contract of Adhesion has no Merit.

Plaintiffs' allegations that:  the Policy includes "standardized language adopted [sic] from and/or developed by the ISO ('Insurance Service Office')" (Amended Complaint, ¶ 22); "the language in the Policy is 'adhesionary' in that Plaintiffs were not participants in negotiating or drafting its content and provisions" (Amended Complaint, ¶ 23); and Plaintiffs were unable "to alter or negotiate the terms of the Policy" (Amended Complaint, ¶ 24) are insufficient to state a plausible claim that they were compelled to accept unconscionable provisions.  Plaintiffs' Policy is dated March 15, 2020, the day before they "shut their doors on March 16, 2020" "[i]n light of the Coronavirus global pandemic and state orders mandating all non-life-sustaining businesses in the Commonwealth to cease operations and stay at home."  Am. Comp. ¶¶ 2, 11.  Plaintiffs do not (and cannot plausibly) allege that they were unaware when they purchased the Policy that their business might be interrupted by the Coronavirus global pandemic and government orders to control it.   Plaintiffs do not (and cannot plausibly) allege that the requirements for and exclusions from Business Income coverage were not clearly stated in the Policy in plain English. Yet Plaintiffs do not (and cannot plausibly) allege that they asked Selective whether the impending Business Income loss would be covered by the Policy or that they could not have

14

purchased a different insurance policy, whether from Selective or another insurer, without some or all of the requirements for and exclusions from business interruption coverage that are in the Policy they bought.

The facts, as pled by Plaintiffs, cannot plausibly support a reasonable inference that the Policy is a contract of adhesion.  Rather, the only reasonable inferences are that Plaintiffs were not compelled by unequal bargaining power or otherwise to buy an insurance policy from Selective that, on its face, would not cover the Business Income loss they anticipated.  Plaintiffs, who have *decades of experience* in operating their business, including presumably insuring its operations,[6] were free to shop for an insurance policy without the requirements and exclusions they now wish to write out of the Policy.  Their apparent failure to do so does not make the Policy a contract of adhesion.  *See Rezro, Inc. v. Maximo Lanfranco*, No. 107 EDA 2015, 2016 WL 597205 at *10 (Pa. Super. Ct. Feb. 12, 2016) (holding that a "standard equipment lease contract [which contained] no small print, no unexpected contractual terms or provisions, and no terms that are difficult to interpret or understand" and which was entered into by "an experienced businessman who had been running bodegas for at least 15 years" was not a contract of

---

[6]      According to Plaintiffs' website, "Julie's Bottega was founded in 1980" by Julie Margasak, who studied "marketing and merchandising at Temple University."  Prior to opening the business, Ms. Margasak "travel[ed] the world as a foreign buyer" for Macy's and Wannamaker's department stores.  *Id.*  Ten years after opening the business, the Plaintiffs expanded their business in purchasing property on which the store remains to this day.  *Id.*  See www.juliesbottega.com/about; www.juliesbottega.com/in-the-news. Plaintiffs cannot dispute the authenticity of their own website and the representations made thereon.  Therefore, this Court may consider Plaintiffs' website in evaluating this motion to dismiss under Rule 12(b)(6).  *Rivera v. Marriott International, Inc. & International Hospitality Enterprises, Inc.*, No. CV 19-1894 (GAG), 2020 WL 1933968, at *2 (D.P.R. Apr. 22, 2020) (finding that, "at the motion to dismiss stage," a court may consider evidence outside the pleadings if "the authenticity of [the evidence is] not disputed by the parties.") (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

adhesion.); *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1067 (Pa. Super Ct. 1992) (holding that a credit application contract entered into by the "sole shareholder, president and treasurer of . . . a construction company that specializes in residential projects . . . an experienced businessman" was not a contract of adhesion.); *84 Lumber Co., L.P. v. Bryan Const. Co.*, No. 2:09-CV-1030, 2011 WL 666209, at *10 (W.D. Pa. Feb. 14, 2011) (holding that a "Commercial Credit Agreement" entered into by "an educated and experienced businessman, having owned and/or operated at least four businesses over the previous decade" was not a contract of adhesion); *Tricome v. Ebay, Inc.*, No. CIV.A.09-2492, 2009 WL 3365873, at *3 (E.D. Pa. Oct. 19, 2009) (finding that an eBay "user agreement"  which was entered into by "an experienced businessman [who] sought out eBay's services, chose to become a registered user of eBay, and by doing so acknowledged that he had read and agreed to the terms of the User Agreement" was not a contract of adhesion); *Brezan v. Prudential Ins. Co. of Am.*, 507 F. Supp. 962, 966 (E.D. Pa. 1981) (finding that a group insurance contract purchased by a department store, which "cannot be classified as a layman unschooled in legal argot," was not a contract of adhesion.).

Plaintiffs' contract of adhesion argument fails for the additional reason that Plaintiffs do not – and cannot -- plead facts from which the Court can draw a reasonable inference that the requirements for and exclusions from coverage in the Policy are both substantively and procedurally "unconscionable.":

> Not every such contract is necessarily unconscionable.  Once a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it are unconscionable.

*Bayne v. Smith,* 965 A.2d 265, 270 (Pa. Super. Ct. 2009) (citing *Todd Heller, Inc. v. United Parcel Serv., Inc.*, 754 A.2d 689, 700 (Pa. Super. Ct. 2000); see also *Estate of Hodges v. Meadows*, No. 12-CV-01698, 2013 WL 1294480, at *6 (E.D. Pa. Mar. 29, 2013) (holding that

"simply determining that the challenging party has signed an adhesion contract does not require a finding the contact or specific provision is unconscionable.") (citing *Thibodeau v. Comcast Corporation*, 912 A.2d 874, 886 (Pa.Super.2006)). The issue of "whether a contract or clause is unconscionable is a question of law for a court." *Id.* To prove unconscionability, "a party must show that the contract was both substantively and procedurally unconscionable." *Velazquez v. State Farm Fire & Cas. Co.*, 2020 WL 1942784, at *6 (E.D. Pa. Mar. 27, 2020), report and recommendation adopted, No. CV 19-3128, 2020 WL 1939802 (E.D. Pa. Apr. 22, 2020) (finding that the non-drafting party to an insurance contract "failed to plausibly allege that declaratory relief is due [because they] have not plausibly alleged the Policy is unenforceable due to unconscionability because they have failed to allege sufficient facts supporting substantive and procedural unconscionability.") (citing *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012); *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)).

Substantive unconscionability exists if the "contractual terms are unreasonably or grossly unfavorable to one side and to which the disfavored party does not assent." *Velazquez*, 2020 WL 1942784, at *6 (citing *Quilloin* 673 F.3d at 230; *Cardinal v. Kindred Healthcare Inc.*, 155 A.3d 46, 53 (Pa. Super. Ct. 2017); *MacPherson v. Magee Mem. Hosp.*, 128 A.3d 1209, 1219 (Pa. Super. Ct. 2015) (en banc); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). "[T]he need for application of this standard is most acute when the professional seller is seeking the trade of those most subject to exploitation—the uneducated, the inexperienced and the people of low incomes." *84 Lumber Co., L.P. v. Bryan Const. Co.*, No. 2:09-CV-1030, 2011 WL 666209, at *9 (W.D. Pa. Feb. 14, 2011) (citing *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 144 (Pa. Super. Ct. 1985)). Indeed, an educated and experienced businessman will face difficulty when invoking this doctrine. *84 Lumber Co., L.P.,* 2011 WL 666209, at *9 (citing

*Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 167-70   (Pa. Super. Ct. 1992) (noting that a commercial contract will rarely be found to be unconscionable)).

In *Velazquez,* plaintiffs were insureds on a State Farm Fire and Casualty Co. homeowners insurance policy which covered "accidental direct physical loss to property."  *Id.*, 2020 WL 1942784, at *1.  The policy contained an exclusion under the provision entitled "Losses Not Insured," which was later amended by the addition of an "Endorsement" which altered coverage for water damage caused by leakage from a system or appliance.  *Id.*[7]  Three years after the Endorsement was added to the policy, plaintiffs suffered an "escape of water from within the Property's plumbing system, resulting in damage to the insured premises which required access to the plumbing line to properly repair the system."  *Id.,* 2020 WL 1942784, at *2.  Plaintiffs timely reported the loss to their insurer and retained a plumber to access and repair the plumbing line.  *Id.*  However, defendant refused to "pay for the entire access bill."  *Id.*

Plaintiffs brought suit against the defendant for "failing to pay certain costs associated with accessing a plumbing line that caused water damage to Plaintiffs' insured property."  *Id.*, 2020 WL 1942784, at *1.  In their amended complaint, plaintiffs included a cause of action seeking "a declaratory judgment under 28 U.S.C. § 2201 that the Endorsement to the Policy is void due to its alleged unconscionability."  *Id.*, 2020 WL 1942784, at *2.  Plaintiffs requested a

---

[7]     The Endorsement provided as follows:  "Tear Out.  If a [loss] is caused by water or steam escaping from a system or appliance, we will also pay for the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped.  We will not cover the cost of repairing or replacing the system or appliance itself."   *Velazquez,* 2020 WL 1942784, at *1.  (emphasis omitted).  The court found that the policy language which originally covered this subject matter prior to the inclusion of the Endorsement was not relevant to the "unconscionability analysis" – "[w]e solely look at the contractual terms at issue here, which is the Policy with the Endorsement."  *Id.,* 2020 WL 1942784, at *6.

"judgment declaring the Endorsement void, as it would be unconscionable to enforce the Endorsement against Plaintiffs due to [defendant's] deceptive conduct and misrepresentations regarding the Policy and Endorsement." *Id.*, 2020 WL 1942784, at *5. Defendant's motion to dismiss for failure to state a claim was granted by the court on the grounds that plaintiffs "had not plausibly shown either substantive or procedural unconscionability." *Id.*, 2020 WL 1942784, at *1, 6.

With respect to substantive unconscionability, the court found that plaintiffs had "not adequately alleged the Policy's terms are unreasonably or grossly favorable to Defendant." *Id.*, 2020 WL 1942784, at *6. The court found that plaintiffs' allegation that "[t]he enforcement of provisions contained within the Endorsement serves to only benefit [defendant] and provides no benefit to [plaintiffs]" was not consistent with the language of the policy:

> The Policy covers reasonable costs incurred to tear out and replace materials to gain access to a system or appliance that caused covered water damage. That serves a benefit to the insured, and does not "serve[ ] to only benefit State Farm.

*Id.*.[8] Accordingly, the court held that plaintiffs "have not articulated sufficient facts to support a claim of substantive unconscionability." *Id.*

In this case, the Policy covers loss of Business Income during a period of restoration when a Covered Cause of Loss damages the insureds' property or while a Civil Authority prevents access to the insureds' property when a Covered Cause of Loss damages another's property. Plaintiffs here have not alleged (and cannot plausibly allege) that those coverages are a

---

[8]      Moreover, the court continued, plaintiffs "have not plausibly alleged this is a situation where 'the disfavored party does not assent'" because plaintiffs received prior notification of the addition of the Endorsement and yet they renewed the policy each year until September 2018, when the water damage loss occurred. *Id.*, 2020 WL 1942784 at *6 (citing *Quillion*, 673 F.3d at 230).

sham or illusory.  To the contrary, the express terms of the Policy benefit *both* parties and do, indeed, provide coverage for loss of Business Income when there is a Covered Cause of Loss. Accordingly, the limitations imposed by the requirements for and exclusions from coverage cannot be deemed to be "unreasonably or grossly favorable" to Selective.  *Velazquez*, 2020 WL 1942784, at *6 (citing *Quilloin*, 673 F.3d at 230).  Plaintiffs' amended complaint should be dismissed for the additional reason that Plaintiffs have failed to plead sufficient facts to support a plausible inference of substantive unconscionability.

Procedural unconscionability can exist only where "there was lack of meaningful choice in the acceptance of the challenged provision." *Velazquez* at *6 (citing *Quilloin*, 673 F.3d at 235; *Salley*, 925 A.2d at 119)).  As discussed above, Plaintiffs here do not – and cannot – allege a lack of meaningful choice.

In *Velazquez*, the court found the plaintiffs' conclusory allegations that "[a]s a policy of insurance, the Policy is a contract of adhesion [,] Plaintiffs and [the insurer] are not of equal bargaining power, and Plaintiffs were forced to adhere to the terms of the form contract which were not negotiable" were insufficient to overcome a Rule 12(b)(6) motion to dismiss.  *Id.*  The court explained that "Pennsylvania Courts have consistently emphasized that merely because a contract is one of adhesion does not render it unconscionable" and that there is "no basis under Pennsylvania law for finding that any insurance contract, simply by virtue of being one, is procedurally unconscionable."  *Id.*, 2020 WL 1942784, at *7 (citing *Hepler v. Transamerica Premier Life Ins. Co.*, No. 17-299, 2019 WL 4854133, at *5 (W.D. Pa. Sept. 30, 2019); *Salley*, 925 A.2d at 127; *Bishop v. Washington*, 480 A.2d 1088, 1094 (Pa. Super. Ct. 1984); *Delinger, Inc. v. Dendler*, 608 A.2d 1061, 1067 (Pa. Super. Ct. 1992)).  The court concluded that plaintiffs failed to show a "lack of meaningful choice in the acceptance of the challenged provision," and

therefore "failed to plausibly allege procedural unconscionability and lack of a meaningful choice." *Id.* (citing *Quillion*, 673 F.3d at 235; Salley, 925 A.2d at 119)):

> Plaintiffs could have chosen to reject the Endorsement by cancelling their Policy. They did not, and instead renewed the Policy each year . . . Plaintiffs could have also sought another policy from a different provider to cover all costs associated with tear out and replacement to access covered water damage.

*Id.* (citing *Neil v. Allstate Ins. Co.*, 549 A.2d 1304, 1310 n.4 (Pa. Super. Ct. 1988) (concluding that the policy was not unconscionable because "the Neils, as insurance consumers, had available to them in the insurance marketplace other types of insurance which could have provided coverage of the type which they seek[.]")).[9]

Plaintiffs' allegations here are indistinguishable from those found to be insufficient in *Velazquez and Neil*. Am. Compl. ¶ 28. As in these cases, Plaintiffs do not (and cannot plausibly) allege that they had no choice but to purchase the Policy from Selective or that there existed no other insurance companies that sold policies not containing a Virus or Bacteria exclusion and/or with a less restrictive Civil Authority provision.[10]

---

[9]    The court also held that plaintiffs alleged no "plausible allegations that Plaintiffs were precluded from negotiating the terms of the Endorsement's tear out provision." *Id.* at *7.

[10]    Plaintiffs' *only* reference in their amended complaint to the concept of unconscionability is found in paragraph 35, in which they assert that the "Virus Exclusion" is unconscionable because, according to Plaintiffs, the language "developed by the ISO" is used by "many insurance companies" and was presented to insurance regulators in unidentified states in a misleading manner. Am. Compl. ¶¶ 22, 34. These deliberately vague allegations are irrelevant to the issue of unconscionability. As made clear by the Court in *Velazquez*, the manner in which terms came to be included in an insurance policy is not relevant to the "unconscionability analysis." *Velazquez*, 2020 WL 1942784, at *6.

IV.    The Doctrine of Reasonable Expectations does not Apply.

Plaintiffs' conclusory assertion that they *expected* loss of Business Income coverage that is contrary to the plain English language of the Policy does not state a claim under the doctrine of "reasonable expectations."    Plaintiffs' inability to plead any facts plausibly supporting a reasonable inference that Selective engaged in "deceptive practices" or made "affirmative misrepresentations" of any kind regarding whether the Policy would cover Plaintiffs' then imminent loss of Business Income is fatal to the application of the reasonable expectations doctrine to this case.  To the contrary, Plaintiffs plainly knew that the Coronavirus pandemic and government efforts to control it might impact their retail bricks and mortar operation; the Policy's requirements for and exclusions from coverage are stated in plain English; and Plaintiffs do not – and cannot – allege any misleading conduct of Selective regarding the requirements for and exclusions from coverage in the Policy.  "The language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997), as amended (Aug. 28, 1997); *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994)).  Hence, an insured's "mere assertion [ ] that it expected coverage will not ordinarily defeat unambiguous policy language excluding coverage." *West v. Lincoln Ben. Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007) (citing *Matcon Diamond, Inc. v. Penn Nat'l Ins. Co.*, 815 A.2d 1109, 1115 (Pa. Super. Ct. 2003)).

The Pennsylvania Supreme Court has refrained from applying the reasonable expectations doctrine except in "very limited circumstances." *Id.* (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 n.8. (Pa. 1999). The doctrine was designed "to protect *non-commercial* insureds from policy terms not readily apparent" to the layman eye. *Frantz v. Nationwide Ins. Co.*, 2018 WL 4207742, at *3 (M.D. Pa. Sept. 4, 2018) (citing *Liberty*

*Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005)).  (emphasis added).  Second, as the Third Circuit Court of Appeals has recognized, these protections are aimed at stemming *deceptive* business practices in the insurance industry:

> [a]n analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in *deceptive practices* toward the insured, either to *misrepresent* the terms of the policy or to issue a policy different than the one requested by the insured and promised by the insurer.

*Id.* (citing *West,* 509 F.3d at 169; *Tonkovic v. State Farm Mut. Auto Ins. Co.*, 521 A.2d 920, 925 (Pa. 1987) (holding that where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy")).  (emphasis added).  Absent "an *affirmative misrepresentation by the insurer* or its agent about the contents of the policy," however, "the plain and unambiguous terms of a policy demonstrate the parties' intent and they control the rights and obligations of the insurer and the insured." *Id.* (citing West, 509 F.3d at 168-69).  (emphasis added).

In the this case, Plaintiffs do not and cannot allege that Selective engaged in any "deceptive practices" or made "affirmative misrepresentations" of any kind to them regarding the contents of the Policy or the scope of coverage.  Plaintiffs merely allege that they "expected" that the Policy would provide certain coverages for loss of Business Income.  Am. Compl. ¶¶ 20, 25, 30.  However, as noted above, the "mere assertion" by an insured that they "expected" certain coverages is insufficient.  Accordingly, Plaintiffs have failed to sufficiently plead facts invoking the application of the doctrine of reasonable expectations.

## <u>CONCLUSION</u>

For the foregoing reasons, Selective respectfully requests that the Court dismiss Plaintiffs' amended complaint for failure to state a claim on which relief can be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ David Smith*

</div>

Dated:  July 22, 2020

<div style="margin-left: 40%;">

David Smith (Pa. I.D. 21480)
Theresa E. Loscalzo (Pa. I.D. 52031)
Raymond J. Hunter (Pa. I.D. 87797)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Attorneys for defendants Selective Insurance
Company of America and Selective Insurance
Company of the Southeast*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 22, 2020, I caused a true and correct copy of the foregoing Motion to Dismiss Plaintiffs' Amended Complaint to be served upon all parties via this Court's notice of electronic filing.

Respectfully submitted,

*/s/ David Smith*

Dated:  July 22, 2020

David Smith (Pa. I.D. 21480)
Theresa E. Loscalzo (Pa. I.D. 52031)
Raymond J. Hunter (Pa. I.D. 87797)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Telephone: (215) 751-2000
Facsimile: (215) 751-2205

*Attorneys for defendants Selective Insurance Company of America and Selective Insurance Company of the Southeast*

# EXHIBIT A



**POLICY DOCUMENT**

# S   227355303

# INSURED'S COPY

# ADVISORY NOTICE TO POLICYHOLDERS
# EXCLUSION — LEAD HAZARD

**Form IL 89 48 — EXCLUSION - LEAD HAZARD has been added to the policy.**

It is applicable to:

BUSINESSOWNERS COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
GARAGE COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
  TRANSPORTATION

Form **IL 89 48** clarifies policy intent to specifically exclude coverage for any injuries or damage arising out of:

— the ingestion, inhalation, absorption or presence of lead in any form; and

— any loss, cost or expense arising out of any orders by or on behalf of any governmental authority to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize lead in any form.

Please read form **IL 89 48** carefully and discuss any questions with your agent.

Includes copyrighted material of ISO Properties, Inc., with its permission.          **IN 00 02 07 04**

# IMPORTANT NOTICE REGARDING AGENT COMPENSATION

We sell our insurance products and services through appointed independent insurance agencies and agents ("Agent" or "Agents"). Because Agents also generally represent several of our competitors, our primary marketing strategy is to:

- Develop close relationships with each Agent by (i) soliciting their feedback on products and services, (ii) advising them concerning company developments, and (iii) investing significant time with them professionally and socially; and

- Develop with each Agent, and then carefully monitor, annual goals regarding (i) types and mix of risks placed with us, (ii) amounts of premium or numbers of policies placed with us, (iii) customer service levels, and (iv) profitability of business placed with us.

We pay Agents commissions and other consideration for business placed with us (and we do not authorize our Agents to receive other monies for our insurance). We seek to compensate our Agents fairly and in a way consistent with market practices.

Our Agent compensation programs may include one or more of the following depending on the Agent's overall business relationship with us:

- **Commission Payments.** We pay commission based on a percentage of the premium the policyholder pays. The amount of commission varies depending on policy type, state location of risk, and other factors.

- **Additional Commission Payments.** We may pay additional and varying percentages of premium for attainment of certain goals we set with the Agent, including:

  - o **Profitability,** which we determine by comparing losses and expenses to premium;

  - o **Volume,** which is the amount of premium written with us;

  - o **Growth and Retention,** which we measure by comparing premium volume or number of policies for overall or specific types of policies; or

  - o **Annual Plan Performance,** which we measure according to performance standards determined by us and the Agent.

  In certain cases, an Agent may put additional commissions at risk and become obligated to pay us amounts if certain goals are not met.

- **Expense Reimbursement.** We may reimburse certain marketing and other expenses incurred for placing business with us.

- **Entertainment and Other Things of Value.** We may entertain or provide other things of value, including travel and gratuities, to Agents who we believe provide exceptional value to our policyholders and shareholders.

- **Business Production Incentive Programs.** We may provide Agents or their employees opportunities to receive additional compensation (cash or contest prizes) for certain activities or tasks, such as placing specific types of policies with us or inputting data through one of our technology systems.

**IN 01 97 08 07**
**Page 1 of 2**

- **Loss Control Agreements.** We may pay Agents a flat fee or a percentage of commission for safety and loss control surveys, inspections, accident or claim investigations.

- **Agent Stock Purchase Plan.** Certain of our Agents participate in a stock purchase plan that allows those Agents to purchase common stock in Selective Insurance Group, Inc. at a 10% discount to market and requires those agents to hold the stock for at least one year before they can transfer it.

As supporters of the independent insurance agency distribution system, we may provide Agents from time-to-time with tools and programs designed to preserve and strengthen the independent agency distribution system, including assistance with producer recruitment and/or training, loans, or loan guarantees. These tools and programs, which may be experimental, are provided to assist our Agents in the perpetuation of robust independent insurance agencies and are not conditioned on the imposition of extraordinary current or future production conditions.

We also distribute our insurance products to a limited extent through select insurance brokers which we compensate with some of the same compensation tools we use for Agents. If you have engaged a broker to place insurance with us, please ask the broker if any of the above described compensation arrangements are in effect with us.

Please direct questions regarding specific compensation to your Agent.

**IN 01 97 08 07**
**Page 2 of 2**

# IMPORTANT NOTICE TO POLICYHOLDERS
# EQUIPMENT BREAKDOWN COVERAGE
# JURISDICTIONAL INSPECTION SERVICE

This notice is an advisory notice and is not a part of your policy.  For complete information on all coverages, terms, conditions and exclusions, please review your policy.  If there is any conflict between your policy and this notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

This Selective Insurance policy includes equipment breakdown coverage. The Hartford Steam Boiler Inspection and Insurance Company (HSB) is an equipment specialist working with Selective Insurance to provide equipment related inspection services. Our combined goal is to provide the highest quality insurance program and services that will help you protect your equipment and your business.

There may be laws or regulations in your city, county or state that require periodic boiler inspections. The scope of the laws may also include air conditioning systems, refrigeration systems and pressure vessels. Most Jurisdictional Authorities charge a fee for both the inspection and the certificate. HSB will perform the inspection for you at no cost as an integral part of your insurance program. The certificate fee or any fine levied by the Jurisdiction for not complying with the laws or regulations, is not a part of this service.

If you answer yes to any of the following questions, you may require a certificate inspection. Contact the HSB Inspection Hotline and the customer service representative will assist you.

- Does my location contain any heating or process boilers?
- Does my location have any large hot water heaters (200,000+ btu/hr)?
- Does my location contain any pressure vessels (air tanks, hot water storage tanks)?
- Does my location have a central air conditioning system?

## HSB INSPECTION HOTLINE

Telephone:  **1-800-333-4677**
Fax:            **1-484-582-1811**
E-mail:        **NSCINSP_HOTLINE@hsb.com**

**Please provide the following information:**

- Policy Number
- Insured Name
- Location Name and Address
- Contact Name and Phone Number

**IN 01 99 09 19**

INSURED'S COPY

# PRAESIDIUM

## WHAT YOU DON'T KNOW CAN HURT THOSE IN YOUR CARE AND YOUR ORGANIZATION.

Adopting a solid screening and selection process is your first line of defense in creating a safe environment. A thorough, consistent screening process may also discourage would-be offenders from targeting your organization. Failure to discover a known offender can affect those in your care and the organization's reputation, financial stability, and trust within the community. Who you should screen can depend on many factors, such as if the person is a new full-time hire, a season hire, or even a current employee. In determining the types of checks to utilize, organizations should follow all state, federal, and licensing regulations and consider an individual's level of access. Level of access may be influenced by:

### WHO IS PRAESIDIUM?

Praesidium is the national leader in abuse risk management. With more than two decades of experience, and serving thousands of clients, our dedicated team of researchers, psychologists, attorneys, social workers, and human resource professionals have analyzed thousands of cases of abuse in organizations and synthesized the latest scientific research. We know how abuse happens in organizations . . . and how to prevent it.

- **Frequency**: How frequently does the individual work around or interact with consumers? Is it a one-time event or every day?

- **Duration**: What is the duration of the individual's interactions? Is it a one-time, one-hour event or an entire summer?

- **Level of Supervision**: Are the individual's interactions always supervised by another adult or are they one-on-one with consumers?

- **Nature of the Relationship**: What is the nature of the relationship between the individual and the consumers in the program? Does the individual merely supervise an area during an event that has consumers, or are they getting to know individual consumers and families while counseling, tutoring, or providing personal care services?

### Selective Insurance has partnered with Praesidium to offer you discounted background screening services for your organization.

For more information go to: selective.com/praesidium - (800.743.6354) - selective@praesidiuminc.com
In order to receive this exclusive benefit please identify yourself as a Selective Insurance agent or insured.

INSURED'S COPY

## FOUR ELEMENTS FOR A THOROUGH BUT COST EFFECTIVE BACKGROUND CHECK:

- **Check Facts:** Aliases, DOBs, and address history all drive research and help to paint a complete picture.

- **Search Wide:** Multi State criminal and national sex offender databases will identify the unexpected.

- **Search Deep:** Targeted county level searches will give real-time information where records are most likely to be found.

- **Ask Questions:** References can provide insights on behavior and clues to non-criminal boundary issues.

## WHO SHOULD YOU SCREEN, AND HOW OFTEN?

- **New Hires/Volunteers:** A thorough, consistently applied background screening process at the time of hire is your first and best opportunity to identify the problem.

- **Seasonal Hires/Volunteers:** Seasonal staff present a unique risk because you don't see them for months at a time, and it's often not practical to complete a full new hire process each season. An annual check-in plan is key.

- **Re-Screening:** Conducting targeted checks on your full-time employees at least every 3 years helps you identify issues before they impact your organization.

### BACKGROUND SCREENING FOR SELECTIVE INSUREDS

Praesidium offers a selection of background screening packages plus a la carte services to empower your organization to conduct right-sized research. Praesidium's team can help contextualize the screening process as part of an overall culture of safety and discuss how screening works in hand with other abuse prevention efforts. Praesidium's team can also help you understand who to screen, how often, and the importance of re-screening.

| | LOW ACCESS VOLUNTEERS | HIGH ACCESS VOLUNTEERS | EMPLOYEES | FINANCIAL ACCESS | A LA CARTE |
|---|---|---|---|---|---|
| | STARTING AT $16 | STARTING AT $16 | STARTING AT $16 | STARTING AT $37 | INDIVIDUAL COST PER SERVICE |
| Employment Credit ($60 one-time set up fee required) | | | | X | $10.00 |
| Confidence Multi State Criminal and Sex Offender Database w/Alias** | X | X | X | X | $ 9.00 |
| 7 Yr County Criminal Records Search: Current County of Residence* | X | X | X | X | $ 7.00 |
| Add'l Counties Added As Needed Based on 7 yr Address History* | | X | X | X | $ 5.50 |
| County Civil Records Search (upper): 1 County* | | | | X | $11.00 |
| Motor Vehicle Records Search* | | | | | $ 5.00 |
| Employment Verification: 1 Position* | | | | | $ 8.00 |
| Education Verification: 1 Degree* | | | | | $ 7.00 |
| Personal Reference: 1 Reference | | | | | $11.00 |
| Professional Reference: 1 Reference | | | | | $12.00 |
| International Criminal Search 1 Jurisdiction* | | | | | $50.00 |

\* 3rd Party keeper fees may apply and will be passed on at cost when incurred.
\*\* Criminal records found in the Multi State database check are subject to verification at the source and additional costs may apply.

**For more information go to: selective.com/praesidium - (800.743.6354) - selective@praesidiuminc.com**
In order to receive this exclusive benefit please identify yourself as a Selective Insurance agent or insured.

**IN 02 34 02 19**
**Page 2 of 2**

INSURED'S COPY

# IMPORTANT NOTICE TO POLICYHOLDERS

# COMMERCIAL PROPERTY INSURANCE TO VALUE

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISION OF THE POLICY SHALL PREVAIL.

## REGARDING BUILDING INSURANCE TO VALUE

The replacement cost for building(s) insured on this policy is an estimated replacement cost based on general information about your building(s). It is developed from models that use estimated cost of construction materials and estimated labor rates for like buildings in the area. The actual cost to replace your building(s) may be significantly different. Selective Insurance does not guarantee that this figure will represent the actual cost to replace your building(s). You are responsible for selecting the appropriate amount of coverage and you may obtain your own insurance replacement cost appraisal. Additional information you obtain on the replacement cost of your building(s) can further assist you in making a more informed decision about the true value of your building(s). Selective Insurance will consider and accept, if reasonable, your appraisal. Any higher coverage amounts selected will result in higher premiums. You may contact your insurance agent to assist you in obtaining your own insurance replacement cost appraisal or contact one of the numerous companies providing insurance replacement cost appraisals for commercial buildings.

## REGARDING BUSINESS PERSONAL PROPERTY INSURANCE TO VALUE

The replacement cost for your Business Personal Property insured on this policy is based on values provided by you. You are responsible for selecting the appropriate amount of coverage to ensure adequate replacement cost values.

Copyright, 2010 Selective Insurance Company of America. All rights reserved.

IN 03 29 03 10
Page 1 of 1

# POLICYHOLDER DISCLOSURE NOTICE
# OFFER OF TERRORISM INSURANCE COVERAGE
# AND
# REJECTION FORM — EFFECTIVE UNTIL REVOKED

## Offer of Coverage:

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from "acts of terrorism", as defined in Section 102(1) of the Act. The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be "an act of terrorism"; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**You may accept or reject insurance coverage for losses resulting from certified "acts of terrorism".**

- If you accept this offer of coverage simply pay your billed premium, which includes the amount shown below. You do not need to do anything else.

- If you would like to reject this coverage, please see the section of this form entitled Rejection of Terrorism Insurance Coverage and follow the instructions. **Please note that if you reject coverage for losses resulting from certified "acts of terrorism", we will not provide coverage on renewals of this policy unless you ask us for coverage in the manner set forth in our "Offer of Terrorism Insurance Coverage When Terrorism Insurance Coverage Was Previously Rejected" form, which will be attached to renewals of this policy.**

## Disclosure of Premium:

The portion of your annual premium that is attributable to coverage for "acts of terrorism" is $116.00 and does not include any charges for the portion of loss that may be covered by the federal government under the Act.

Please be aware that even if you purchase coverage for losses resulting from certified "acts of terrorism", your policy will still contain other policy terms, conditions, limitations and exclusions that may impact whether coverage is available in the event of a loss resulting from a certified "act of terrorism".

Copyright, 2016 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**Federal Participation in Payment of Terrorism Losses:**

You should know that where coverage is provided by this policy for losses resulting from certified "acts of terrorism", such losses may be partially reimbursed by the United States Government under a formula established by federal law. Under the formula, the United States Government generally reimburses the following percentages of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage:

    **a.** 85% through 2015;
    **b.** 84% beginning on January 1, 2016;
    **c.** 83% beginning on January 1, 2017;
    **d.** 82% beginning on January 1, 2018;
    **e.** 81% beginning on January 1, 2019;
    **f.** and 80% beginning on January 1, 2020.

**Cap on Insurer Participation in Payment of Terrorism Losses:**

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified "acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**Rejection of Terrorism Insurance Coverage:**

**You may reject this offer of coverage by checking the box, filling in the information below, signing and returning this form to your agent. If you choose to reject this offer of coverage, we will add an exclusionary endorsement to your policy to eliminate coverage for losses resulting from certified "acts of terrorism".**

---

**Rejection of Coverage - Effective Until Revoked**

☐ **I HAVE READ THIS FORM IN ITS ENTIRETY AND DO NOT WANT TO PURCHASE COVERAGE FOR CERTIFIED "ACTS OF TERRORISM". I UNDERSTAND THAT THIS REJECTION IS EFFECTIVE UNTIL I AFFIRMATIVELY REVOKE IT IN THE MANNER SET FORTH IN SELECTIVE'S "OFFER OF TERRORISM INSURANCE COVERAGE WHEN TERRORISM INSURANCE COVERAGE WAS PREVIOUSLY REJECTED" FORM, AND THAT IF I SIGN THIS FORM THIS POLICY AND ANY RENEWALS WILL EXCLUDE COVERAGE FOR LOSSES RESULTING FROM CERTIFIED "ACTS OF TERRORISM".**

_____
Policyholder/Applicant's Signature

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
_____
Insurance Company

_____
Print Name

S  2273553
_____
Policy or Quote Number

_____
Title

_____
Date

---

# NOTICE TO RENEWING POLICYHOLDERS

# CUSTOMER NOTICE ABOUT POLICY DELIVERY & PRINTING

Selective provides you with the choice of receiving your insurance policy documents in printed form or digital form.

You can request delivery of your policy in digital format at any time - simply contact your independent agent. (To comply with state insurance regulations, Selective asks for your consent prior to delivering your policy in digital format.)

We want to make your customer experience as convenient as possible, while being good stewards of costs and the environment. When you renew your policy with Selective:

1.  We do not print certain forms previously provided to you. Typically, these include:

    a.  Policy forms that do not include your specific customer information.

    b.  Policy forms with your information that have not been revised.

2.  We do print new forms, forms that have changed, and forms that have your specific policy information.

For your convenience, a complete copy of your policy including all forms is always available to you online through Selective's Customer Self-Service portal. You can view your policy information at any time - 24 hours a day, 7 days a week. You can sign up and log in by visiting selective.com and following the login process.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.

**IN 08 47 11 18**
**Page 1 of 1**

INSURED'S COPY

Insurance is provided by the Company designated on the Declarations Page of this policy. The addresses of all Selective Insurance Companies are shown below:

Selective Insurance Company of America
40 Wantage Avenue
Branchville, NJ  07890

Selective Way Insurance Company
40 Wantage Avenue
Branchville, NJ  07890

Selective Insurance Company of South Carolina
900 E. 96th Street, Suite 400
Indianapolis, IN  46240

Selective Insurance Company of New York
300 Olympic Towers
300 Pearl Street
Buffalo, NY  14202

Selective Insurance Company of the Southeast
900 E. 96th Street, Suite 400
Indianapolis, IN  46240

Selective Insurance Company of New England
40 Wantage Avenue
Branchville, NJ  07890

Administrative Offices of all Selective Insurance Companies are located at:
40 Wantage Avenue
Branchville, NJ  07890

**MISC-1693 09 19**

# NOTICE OF INFORMATION PRACTICES (LONG FORM)

Your application or information you provide in connection with a claim is our major source of information.  However, in order to evaluate your application for insurance, to service your policy or to process a claim, we may ask for additional information about you and any person who will be insured under this policy or who is the subject of the claim.  This is sometimes necessary to make certain that the statements on your application are accurate or to process the claim.  We may also need more details than you have already given us.

## INFORMATION WE COLLECT

In connection with an application, the information that we may collect will enable us to make possible judgments about your character, habits, hobbies, finances, occupation, general reputation, health or other personal characteristics.  In connection with a claim, the information we may collect will enable us to process the claim.

We may obtain this information from several sources.  For example, we may contact any physician, clinic or hospital where any persons to be insured or making a claim have been treated.  We may need information from your employer.  But, before we ask for information from any of these sources, we will ask you to sign an authorization, which gives us permission to proceed, unless authorization is not required by law.

We may get information by talking or writing to other insurance companies to which you applied for a policy or with which you have made a claim, members of your family, neighbors, friends, your insurance agent and others who know you.  We may also obtain information from motor vehicle reports, court records, or photographs of the property you want insured or with regard to which you have made a claim.

## CONSUMER REPORTS

It is common for an insurance company to order a report from an independent organization — a consumer reporting agency or an insurance-support organization — to verify and add to the information that you have given us.  These reports are used to help us decide if you qualify for the insurance for which you have applied or to evaluate the claim you have made.

They may:

_____ pertain to your mode of living, character, general reputation and personal characteristics such as health, job and finances.

_____ contain information on your marital status, driving records, etc.

_____ include information on the loss history of your property.

_____ include information gathered by talking or writing to you or members of your family, neighbors, friends, your insurance agent and others who know you.

_____ include information from motor vehicle reports, court records or photographs of your property and/or the property involved in the claim.

Upon your request, the consumer reporting agency or insurance-support organization will attempt to interview you in connection with any report it prepares.  The information may be kept by the reporting organization and may later be given to others who use its services.  It will be given only to the extent permitted by the Federal Fair Credit Reporting Act and your local state law, if any. Upon request and identification, the consumer reporting agency or insurance-support organization will provide you with a copy of the report.

**DISCLOSURE OF INFORMATION**

Information we collect about you will not be given to anyone without your consent, except when necessary to conduct our business.  There are some disclosures which may be made without your prior authorization.  These include:

_____  Persons or organizations who need the information to perform a professional, business or insurance function for us, such as businesses that assist us with data processing or marketing.

_____  Other insurance companies, agents, or consumer reporting agencies as it may be needed in connection with any application, policy or claim involving you.

_____  Adjusters, appraisers, investigators and attorneys who need the information to investigate or settle a claim involving you.

_____  An insurance-support organization which is established to collect information for the purpose of detecting and preventing insurance crimes or fraudulent claims.

_____  A medical professional or institution to verify your insurance coverage or inform you of a medical condition of which you may not be aware.

_____  Persons or organizations that conduct scientific research, including actuarial or underwriting studies.

_____  Persons or organizations that will use the information for sales purposes, unless you indicate in writing to us that you do not want the information disclosed for this purpose.

_____  Our affiliated companies for auditing our operations and for marketing an insurance product or service.

In addition, we may provide information to state insurance departments in connection with their regulatory authority and to other governmental or law enforcement authorities to protect our legal interests or in cases of suspected fraud or illegal activities.

**YOUR INSURANCE POLICY FILES**

Information we collect about you will be kept in our policy files.  We may refer to this information if you file a claim for benefits under any policy you have with us or if you apply to us for a new policy.  You have the right to know what kind of information we keep in our files about you, to have access to the information, and to receive a copy.  There are some types of information; however, to which we are not required to give you access.  This type of information is generally collected when we evaluate a claim or when the possibility of a lawsuit exists.

If you want information from your files, please contact us.  There may be a nominal charge for copies of records.  If you think your file contains incorrect information, notify us indicating what you believe is incorrect and your reasons.  We will reinvestigate the matter and either correct our records or place a statement from you in our files explaining why you believe the information is incorrect.  We will also notify persons or organizations to whom we previously disclosed the information of the change or your statement.

**CONFIDENTIALITY AND SECURITY OF PERSONAL INFORMATION**

We restrict access to personal information to those individuals who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with legal standards and ensure the confidentiality of personal information in accordance with our policy.

**TREATMENT OF PERSONAL INFORMATION OF FORMER CUSTOMERS AND APPLICANTS**

We adhere to this personal information privacy policy even when a customer relationship no longer exists.  Disclosures about former applicants and customers may be made without prior authorization as permitted by law.

If you have any questions about our information practices, please contact us.

Issued by The Stock Insurance Company

Policy Number
S 2273553

SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
900 E. 96TH STREET, INDIANAPOLIS, IN 46240

# COMMERCIAL POLICY COMMON DECLARATION

| Named Insured and Address | Policy Period |
|---|---|
| JUL-BUR ASSOCIATES INC AND JULIE'S BOTTEGA<br>156 MONTGOMERY AVE<br>BALA CYNWYD, PA 19004-2969 | **From:** MARCH 15, 2020<br>**To:** MARCH 15, 2021<br><br>12:01 A.M Standard Time At<br>Location of Designated Premises. |

| Named Insured is: | Producer Number: |
|---|---|
| CORPORATION | 00-37154-00000 |

**Producer:**

OXFORD MILLIN INSURANCE AGENCY LTD
PENNSYLVANIA

## Schedule of Coverage

BUSINESSOWNERS COVERAGE
COMMERCIAL UMBRELLA COVERAGE

**PREMIUM INCLUDES   TERRORISM - CERTIFIED ACTS   $116.00**

In return for payment of the premium, and subject to all the terms of this policy,  we agree with
you to provide the insurance indicated in the schedule above.  Insurance is provided only for
those coverages for which a specific limit is shown on the attached coverage declaration(s).

| PAYMENT METHOD | Total Policy Premium_____ $5,908.00 |
|---|---|
| D/B - Q | (This premium may be subject to adjustment.) |

**Date Issued:** FEBRUARY 28, 2020
**Issuing Office:** MID ATLANTIC REGION

**Authorized Representative_____**

IL-7025 (11/89)

**INSURED'S COPY**

Policy Number

S  2273553

# SCHEDULE OF LOCATIONS

| Policy Effective Date: MARCH 15, 2020 | Schedule Effective Date: MARCH 15, 2020 |
|---|---|

| Prem. No. | Location | Bldg. No. | Occupancy |
|---|---|---|---|
| 1 | 156 MONTGOMERY AVE<br>BALA CYNWYD, PA 19004 | 1 | LADIES CLOTHING |

IL-7036 (01/93)

INSURED'S COPY

| Policy Number |
|---|
| S   2273553 |

# COMMERCIAL POLICY FORMS AND ENDORSEMENT SCHEDULE

| **Policy Effective Date:** MARCH 15, 2020 | **Schedule Effective Date** MARCH 15, 2020 |
|---|---|

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMON COVERAGE PART:

```
IL 70 25    1189    COMMERCIAL POLICY COMMON DECLARATION
IL 70 36    0193    SCHEDULE OF LOCATIONS
IL 00 17    1198    COMMON POLICY CONDITIONS
IL 89 48    0818    EXCLUSION-LEAD HAZARD
IL 89 56    0818    ASBESTOS EXCLUSION
```

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL BUSINESS OWNERS COVERAGE PART:

```
BP 71 19    0919    BUSINESSOWNERS COVERAGE DECLARATIONS
BP 72 49    0919    BUSINESSOWNERS SCHEDULE PLUS COVERAGE
BP IN 01    0713    BUSINESSOWNERS COVERAGE FORM INDEX
BP 00 03    0713    BUSINESSOWNERS COVERAGE FORM
BP 01 42    0315    PA CHANGES
BP 01 91    0702    PENNSYLVANIA NOTIC
BP 04 17    0110    EMPLOYMENT RELATED PRACTICES EXCLUSION
BP 04 30    0713    PROTECTIVE SAFEGUARDS
BP 04 83    0110    REMOVAL OF INSURANCE TO VALUE PROVISION
BP 05 01    0702    CALCULATION OF PREMIUM
BP 05 23    0115    CAP ON LOSS FROM CERT ACTS OF TERRORISM
BP 05 77    0106    FUNGI OR BACTERIA EXCLUSION LIABILITY
BP 12 03    0110    LOSS PAYABLE PROVISIONS
BP 14 17    0110    DESIGNATED LOC GENERAL AGGR LIMIT
BP 15 04A   0514    EXCL ACCESS DISCLOSURE CONFIDENTIAL INFO
BP 70 27    0918    ELECTRONIC INFORMATION SYSTEMS COVERAGE
BP 71 35    0918    EQUIPMENT BREAKDOWN
BP 71 44    0410    HIRED AUTO & NON OWNED AUTO LIABILITY
BP 72 24    0918    EMPL THEFT-INCL EMPL BENEFIT PLAN
BP 72 25    0918    COMPUTER FRAUD ENDORSEMENT
BP 72 26    0918    FUNDS TRANSFER FRAUD ENDT
BP 72 27    0918    FINE ARTS
BP 72 46    0918    BOP PROPERTY ENHANCEMENT ENDORSEMENT
BP 72 47    0919    BOP LIABILITY ENHANCEMENT ENDORSEMENT
BP 72 67    0918    ORDINANCE OR LAW
BP 72 68    0918    FORGERY OR ALTERATIONS ENDORSEMENT
BP 72 75    0918    BUS LIAB COV - AGG LIMITS OF INS
BP 79 11    0704    EMPLOYMENT PRACTICES LIAB LIMITED DEF
BP 80 13    0918    EQUIPT BRKDWN DED END
BP 80 30    0918    TWO OR MORE POL ISSUED-ANTI STACK
IL 09 99A   0115    DISCL PURSUANT TO TERR RISK INS ACT
```

THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL UMBRELLA COVERAGE PART:

```
CX 00 03A   0199    COMMERCIAL EXCESS/UMBRELLA DEC
CXL   4     0403    COMMERCIAL UMBRELLA LIAB COVG
CXL  17     1099    ASBESTOS EXCLUSION
CXL  63A    0199    PROPERTY OF OTHERS EXCLUSION
CXL 103     1019    AUTO LIABILITY LIMITATION
CXL 132     0403    PERSONAL & ADVERTISING INJURY LIAB
CXL 162     0403    PA CHANGES-CANCELLATION & NON-RENEWAL
CXL 167     0199    PENNSYLVANIA NOTICE
CXL 211     0403    EMPLOYEE BENEFITS LIABILITY LIMITATION
CXL 318     0403    EXCLUSION - LEAD HAZARD
CXL 383     0702    FUNGI OR BACTERIA EXCLUSION
CXL 388     0115    CAP ON LOSSES FROM CERT ACTS OF TERR
CXL 400     0403    NUCLEAR ENERGY LIABILITY EXCLUSION END
```

**NOTICE TO POLICYHOLDER:** All the forms and endorsements contained in this policy as of the "Schedule Effective Date" are listed above. Forms and endorsements added to the policy after this date will appear on a "Policy Changes" endorsement. Please read your policy and all "Policy Changes" carefully.

**NOTE:** All applicable **"IL"** endorsements will be attached in the Common Section of the policy.

IL-7035 (08/93)

| Policy Number |
| --- |
| S   2273553 |

# COMMERCIAL POLICY FORMS AND ENDORSEMENT SCHEDULE

| **Policy Effective Date:** MARCH 15, 2020 | **Schedule Effective Date** MARCH 15, 2020 |
| --- | --- |

```
THE FOLLOWING FORMS AND ENDORSEMENTS ARE APPLICABLE TO THE
COMMERCIAL UMBRELLA COVERAGE PART:

CXL 423    0714   RESULTING DAMAGE TO YOUR WORK
CXL 453    0413   EXCL-EMPLOYMENT PRACTICES LIABILITY
CXL 462    1115   COMMERCIAL UMBRELLA LIABILITY
IL 09 99A  0115   DISCL PURSUANT TO TERR RISK INS ACT
```

**NOTICE TO POLICYHOLDER:** All the forms and endorsements contained in this policy as of the "Schedule Effective Date" are listed above. Forms and endorsements added to the policy after this date will appear on a "Policy Changes" endorsement. Please read your policy and all "Policy Changes" carefully.

**NOTE:** All applicable **"IL"** endorsements will be attached in the Common Section of the policy.

IL-7035 (08/93)

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

POLICY NUMBER: s   2273553

**IL 09 99 01 15**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## SCHEDULE

**SCHEDULE — PART I**

**Terrorism Premium (Certified Acts)**

**(A) Premium through end of year (12/31/20)** $93

**(B) Estimated Premium beyond the date specified** $23
**above**
(Refer to Paragraph **D.** in this endorsement.)

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**

s   2273553

**Additional information, if any, concerning the terrorism premium:**

**SCHEDULE — PART II**

**Federal share of terrorism losses     80%     Year:  2020**

(Refer to Paragraph **B.** in this endorsement.)

**Federal share of terrorism losses  _____  % Year:  20 ____**

(Refer to Paragraph **B.** in this endorsement.)

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2015

INSURED'S COPY

**A.  Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.  Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.  Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate at the end of the year specified in Part **I** of the Schedule of this endorsement, unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** in Part **I** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** in Part **I** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

Copyright, Insurance Services Office, Inc., 2015

**IL 09 99 01 15**
**Page 2 of 2**

INSURED'S COPY

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 17 11 98

INSURED'S COPY

# EXCLUSION — LEAD HAZARD

**IL 89 48 08 18**

## THIS EXCLUSION CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> AUTO DEALERS COVERAGE PART
> GARAGE POLICY (VIRGINIA ONLY)
> OWNERS and CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE and HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT
>     OF TRANSPORTATION

This insurance does not apply to:

**a.** "Bodily injury" arising out of the ingestion, inhalation or absorption of lead in any form;

**b.** "Property damage" or "personal and advertising injury" arising from the presence of lead in any form; or

**c.** Any loss, cost or expense arising out of any orders by, or on behalf of, any governmental authority to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize lead in any form;

at or from any premises, sites or locations which are, or were at any time, owned by, rented to, loaned to, or used by any insured, or arising from operations by any insured.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**IL 89 48 08 18**
**Page 1 of 1**

INSURED'S COPY

# ASBESTOS EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE PART
> BUSINESSOWNERS COVERAGE PART
> CAUSES OF LOSS — BASIC FORM
> CAUSES OF LOSS — BROAD FORM
> CAUSES OF LOSS — SPECIAL FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> AUTO DEALERS COVERAGE PART
> MOTOR CARRIER COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PRODUCT/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**1.** It is agreed that this insurance does not apply to any loss or damage relating to the actual, alleged, or threatened presence of, or exposure to, "asbestos," including inhalation, ingestion, irritation, absorption or other similar physical exposure to "asbestos." Such presence of, or exposure to, "asbestos" includes, but is not limited to:

    **a.** structures or manufacturing processes containing "asbestos";

    **b.** the disposal of "asbestos" or goods, products or materials containing "asbestos";

    **c.** the storing or presence of "asbestos" or goods, products or materials containing "asbestos"; or

    **d.** the removal of "asbestos" from any goods, products, materials, structures or manufacturing processes,

whether or not such "asbestos" is airborne.

**2.** We shall have no obligation under this coverage part:

    **a.** to investigate, settle or defend any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the presence of, or exposure to, "asbestos"; or

    **b.** to pay any damages, judgments, settlements, losses, costs or expenses of any kind or nature that may be awarded or incurred by reason of any such claim or suit or any such actual or threatened injury or damage from "asbestos"; or

    **c.** for any losses, costs or expenses arising out of any obligation, order, direction or request of or upon any insured or others, including, but not limited to, any governmental obligation, order, direction or request, to test for, monitor, clean up, remove, contain, treat, neutralize, in any way respond to, or assess the effects of "asbestos."

**3.** "Asbestos" includes asbestos, asbestos fibers, asbestos materials, and asbestos products, or any goods or products containing asbestos or asbestos fibers, materials, or products.

Copyright, 2018 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**IL 89 56 08 18**
**Page 1 of 1**

INSURED'S COPY

| Previous Policy Number | Policy Number |
|---|---|
| S   2273553 | S   2273553 |

# BUSINESSOWNERS COVERAGE DECLARATIONS

| **Policy Effective Date:** MARCH 15, 2020 | **Coverage Effective Date:** MARCH 15, 2020 |
|---|---|

**Named Insured is:**

**Business of Named Insured:**

## D E S C R I P T I O N   O F   P R E M I S E S

| Prem.<br>No. | Bldg.<br>No. | Location | Occupancy |
|---|---|---|---|

### Refer to "Schedule of Locations"

In return for payment of the premium and subject to all the terms of this policy, we agree with you to provide
insurance for those coverages for which a specific limit is shown in the following coverage schedule

## C O V E R A G E   S C H E D U L E

### P r o p e r t y

| Prem.<br>No. | Bldg.<br>No. | Coverage | Limit of Insurance | Blanket<br>Insurance | Deductible | Valuation | Automatic<br>Increase In<br>Insurance |
|---|---|---|---|---|---|---|---|
| 1 | 1 | BUILDING | $984,688 | BLDG & BPP | $500 | RC | 8% |
| 1 | 1 | BUSINESS PERSONAL PROPERTY | $349,878 | BLDG & BPP | $500 | RC | N/A |
| | | TOTAL BLANKET BPP & BLDG | $1,334,566 | | | | |

## L I A B I L I T Y   A N D   M E D I C A L   P A Y M E N T S

| Liability and Medical Expenses Limit | $1,000,000 | General Aggregate Limit | $3,000,000 |
|---|---|---|---|
| Medical Expenses Limit - Per Person | $10,000 | Product Aggregate Limit | $3,000,000 |

| **Forms and Endorsements:** | **Premium Amount** |
|---|---|
| | $5,500.00 |
| Refer to **"Commercial Policy Forms and Endorsement Schedule"** | |

**BP 71 19 09 19**

**INSURED'S COPY**

| Previous Policy Number | Policy Number |
|---|---|
| S 2273553 | S 2273553 |

# Businessowners Schedule
# Plus Coverage Option

**Unless specifically increased in the Optional Increased Limits Schedule, the limits set forth below are the limits that apply to the coverages included in the Plus Coverage Option.**

| COVERAGE | LIMIT |
|---|---|
| **PROPERTY** | |
| Additional Costs | $10,000 |
| Appurtenant Structures | $50,000 |
| Arson, Theft and Vandalism Rewards (not applicable in NY) | $10,000 |
| Back-Up Of Sewers And Drains | $25,000 |
| Blanket Additional Coverage (BAC): | $75,000 |
|     Accounts Receivable ($10,000 Off Premises sub-limit) | Included in BAC Limit |
|     Electronic Information Systems (Computer Equipment and Electronic Data) | Included in BAC Limit |
|     Spoilage | Included in BAC Limit |
|     Valuable Papers ($10,000 Off Premises sub-limit) | Included in BAC Limit |
| Brands and Labels | Included in BPP Limit |
| Building Owner - Leasehold Interest | $25,000 |
| Building Owner - Tenant Move Back Expenses | $25,000 |
| Business Income/Extra Expense | |
|     Actual Loss Sustained | 12 months |
|     Waiting Period | 0 hours |
| Business Income/Extra Expense Additional Coverages | |
|     Auto Physical Damage Business Income | $10,000 |
|     Civil Authority (Five mile coverage limitation from the damaged property) | 30 Days |
|     Contractual Penalties | $10,000 |
|     Dependent Properties ☒ Dependent Property ☐ Secondary Dependent Property | $25,000 |
|     Extended Period of Indemnity | 75 Days |
|     Food Contamination Shutdown | |
|         Food Contamination | $10,000 |
|         Additional Advertising Expense | $5,000 |
|     Interruption of Computer Operations | $10,000 Policy Period |
|     Newly Acquired Premises | $250,000 / 90 Days to Report |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 1 of 4**

INSURED'S COPY

| COVERAGE | LIMIT |
|---|---|
| Off Premises - Utility Services Time Element | $10,000 |
| Pollutant Clean-up and Removal - Business Income | $10,000 |
| Unnamed Premises - Business Income | $10,000 |
| Tenant Additional Rental Expense | $10,000 |
| Web Site | $25,000 |
| Business Personal Property - Seasonal Increase | 35% |
| Claim Expenses | $10,000 |
| Commercial Tools and Small Equipment | $10,000 |
| Consequential Loss (Pairs and Sets) | Included in BPP Limit |
| Crime Related Coverages | |
| Computer Fraud | $5,000 |
| Credit Card Slips | $5,000 |
| Employee Theft - Including Employee Benefit Plans | $15,000 |
| Forgery Or Alterations | $15,000 |
| Funds Transfer Fraud | $5,000 |
| Money and Securities - Inside | $10,000 |
| Money and Securities - Outside | $5,000 |
| Money Orders and Counterfeit Money | $5,000 |
| Unauthorized Business Card Use | $5,000 |
| Debris Removal - Additional Limit | 10% of Bldg/BPP Limit or $50,000 whichever is greater |
| Deferred Payments | $5,000 |
| Expediting Expense | $5,000 |
| Fine Arts ($5,000 any one item) | $10,000 |
| Fire Department Service Charge | $10,000 |
| Fire Extinguisher Systems Recharge Expense | Actual Loss Sustained |
| Glass Expenses | Included |
| Installation Property | $10,000 |
| Lock Replacement Coverage | $5,000 |
| Loss Payment on Merchandise Sold (Selling Price) | Included in BPP Limit |
| Mobile Equipment (Used to Service Premises) | $5,000 |
| Newly Acquired or Constructed Property - Building | $500,000 / 90 Days to Report |
| Newly Acquired or Constructed Property - Business Personal Property | $250,000 / 90 Days to Report |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 2 of 4**

INSURED'S COPY

| COVERAGE | LIMIT |
|---|---|
| Non-Owned Detached Trailers | $10,000 |
| Off Premises Utility Services - Direct Damage | $10,000 |
| Ordinance or Law Coverage | |
| Coverage **1** - Loss to the Undamaged Portion of the Building | Included Within Bldg Limit |
| Coverage **2** - Demolition Cost | 10% of Bldg Limit or $50,000 whichever is greater |
| Coverage **3** - Increased Cost of Construction | |
| Coverage **4** - Tenants Improvements and Betterments | $25,000 |
| Coverage **5** - Increased Period of Restoration | $25,000 |
| Outdoor Property | $50,000 |
| Outdoor Trees, Shrubs and Plants ($2,500 any one item) | $10,000 |
| Personal Effects | $10,000 |
| Personal Property At Unnamed Premises - Within The Coverage Territory | $10,000 |
| Personal Property At Unnamed Premises - Outside The Coverage Territory | $10,000 |
| Pollutant Clean-up and Removal | $25,000 |
| Premises Boundary Increased Distance | 1,000 Feet |
| Preservation of Property | 45 Days |
| Property In Transit | $25,000 |
| Salesperson's Samples | $10,000 |
| Tenant Building and Business Personal Property Coverage Required By Lease | $20,000 |
| Tenant Lease Assessment | $10,000 |
| Tenant Leasehold Improvements | $25,000 |
| Theft Loss to Building | Included in BPP Limit |
| Theft Limitations | |
| Furs | $7,500 |
| Jewelry, Watches and Precious Metals | $7,500 |
| Patterns and Dies | $7,500 |
| Virus and Harmful Code | $25,000 Occurrence $75,000 Any One Policy Year |
| | |
| **LIABILITY** | |
| Damage To Premises Rented To You | $300,000 |
| Blanket Additional Insureds As Required By Contract | Included |
| Broad Form Vendors | Included |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 3 of 4**

INSURED'S COPY

| COVERAGE | LIMIT |
|---|---|
| Discrimination | Included in P&AI |
| Incidental Malpractice | Included |
| Knowledge Of Occurrence, Offense, Claim Or Suit | Included |
| Liberalization | Included |
| Medical Payments For Non-For-Profit Members | Included in Med Pay Limit |
| Mental Anguish (not applicable in NY) | Included in the BI Definition |
| Newly Formed or Acquired Organizations | Included up to 180 days |
| Non-Owned Aircraft (not owned or operated by you) | Included |
| Non-Owned Watercraft (< 60' long, not used to carry persons or goods for charge) | Included |
| Not-for-profit Organization Members as Additional Insureds | Included |
| Primary and Non-Contributory | Included |
| Supplementary Payment - Bail Bonds | $3,000 |
| Supplementary Payment - Reasonable Expenses & Loss of Earnings | $1,000 Per Day |
| Temporary Workers as Employees | Included |
| Unintentional Failure to Disclose Hazards | Included |
| Waiver of Subrogation | Included |

Copyright, 2019 Selective Insurance Company of America. All rights reserved.

**BP 72 49 09 19**
**Page 4 of 4**

INSURED'S COPY

# PROTECTIVE SAFEGUARDS

POLICY NUMBER: s  2273553

BUSINESSOWNERS
**BP 04 30 07 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable | Description Of "P-9" If Applicable |
|---|---|---|---|
| 1 | 1 | P-1 | |
| 1 | 1 | P-2 | |
| 1 | 1 | P-9 | CENTRAL STATION BURGLAR ALARM |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A.** The following is added to the **Property General Conditions** in **Section I — Property:**

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorse-ment applies are identified by the following symbols:

   **a.** **"P-1"  Automatic Sprinkler System,** in-cluding related supervisory services.

   Automatic Sprinkler System means:

   **(1)** Any automatic fire protective or extin-guishing system, including connected:

   **(a)** Sprinklers and discharge nozzles;

   **(b)** Ducts, pipes, valves and fittings;

   **(c)** Tanks, their component parts and supports; and

   **(d)** Pumps and private fire protection mains.

   **(2)** When supplied from an automatic fire protective system:

   **(a)** Nonautomatic fire protective systems; and

   **(b)** Hydrants, standpipes and outlets.

   **b.** **"P-2"  Automatic Fire Alarm,** protecting the entire building, that is:

   **(1)** Connected to a central station; or

   **(2)** Reporting to a public or private fire alarm station.

   **c.** **"P-3"  Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

   **d.** **"P-4"  Service Contract,** with a privately owned fire department providing fire protec-tion service to the described premises.

   **e.** **"P-5"  Automatic Commercial Cooking Exhaust And Extinguishing System,** installed on cooking appliances and having the following components:

   **(1)** Hood;

Copyright, Insurance Services Office, Inc., 2012

**BP 04 30 07 13**
**Page 1 of 2**

INSURED'S COPY

**(2)** Grease removal device;

**(3)** Duct system; and

**(4)** Wet chemical fire extinguishing equipment.

**f.** **"P-9",** the protective system described in the Schedule.

**B.** The following is added to Paragraph **B. Exclusions** in **Section I — Property:**

We will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Copyright, Insurance Services Office, Inc., 2012

**BP 04 30 07 13**
**Page 2 of 2**

INSURED'S COPY

# LOSS PAYABLE CLAUSES

POLICY NUMBER:  s  2273553

BUSINESSOWNERS
**BP 12 03 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Prem. No. | Bldg. No. | Description Of Property | Loss Payee Name and Address | Applicable Clause (Indicate Paragraph A, B, C or D): |
|---|---|---|---|---|
| 1 | 1 | BUS PERS PROP | BRYN MAWR TRUST 801 LANCASTER AVENUE BRYN MAWR, PA 19010 | A |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Property Loss Condition in **SECTION I — PROPERTY,** as shown in the Declarations or in the Schedule:

**A. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Copyright, Insurance Services Office, Inc., 2009

**BP 12 03 01 10**
**Page 1 of 2**

INSURED'S COPY

**B. Lender's Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in that Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

   d. Financing statements; or

   e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure for similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this policy at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of **SECTION I — PROPERTY** will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we do not renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**C. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to Paragraph **H. Other Insurance** in **SECTION III — COMMON POLICY CONDITIONS:**

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**D. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

Copyright, Insurance Services Office, Inc., 2009

**BP 12 03 01 10**
**Page 2 of 2**

INSURED'S COPY

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

POLICY NUMBER:  S  2273553

<div align="right">

BUSINESSOWNERS
**BP 14 17 01 10**

</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

**Designated Location(s):**

EACH LOCATION OWNED BY OR RENTED TO YOU

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**SECTION II — LIABILITY** is amended as follows:

A. For all sums which the insured becomes legally obligated to pay as damages for "bodily injury" or "property damage" caused by "occurrences" covered under Paragraph **A.1. Business Liability,** and for all medical expenses caused by accidents covered under Paragraph **A.2. Medical Expenses,** which can be attributed only to ongoing operations at a single designated "location" shown in the Schedule above:

1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations.

2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Paragraph **A.1. Business Liability,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Paragraph **A.2. Medical Expenses,** regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

3. Any payments made under Paragraph **A.1. Business Liability** for damages or under Paragraph **A.2. Medical Expenses** shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expenses continue to apply. However, instead of being subject to the Other Than Products/Completed Operations Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

B. For all sums under Paragraph **A.1. Business Liability** which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "occurrences" and medical expenses caused by accidents under Paragraph **A.2. Medical Expenses,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

Copyright, Insurance Services Office, Inc., 2009

<div align="right">

**BP 14 17 01 10**
**Page 1 of 2**

</div>

INSURED'S COPY

**1.** Any payments made under Paragraph **A.1. Business Liability** for damages or under Paragraph **A.2. Medical Expenses** for medical expenses shall reduce the amount available under the Other Than Products/Completed Operations Aggregate Limit or the Products/Completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products/Completed Operations Aggregate Limit, and not reduce the Other Than Products/Completed Operations Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Liability And Medical Expenses Definitions** section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Paragraph **D. Liability And Medical Expenses Limits Of Insurance,** not otherwise modified by this endorsement, shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 2009

INSURED'S COPY

# EQUIPMENT BREAKDOWN DEDUCTIBLE ENDORSEMENT

POLICY NUMBER: S 2273553

BUSINESSOWNERS
**BP 80 13 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN

The following is added to EQUIPMENT BREAKDOWN:

### SCHEDULE

The Deductibles applicable to any one "accident" are shown below:

| Prem. No. | Bldg. No. | Deductible(s) |
|-----------|-----------|---------------|
|           |           |               |

Unless otherwise shown in the Schedule above, the deductible(s) will be:

COMBINED COVG   FOLLOWS PROPERTY DEDUCTIBLE

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 80 13 09 18**
**Page 1 of 1**

INSURED'S COPY

# BUSINESSOWNERS COVERAGE FORM INDEX

BUSINESSOWNERS
**BP IN 01 07 13**

This index is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy (including endorsements) must be read in its entirety. The features may also be affected by related provisions not referenced at all in the index, or noted elsewhere in it. For instance, an **Exclusion** feature addresses a specific policy exclusion; but restrictions of coverage and exclusions also appear within the areas where coverage, covered causes of loss, etc., are described.

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Abandonment Property Loss Condition | 24 | Business Liability Coverage | 34-36 |
| Accounts Receivable Coverage Extension | 16 | Business Personal Property Coverage | 1-2 |
| Accounts Receivable Exclusion | 22 | Business Personal Property Limit – Seasonal Increase (Limit Of Insurance) | 23 |
| Acts Or Decisions Exclusion | 22 | Business Personal Property Temporarily In Portable Storage Units Coverage Extension | 17 |
| Additional Coverages | 3-14 | Cancellation Condition | 50 |
| Additional Exclusion - Loss Or Damage To Products Exclusion | 22 | Certain Computer-related Losses Exclusion | 19 |
| "Advertisement" Definition | 46 | Changes Condition | 51 |
| Aggregate Limits (Liability And Medical Expenses Limits Of Insurance) | 45 | Changes In Or Extremes Of Temperature Exclusion | 21 |
| Aircraft, Auto Or Watercraft Exclusion | 38-39 | Civil Authority Additional Coverage | 8-9 |
| Appraisal Property Loss Condition | 24 | Collapse Additional Coverage | 5-6 |
| "Auto" Definition | 46 | Collapse Exclusion | 21 |
| Bankruptcy General Condition | 45 | "Computer" Definition | 32 |
| "Bodily Injury" Definition | 46 | Concealment, Misrepresentation Or Fraud Condition | 51 |
| Building Coverage | 1 | Consequential Losses Exclusion | 20 |
| Building Limit - Automatic Increase (Limits Of Insurance) | 23 | Continuous Or Repeated Seepage Or Leakage Of Water Exclusion | 21-22 |
| Business Income Additional Coverage | 6-7 | Contractual Liability Exclusion | 36 |
| Business Income And Extra Expense Exclusions | 22 | Control Of Property General Condition | 28 |
| Business Income From Dependent Properties Additional Coverage | 10-11 | "Counterfeit Money" Definition | 32 |

INSURED'S COPY

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Coverage Extension - Supplementary Payments (Business Liability Coverage) | 35-36 | Employer's Liability Exclusion | 37 |
| Coverage Extensions - Section I — Property | 14-17 | Equipment Breakdown Protection Optional Coverage | 31-32 |
| "Coverage Territory" Definition | 46-47 | Errors Or Omissions Exclusion | 21 |
| Covered Causes Of Loss | 2 | Examination Of Your Books And Records Condition | 51 |
| Covered Property | 1-2 | Exclusions - Section I — Property | 17-22 |
| Damage To Impaired Property Or Property Not Physically Injured Exclusion | 40 | Exclusions - Section II — Liability | 36-44 |
| Damage To Property Exclusion | 40 | "Executive Officer" Definition | 47 |
| Damage To Your Product Exclusion | 40 | Expected Or Intended Injury Exclusion | 36 |
| Damage To Your Work Exclusion | 40 | Exposed Property Exclusion | 20 |
| Dampness Or Dryness Of Atmosphere Exclusion | 21 | Extended Business Income Coverage (Business Income Additional Coverage) | 7 |
| Debris Removal Additional Coverage | 3-4 | Extra Expense Additional Coverage | 7-8 |
| Deductibles | 23-24 | False Pretense Exclusion | 20 |
| Dishonesty Exclusion | 20 | Fire Department Service Charge Additional Coverage | 5 |
| Duties In The Event Of Loss Or Damage Property Loss Condition | 24 | Fire Extinguisher Systems Recharge Expense Additional Coverage | 11-12 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit General Condition | 46 | Forgery Or Alteration Additional Coverage | 9 |
| Earth Movement Exclusion | 17-18 | Frozen Plumbing Exclusion | 20 |
| Electrical Apparatus Exclusion | 19-20 | "Fungi" Definition | 32 |
| Electrical Disturbance Exclusion | 21 | "Fungi", Wet Rot Or Dry Rot Exclusion | 19 |
| Electronic Data Additional Coverage | 12 | Glass Expenses Additional Coverage | 11 |
| "Electronic Data" Definition | 32 | Governmental Action Exclusion | 18 |
| Electronic Data Exclusion | 41-42 | "Hostile Fire" Definition | 47 |
| "Employee" Definition | 47 | "Impaired Property" Definition | 47 |
| Employee Dishonesty Optional Coverage | 29-31 | Increased Cost Of Construction Additional Coverage | 9-10 |

Copyright, Insurance Services Office, Inc., 2012

**BP IN 01 07 13**

INSURED'S COPY

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Inspections And Surveys Condition | 51 | Medical Expenses Exclusions | 42-44 |
| Installation, Testing, Repair Exclusion | 21 | "Member" Definition | 32 |
| Insurance Under Two Or More Coverages Condition | 51 | Mobile Equipment Exclusion | 39 |
| "Insured Contract" Definition | 47 | "Mobile Equipment" Definition | 48 |
| Interruption Of Computer Operations Additional Coverage | 12-13 | Money And Securities Optional Coverage | 29 |
| "Leased Worker" Definition | 47 | "Money" Definition | 32 |
| Legal Action Against Us General Condition - Section II — Liability | 46 | Money Orders And "Counterfeit Money" Additional Coverage | 9 |
| Legal Action Against Us Property Loss Condition - Section I — Property | 24 | Mortgageholders Property General Condition | 28 |
| Liability And Medical Expenses Definitions | 46-50 | Neglect Exclusion | 21 |
| Liability And Medical Expenses General Conditions | 45-46 | Negligent Work Exclusion | 22 |
| Liability And Medical Expenses Limits Of Insurance | 45 | Nesting Or Infestation Exclusion | 21 |
| Liberalization Condition | 51 | Newly Acquired Or Constructed Property Coverage Extension | 14-15 |
| Limitations | 2-3 | No Benefit To Bailee Property General Condition | 28 |
| Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage | 13-14 | Nuclear Energy Liability Exclusion | 42-44 |
| Limits Of Insurance - Section I — Property | 23 | Nuclear Hazard Exclusion | 18 |
| Liquor Liability Exclusion | 36-37 | "Occurrence" Definition | 48 |
| "Loading Or Unloading" Definition | 48 | "Operations" Definition | 32 |
| Loss Payment Property Loss Condition | 24-27 | Optional Coverages | 28-32 |
| "Manager" Definition | 32 | Ordinance Or Law Exclusion | 17 |
| Marring Or Scratching Exclusion | 21 | Other Insurance Condition | 51 |
| Mechanical Breakdown Exclusion | 21 | Other Types Of Loss Exclusion | 21 |
| Medical Expenses Coverage | 36 | Outdoor Property Coverage Extension | 15 |

Copyright, Insurance Services Office, Inc., 2012

**BP IN 01 07 13**
**Page 3 of 5**

INSURED'S COPY

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Outdoor Signs Optional Coverage | 28-29 | Property Not Covered | 2 |
| "Period Of Restoration" Definition | 32 | Recall Of Products, Work Or Impaired Property Exclusion | 40 |
| "Personal And Advertising Injury" Definition | 48 | Recovered Property Loss Condition | 27 |
| Personal And Advertising Injury Exclusion | 40-41 | Resumption Of Operations Property Loss Condition | 27 |
| Personal Effects Coverage Extension | 15 | Rust Or Other Corrosion Exclusion | 21 |
| Personal Property Off-Premises Coverage Extension | 15 | Section I — Property | 1-33 |
| Policy Period, Coverage Territory Property General Condition | 28 | Section II — Liability | 34-50 |
| Pollutant Clean-up And Removal Additional Coverage | 8 | Section III — Common Policy Conditions | 50-52 |
| "Pollutants" Definition - Section I — Property | 33 | "Securities" Definition | 33 |
| "Pollutants" Definition - Section II — Liability | 48 | Separation Of Insureds General Condition | 46 |
| Pollution Exclusion - Section I — Property | 21 | Settling, Cracking, Shrinking Or Expansion Exclusion | 21 |
| Pollution Exclusion - Section II — Liability | 37-38 | Smog Exclusion | 21 |
| Premium Audit Condition | 52 | Smoke, Vapor, Gas Exclusion | 20 |
| Premiums Condition | 51-52 | "Specified Causes Of Loss" Definition | 33 |
| Preservation Of Property Additional Coverage | 4-5 | Steam Apparatus Exclusion | 20 |
| "Products-completed Operations Hazard" Definition | 49 | "Stock" Definition | 33 |
| Professional Services Exclusion | 39-40 | "Suit" Definition | 49 |
| "Property Damage" Definition | 49 | "Temporary Worker" Definition | 49 |
| Property Definitions | 32-33 | Transfer Of Rights Of Recovery Against Others To Us Condition | 52 |
| Property General Conditions | 28 | Transfer Of Your Rights And Duties Under This Policy Condition | 52 |
| Property Loss Conditions | 24-28 | Utility Services Exclusion | 18 |

Copyright, Insurance Services Office, Inc., 2012

**BP IN 01 07 13**
**Page 4 of 5**

INSURED'S COPY

| Businessowners Coverage Feature | Page Number | Businessowners Coverage Feature | Page Number |
|---|---|---|---|
| Vacancy Property Loss Condition | 27 | Water Damage, Other Liquids, Powder Or Molten Material Damage Additional Coverage | 6 |
| Valuable Papers And Records Coverage Extension | 15-16 | Water Exclusion | 19 |
| "Valuable Papers And Records" Definition | 33 | Wear And Tear Exclusion | 21 |
| Violation Of Customer Protection Statutes Exclusion | 42 | Weather Conditions Exclusion | 22 |
| Virus Or Bacteria Exclusion | 19 | Who Is An Insured | 44-45 |
| "Volunteer Worker" Definition | 49 | Workers' Compensation And Similar Laws Exclusion | 37 |
| War And Military Action Exclusion | 18 | "Your Product" Definition | 49-50 |
| War Exclusion | 39 | "Your Work" Definition | 50 |

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

# BUSINESSOWNERS COVERAGE FORM

BUSINESSOWNERS
**BP 00 03 07 13**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** — Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section I — Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** — Liability.

## SECTION I — PROPERTY

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph **b.** below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph **2.** Property Not Covered.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Your personal property in apartments, rooms or common areas furnished by you as landlord;

**(5)** Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** Fire extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(6)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the buildings or structures;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:

**(1)** Property you own that is used in your business;

**(2)** Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition Paragraph **E.5.d.(3)(b);**

**(3)** Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(4)** Leased personal property which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **1.b.(2);** and

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

(5) Exterior building glass, if you are a tenant and no Limit Of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

**2.   Property Not Covered**

Covered Property does not include:

**a.**   Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.**   "Money" or "securities" except as provided in the:

(1) Money And Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

**c.**   Contraband, or property in the course of illegal transportation or trade;

**d.**   Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**e.**   Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than trees, shrubs or plants which are part of a vegetated roof), all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

**f.**   Watercraft (including motors, equipment and accessories) while afloat;

**g.**   Accounts, bills, food stamps, other evidences of debt, accounts receivable or "valuable papers and records"; except as otherwise provided in this policy;

**h.**   "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration. This paragraph does not apply to "computer(s)" while held as "stock";

**i.**   "Electronic data", except as provided under Additional Coverages - Electronic Data. This Paragraph **i.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system; or

**j.**   Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings.

**3.   Covered Causes Of Loss**

Direct physical loss unless the loss is excluded or limited under Section **I** — Property.

**4.   Limitations**

**a.**   We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(6)** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(a)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(b)** Changes in or extremes of temperature;

**(c)** Disease;

**(d)** Frost or hail; or

**(e)** Rain, snow, ice or sleet.

**b.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(1)** Animals, and then only if they are killed or their destruction is made necessary.

**(2)** Fragile articles such as glassware, statuary, marble, chinaware and porcelain, if broken. This restriction does not apply to:

**(a)** Glass that is part of the exterior or interior of a building or structure;

**(b)** Containers of property held for sale; or

**(c)** Photographic or scientific instrument lenses.

**c.** For loss or damage by theft, the following types of property are covered only up to the limits shown (unless a higher Limit Of Insurance is shown in the Declarations):

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this policy;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most that we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** Subject to Paragraph **(3)(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if Paragraphs **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)** **Examples**

**Example 1**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 50,000 |
| Amount of Loss Payable | $ | 49,500 |
| ($50,000 - $500) | | |
| Debris Removal Expense | $ | 10,000 |
| Debris Removal Expense Payable | $ | 10,000 |
| ($10,000 is 20% of $50,000) | | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| ($80,000 - $500) | | |
| Debris Removal Expense | $ | 40,000 |
| Debris Removal Expense Payable | $ | 10,000 |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payment for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for service at each premises described in the Declarations, unless a different limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**(1)** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

**(a)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(b)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(c)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**(d)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(i)** A cause of loss listed in Paragraph **(2)(a)** or **(2)(b)**;

**(ii)** One or more of the "specified causes of loss";

**(iii)** Breakage of building glass;

**(iv)** Weight of people or personal property; or

**(v)** Weight of rain that collects on a roof.

**(3)** This Additional Coverage - Collapse does not apply to:

**(a)** A building or any part of a building that is in danger of falling down or caving in;

**(b)** A part of a building that is standing, even if it has separated from another part of the building; or

**(c)** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

if an abrupt collapse is caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

**(5)** If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a cause of loss listed in Paragraphs **(2)(a)** through **(2)(d)** of this Additional Coverage;

**(b)** The personal property which collapses is inside a building; and

**(c)** The property which collapses is not of a kind listed in Paragraph **(4)**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this policy.

**(8)** The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **d.(1)** through **d.(7)**.

**e.  Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f.  Business Income**

**(1)  Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(i)** The portion of the building which you rent, lease or occupy;

**(ii)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(iii)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 6 of 53**

INSURED'S COPY

**(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.

**(c)** Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

**(ii)** Continuing normal operating expenses incurred, including payroll.

**(d)** Ordinary payroll expenses:

**(i)** Means payroll expenses for all your employees except:

   **i.** Officers;

   **ii.** Executives;

   **iii.** Department Managers;

   **iv.** Employees under contract; and

   **v.** Additional Exemptions shown in the Declarations as:

     • Job Classifications; or

     • Employees.

**(ii)** Include:

   **i.** Payroll;

   **ii.** Employee benefits, if directly related to payroll;

   **iii.** FICA payments you pay;

   **iv.** Union dues you pay; and

   **v.** Workers' compensation premiums.

**(2)** **Extended Business Income**

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** Ends on the earlier of:

   **i.** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

   **ii.** 60 consecutive days after the date determined in Paragraph **(a)(i)** above, unless a greater number of consecutive days is shown in the Declarations.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** This Additional Coverage is not subject to the Limits of Insurance of Section **I** — Property.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises mean:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** At the described premises; or

**(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

**(i)** Repair or replace any property; or

**(ii)** Research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

**(3)** With respect to the coverage provided in this Additional Coverage, suspension means:

**(a)** The partial slowdown or complete cessation of your business activities; or

**(b)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**(4)** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section **I** — Property.

**h. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**i.   Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for necessary Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance of Section **I** — Property.

**j.   Money Orders And "Counterfeit Money"**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**(2)** "Counterfeit money" that is acquired during the regular course of business.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k.   Forgery Or Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act and will be treated the same as the original it replaced.

**(4)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit Of Insurance is shown in the Declarations.

**l.   Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in Paragraphs **(3)** through **(9)** of this Additional Coverage.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(3)** The ordinance or law referred to in Paragraph **(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet rot or dry rot.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under Section **I** — Property, is $10,000. If a damaged building(s) is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for each damaged building, is $10,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in Section **I** — Property do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in Paragraph **(6)** of this Additional Coverage, is not subject to such limitation.

**m. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property or secondary dependent property caused by or resulting from any Covered Cause of Loss.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

However, this Additional Coverage does not apply when the only loss at the premises of a dependent property or secondary dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property or secondary dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay under this Additional Coverage is $5,000 unless a higher Limit Of Insurance is indicated in the Declarations.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

    **(a)** Source of materials; or

    **(b)** Outlet for your products.

**(3)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

    **(a)** Deliver materials or services to you, or to others for your account. But services does not mean water supply services, wastewater removal services, communication supply services or power supply services;

    **(b)** Accept your products or services;

    **(c)** Manufacture your products for delivery to your customers under contract for sale; or

    **(d)** Attract customers to your business.

The dependent property must be located in the coverage territory of this policy.

**(5)** Secondary dependent property means an entity which is not owned or operated by a dependent property and which;

    **(a)** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

    **(b)** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    **(i)** Water supply services;

    **(ii)** Wastewater removal services;

    **(iii)** Communication supply services; or

    **(iv)** Power supply services.

The secondary dependent property must be located in the coverage territory of this policy.

**(6)** The coverage period for Business Income under this Additional Coverage:

    **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property or secondary dependent property; and

    **(b)** Ends on the date when the property at the premises of the dependent property or secondary dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(7)** The Business Income coverage period, as stated in Paragraph **(6)**, does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not reduce the Business Income coverage period.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

(8) The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income From Dependent Properties Additional Coverage.

**n. Glass Expenses**

(1) We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

(2) We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

**o. Fire Extinguisher Systems Recharge Expense**

(1) We will pay:

(a) The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

(b) For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

(2) No coverage will apply if the fire extinguishing system is discharged during installation or testing.

(3) The most we will pay under this Additional Coverage is $5,000 in any one occurrence.

**p. Electronic Data**

(1) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that "electronic data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "electronic data" was stored, with blank media of substantially identical type.

(2) The Covered Causes of Loss applicable to Business Personal Property include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

(3) The most we will pay under this Additional Coverage - Electronic Data for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved, is $10,000, unless a higher Limit Of Insurance is shown in the Declarations. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in, but not after, that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

(4) This Additional Coverage does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**q. Interruption Of Computer Operations**

(1) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(2)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

**(b)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

**(c)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit Of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(4)** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(3)** above has not been exhausted.

**(5)** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(6)** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **(1)** through **(4)** of this Additional Coverage.

**(7)** This Additional Coverage does not apply when loss or damage to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**r. Limited Coverage For "Fungi", Wet Rot Or Dry Rot**

**(1)** The coverage described in Paragraphs **r.(2)** and **r.(6)** only applies when the "fungi", wet rot or dry rot is the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**(2)** We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

**(a)** Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot is present.

**(3)** The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverages.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

(6) The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage:

(a) If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense Additional Coverages is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

(b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**6. Coverage Extensions**

In addition to the Limits of Insurance of Section **I** — Property, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Buildings, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at premises other than the one described, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Business Personal Property**

If this policy covers Business Personal Property, you may extend that insurance to apply to:

(a) Business Personal Property, including such property that you newly acquire, at any location you acquire; or

(b) Business Personal Property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

This Extension does not apply to personal property that you temporarily acquire in the course of installing or performing work on such property or your wholesale activities.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as Covered Property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as Covered Property.

**b. Personal Property Off-premises**

You may extend the insurance provided by this policy to apply to your Covered Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**c.  Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than trees, shrubs or plants which are part of a vegetated roof), including debris removal expense. Loss or damage must be caused by or result from any of the following causes of loss:

**(1)**  Fire;

**(2)**  Lightning;

**(3)**  Explosion;

**(4)**  Riot or Civil Commotion; or

**(5)**  Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, unless a higher Limit Of Insurance for Outdoor Property is shown in the Declarations, but not more than $1,000 for any one tree, shrub or plant.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**d.  Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees, including temporary or leased employees. This extension does not apply to:

**(1)**  Tools or equipment used in your business; or

**(2)**  Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e.  Valuable Papers And Records**

**(1)**  You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

**(2)**  This Coverage Extension does not apply to:

**(a)**  Property held as samples or for delivery after sale; and

**(b)**  Property in storage away from the premises shown in the Declarations.

**(3)**  The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $10,000, unless a higher Limit Of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $5,000.

**(4)**  Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**(5)**  Paragraph **B.** Exclusions in Section I — Property does not apply to this Coverage Extension except for:

**(a)**  Paragraph **B.1.c.,** Governmental Action;

**(b)**  Paragraph **B.1.d.,** Nuclear Hazard;

**(c)**  Paragraph **B.1.f.,** War And Military Action;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

(d) Paragraph **B.2.f.,** Dishonesty;

(e) Paragraph **B.2.g.,** False Pretense;

(f) Paragraph **B.2.m.(2),** Errors Or Omissions; and

(g) Paragraph **B.3.**

f. **Accounts Receivable**

(1) You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(d) Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

(2) The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

(3) Paragraph **B.** Exclusions in Section **I** — Property does not apply to this Coverage Extension except for:

(a) Paragraph **B.1.c.,** Governmental Action;

(b) Paragraph **B.1.d.,** Nuclear Hazard;

(c) Paragraph **B.1.f.,** War And Military Action;

(d) Paragraph **B.2.f.,** Dishonesty;

(e) Paragraph **B.2.g.,** False Pretense;

(f) Paragraph **B.3.;** and

(g) Paragraph **B.6.,** Accounts Receivable Exclusion.

g. **Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the buildings or structures described in the Declarations or within 100 feet of the described premises, whichever distance is greater.

(2) The limitation under Paragraph **A.4.a.(5)** also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the Business Personal Property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the Business Personal Property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to Business Personal Property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form, and does not apply to loss or damage to the storage unit itself.

B. **Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

a. **Ordinance Or Law**

(1) The enforcement of or compliance with any ordinance or law:

(a) Regulating the construction, use or repair of any property; or

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in Paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for volcanic action as set forth in **5(a)**, **(5)(b)** and **5(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 18 of 53**

INSURED'S COPY

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

This exclusion does not apply to loss or damage to "computer(s)" and "electronic data".

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**h. Certain Computer-related Losses**

**(1)** The failure, malfunction or inadequacy of:

**(a)** Any of the following, whether belonging to any insured or to others:

**(i)** "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

**(ii)** "Computer" application software or other "electronic data" as may be described elsewhere in this policy;

**(iii)** "Computer" operating systems and related software;

**(iv)** "Computer" networks;

**(v)** Microprocessors ("computer" chips) not part of any "computer" system; or

**(vi)** Any other computerized or electronic equipment or components; or

**(b)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **(a)** above;

due to the inability to correctly recognize, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**(2)** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **(1)** above.

However, if excluded loss or damage, as described in Paragraph **(1)** above, results in a "specified cause of loss" under Section **I —** Property, we will pay only for the loss or damage caused by such "specified cause of loss".

We will not pay for repair, replacement or modification of any items in Paragraph **(1)(a)** or **(1)(b)** to correct any deficiencies or change any features.

**i. "Fungi", Wet Rot Or Dry Rot**

Presence, growth, proliferation, spread or any activity of "fungi", wet rot or dry rot.

But if "fungi", wet rot or dry rot results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungi", wet rot or dry rot results from fire or lightning; or

**(2)** To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot Additional Coverage, with respect to loss or damage by a cause of loss other than fire or lightning.

**j. Virus Or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** However, the exclusion in Paragraph **(1)** does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.

**(3)** With respect to any loss or damage subject to the exclusion in Paragraph **(1),** such exclusion supersedes any exclusion relating to "pollutants".

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(1)** Electrical current, including arcing;

**(2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(3)** Pulse of electromagnetic energy; or

**(4)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by fire.

We will pay for loss or damage to "computer(s)" due to artificially generated electrical, magnetic or electromagnetic energy if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

d. **Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

f. **Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

g. **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

h. **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

i. **Collapse**

**(1)** Collapse, including any of the following conditions of property or any part of the property:

**(a)** An abrupt falling down or caving in;

**(b)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(c)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **i.(1)(a)** or **i.(1)(b).**

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**(2)** This Exclusion i. does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

j. **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**k. Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l. Other Types Of Loss**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force.

This exclusion does not apply with respect to the breakdown of "computer(s)";

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**m. Errors Or Omissions**

Errors or omissions in:

**(1)** Programming, processing or storing data, as described under "electronic data" or in any "computer" operations; or

**(2)** Processing or copying "valuable papers and records".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**n. Installation, Testing, Repair**

Errors or deficiency in design, installation, testing, maintenance, modification or repair of your "computer" system including "electronic data".

However, we will pay for direct physical loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Form.

**o. Electrical Disturbance**

Electrical or magnetic injury, disturbance or erasure of "electronic data", except as provided for under the Additional Coverages of Section **I** — Property.

However, we will pay for direct loss or damage caused by lightning.

**p. Continuous Or Repeated Seepage Or Leakage Of Water**

Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**3.** We will not pay for loss or damage caused by or resulting from any of the following Paragraphs **a.** through **c.** But if an excluded cause of loss that is listed in Paragraphs **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **B.1.** above to produce the loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c. Negligent Work**

Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**4. Additional Exclusion**

The following applies only to the property specified in this Additional Exclusion:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**5. Business Income And Extra Expense Exclusions**

**a.** We will not pay for:

**(1)** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage.

**(2)** Any other consequential loss.

**b.** With respect to this exclusion, suspension means:

**(1)** The partial slowdown or complete cessation of your business activities; and

**(2)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**6. Accounts Receivable Exclusion**

The following additional exclusion applies to the Accounts Receivable Coverage Extension:

We will not pay for:

**a.** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**b.** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**c.** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limits Of Insurance of Section **I** — Property shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The amounts of insurance applicable to the Coverage Extensions and the following Additional Coverages apply in accordance with the terms of such coverages and are in addition to the Limits of Insurance of Section **I** — Property:

**a.** Fire Department Service Charge;

**b.** Pollutant Clean-up And Removal;

**c.** Increased Cost Of Construction;

**d.** Business Income From Dependent Properties;

**e.** Electronic Data; and

**f.** Interruption Of Computer Operations.

**4.** Building Limit - Automatic Increase

**a.** In accordance with Paragraph **C.4.b.,** the Limit of Insurance for Buildings will automatically increase by 8%, unless a different percentage of annual increase is shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**b.** The amount of increase is calculated as follows:

**(1)** Multiply the Building limit that applied on the most recent of the policy inception date, the policy anniversary date or any other policy change amending the Building limit by:

**(a)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 7% is .07); or

**(b)** .08, if no percentage of annual increase is shown in the Declarations; and

**(2)** Multiply the number calculated in accordance with **b.(1)** by the number of days since the beginning of the current policy year, or the effective date of the most recent policy change amending the Building limit, divided by 365.

**Example**

If:

The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is

$100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit - Seasonal Increase**

**a.** Subject to Paragraph **5.b.**, the Limit of Insurance for Business Personal Property is automatically increased by:

**(1)** The Business Personal Property - Seasonal Increase percentage shown in the Declarations; or

**(2)** 25% if no Business Personal Property - Seasonal Increase percentage is shown in the Declarations;

to provide for seasonal variances.

**b.** The increase described in Paragraph **5.a.** will apply only if the Limit Of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

**D. Deductibles**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I — Property.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Outdoor Signs; and

**d.** Forgery or Alteration.

But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense;

**d.** Civil Authority; and

**e.** Fire Extinguisher Systems Recharge Expense.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**3. Duties In The Event Of Loss Or Damage**

   **a.** You must see that the following are done in the event of loss or damage to Covered Property:

     **(1)** Notify the police if a law may have been broken.

     **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

     **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

     **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limits of Insurance of Section **I** — Property. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

     **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

     **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

       Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

     **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

     **(8)** Cooperate with us in the investigation or settlement of the claim.

     **(9)** Resume all or part of your "operations" as quickly as possible.

   **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

   **a.** There has been full compliance with all of the terms of this insurance; and

   **b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this policy:

   **a.** At our option, we will either:

     **(1)** Pay the value of lost or damaged property;

     **(2)** Pay the cost of repairing or replacing the lost or damaged property;

     **(3)** Take all or any part of the property at an agreed or appraised value; or

     **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to Paragraph **d.(1)(e)** below.

   **b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

   **c.** We will not pay you more than your financial interest in the Covered Property.

   **d.** Except as provided in Paragraphs **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

     **(1)** At replacement cost without deduction for depreciation, subject to the following:

       **(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

         **(i)** The Limit of Insurance under Section **I** — Property that applies to the lost or damaged property;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

    **i.** Of comparable material and quality; and

    **ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** The actual cash value of the lost or damaged property; or

**(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property.

**Example**

The full replacement cost of property which suffers a total loss is $100,000. The property is insured for $70,000. 80% of the full replacement cost of the property immediately before the loss is $80,000 ($100,000 x .80 = $80,000). A partial loss of $25,000 is sustained. The amount of recovery is determined as follows:

Amount of recovery

$70,000 ÷ $80,000 = .875

.875 x $25,000 = $21,875

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

However, if the cost to repair or replace the damaged building property is $2,500 or less, we will settle the loss according to the provisions of Paragraphs **d.(1)(a)** and **d.(1)(b)** above whether or not the actual repair or replacement is complete.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the Actual Cash Value - Buildings option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

**(a)** Used or secondhand merchandise held in storage or for sale;

**(b)** Property of others. However, if an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

**(d)** Manuscripts; and

**(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marble, bronzes, porcelain and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants' improvements and betterments at:

**(a)** Replacement cost if you make repairs promptly.

**(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(c)** Nothing if others pay for repairs or replacement.

**(6)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(7)** Applicable only to accounts receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to reestablish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**6. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limits of Insurance of Section **I** — Property.

**7. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs **(a)** and **(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in Paragraphs **(1)(a)** through **(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. Property General Conditions**

**1. Control Of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term "mortgageholder" includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under Section **I** — Property:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below:

**1. Outdoor Signs**

  **a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

    **(1)** Owned by you; or

    **(2)** Owned by others but in your care, custody or control.

  **b.** Paragraph **A.3.,** Covered Causes Of Loss and Paragraph **B.,** Exclusions in Section **I** — Property do not apply to this Optional Coverage, except for:

    **(1)** Paragraph **B.1.c.,** Governmental Action;

    **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

    **(3)** Paragraph **B.1.f.,** War And Military Action.

  **c.** We will not pay for loss or damage caused by or resulting from:

    **(1)** Wear and tear;

    **(2)** Hidden or latent defect;

    **(3)** Rust;

    **(4)** Corrosion; or

    **(5)** Mechanical breakdown.

  **d.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Outdoor Signs shown in the Declarations.

  **e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Money And Securities**

  **a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee (including a temporary or leased employee) having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    **(1)** Theft, meaning any act of stealing;

    **(2)** Disappearance; or

    **(3)** Destruction.

  **b.** In addition to the Limitations and Exclusions applicable to Section **I** — Property, we will not pay for loss:

    **(1)** Resulting from accounting or arithmetical errors or omissions;

    **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

    **(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

  **c.** The most we will pay for loss in any one occurrence is:

    **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

      **(a)** In or on the described premises; or

      **(b)** Within a bank or savings institution; and

    **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

  **d.** All loss:

    **(1)** Caused by one or more persons; or

    **(2)** Involving a single act or series of related acts;

  is considered one occurrence.

  **e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**3. Employee Dishonesty**

  **a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

    **(1)** Cause you to sustain loss or damage; and also

    **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of emloyment) for:

      **(a)** Any employee; or

      **(b)** Any other person or organization.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)** Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph **a.**), "managers" or directors:

**(a)** Whether acting alone or in collusion with other persons; or

**(b)** While performing services for you or otherwise.

**(3)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**(4)** Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of acts;

is considered one occurrence.

**e.** If any loss is covered:

**(1)** Partly by this insurance; and

**(2)** Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

**(1)** This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(2)** The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

**(1)** This Optional Coverage as of its effective date; or

**(2)** The prior insurance had it remained in effect.

**j.** With respect to the Employee Dishonesty Optional Coverage in Paragraph **G.3.,** employee means:

**(1)** Any natural person:

**(a)** While in your service or for 30 days after termination of service;

**(b)** Who you compensate directly by salary, wages or commissions; and

**(c)** Who you have the right to direct and control while performing services for you;

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 31 of 53**

**(2)** Any natural person who is furnished temporarily to you:

    **(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

    **(b)** To meet seasonal or short-term workload conditions;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

**(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

**(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

**(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

**(2)** Any "manager", director or trustee except while performing acts coming within the usual duties of an employee.

**4. Equipment Breakdown Protection Coverage**

  **a.** We will pay for direct loss of or damage to Covered Property caused by or resulting from a mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment.

    Mechanical breakdown or electrical failure to pressure, mechanical or electrical machinery and equipment does not mean any:

    **(1)** Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

    **(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

    **(3)** Damage to any vacuum tube, gas tube, or brush; or

    **(4)** The functioning of any safety or protective device.

  **b.** Paragraphs **A.4.a.(1)** and **A.4.a.(2)**, Limitations, do not apply to this Optional Coverage.

  **c.** With respect to the coverage provided by this Optional Coverage, the following exclusions in Paragraph **B.** Exclusions do not apply:

    **(1)** Paragraph **B.2.a.,** Electrical Apparatus;

    **(2)** Paragraph **B.2.d.,** Steam Apparatus; and

    **(3)** Paragraph **B.2.l.(6),** Mechanical Breakdown.

  **d.** With respect to the coverage provided by this Optional Coverage, Paragraph **G.1.c.(5)** of the Outdoor Signs Optional Coverage does not apply.

  **e.** If a dollar deductible is shown in the Declarations for this Optional Coverage, we will first subtract the applicable deductible amount from any loss we would otherwise pay. We will then pay the amount of loss in excess of the applicable deductible up to the applicable limit for this coverage.

    If no optional deductible is chosen for this Optional Coverage, the Property Deductible shown in the Declarations applies.

  **f.** With respect to Additional Coverages **5.f.** Business Income and **5.g.** Extra Expense, if the 72-hour time period in the definition of "period of restoration" (hereinafter referred to as time deductible) is amended for this Optional Coverage as shown in the Declarations, we will not pay for any Business Income loss that occurs during the consecutive number of hours shown as the time deductible in the Declarations immediately following a mechanical breakdown or electrical failure. If a time deductible is shown in days, each day shall mean 24 consecutive hours.

    With respect to the coverage provided by this Optional Coverage, any time deductible shown in the Declarations for Equipment Breakdown Protection Coverage supersedes any time deductible otherwise applicable to the Business Income coverage provided by this policy.

  **g.** With respect to the coverage provided by this Optional Coverage, Paragraph **H. Property Definitions** is amended as follows:

    **1.** "Computer" means:

      **a.** Programmable electronic equipment that is used to store, retrieve and process data; and

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" includes those used to operate production-type machinery or equipment.

**h.** Whenever any covered pressure, mechanical or electrical machinery and equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may suspend coverage provided by this Optional Coverage for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment.

However, coverage provided by this Optional Coverage may be reinstated for loss from a mechanical breakdown or electrical failure to that pressure, mechanical or electrical machinery and equipment if the reasons for the suspension are found by any of our representatives to no longer exist.

We may suspend or reinstate this Optional coverage by mailing or delivering a written notification regarding the suspension or reinstatement to:

**(1)** Your last known address; or

**(2)** The address where the pressure, mechanical or electrical machinery and equipment is located.

This notification will indicate the effective date of the suspension or reinstatement.

If the coverage provided by this Optional Coverage is not reinstated, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Computer" means:

**a.** Programmable electronic equipment that is used to store, retrieve and process data; and

**b.** Associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production-type machinery or equipment.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a "computer" or device connected to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**4.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**6.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**7.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Traveler's checks, register checks and money orders held for sale to the public.

**8.** "Operations" means your business activities occurring at the described premises.

**9.** "Period of restoration":

**a.** Means the period of time that:

**(1)** Begins:

**(a)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 33 of 53**

**(2)** Ends on the earlier of:

    **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(b)** The date when business is resumed at a new permanent location.

**b.** Does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**10.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**12.** "Specified causes of loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss of or damage to:

    **(1)** Personal property in the open; or

    **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

    **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

    **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

    But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

    To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss", such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the ground surface.

**13.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**14.** "Valuable papers and records" means inscribed, printed or written:

   **a.** Documents;

   **b.** Manuscripts; and

   **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities".

## SECTION II — LIABILITY

**A. Coverages**

  **1. Business Liability**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** — Liability; and

    **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension - Supplementary Payments.

   **b.** This insurance applies:

    **(1)** To "bodily injury" and "property damage" only if:

     **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

     **(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

    **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**f. Coverage Extension - Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   (a) All expenses we incur.

   (b) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

   (c) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

   (d) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   (e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   (f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   (g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

(2) If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   (a) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   (b) This insurance applies to such liability assumed by the insured;

   (c) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   (d) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   (e) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   (f) The indemnitee:

     (i) Agrees in writing to:

       i. Cooperate with us in the investigation, settlement or defense of the "suit";

       ii. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

       iii. Notify any other insurer whose coverage is available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

iv. Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(ii)** Provides us with written authorization to:

i. Obtain records and other information related to the "suit"; and

ii. Conduct and control the defense of the indemnitee in such "suit".

**(3)** So long as the conditions in Paragraph **(2)** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** Exclusions in Section **II** — Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**(a)** We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**(b)** The conditions set forth above, or the terms of the agreement described in Paragraph **(2)(f)** above, are no longer met.

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limits of Insurance of Section **II** — Liability. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by an insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.  Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   **(i)** Any insured; or

   **(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 51 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged; or

    **(b)** The operation of any of the following machinery or equipment:

        **(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

**k. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II —** Liability.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(5)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(6)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(7)** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

**(8)** Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of web sites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under Paragraph **F.** Liability And Medical Expenses Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

**(9)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

**(10)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants";

**(11)** Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control;

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

**(13)** Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in Section II — Liability do not apply to damage by fire to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D.** Liability And Medical Expenses Limits of Insurance in Section II — Liability.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers".

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**3.** Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 43 of 53**

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    **(a)** Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    **(b)** The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  **(1)** The "nuclear material":

    **(a)** Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    **(b)** Has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

  **(1)** "By-product material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

  **(3)** "Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for:

      **(i)** Separating the isotopes of uranium or plutonium;

      **(ii)** Processing or utilizing "spent fuel"; or

      **(iii)** Handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

  and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

  **(4)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

  **(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

  **(6)** "Property damage" includes all forms of radioactive contamination of property;

  **(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

  **(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(10)** "Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** — Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or in the case of fire while rented to you or temporarily occupied by you with permission of the owner is the applicable Damage To Premises Rented To You limit shown for that premises in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** All "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit.

**b.** All:

**(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**(2)** Plus medical expenses;

**(3)** Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of Section **II** — Liability apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this policy:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Separation Of Insureds**

   Except with respect to the Limits of Insurance of Section **II** — Liability, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

F. **Liability And Medical Expenses Definitions**

   1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

      a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

      b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

   2. "Auto" means:

      a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

      b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where it is licensed or principally garaged.

      However, "auto" does not include "mobile equipment".

   3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

   4. "Coverage territory" means:

      a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**(2)** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection or engineering services.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law or motor vehicle registration law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## SECTION III — COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I — PROPERTY AND SECTION II — LIABILITY)

### A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Five days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** Seasonal unoccupancy; or

**(b)** Buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a Covered Cause of Loss, permanent repairs to the building:

**(a)** Have not started; and

**(b)** Have not been contracted for;

within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** An outstanding order to vacate;

**(b)** An outstanding demolition order; or

**(c)** Been declared unsafe by governmental authority.

**(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

Copyright, Insurance Services Office, Inc., 2012

**BP 00 03 07 13**
**Page 51 of 53**

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe and healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance of Section **I** — Property.

**2.** Business Liability Coverage is excess over:

    **a.** Any other insurance that insures for direct physical loss or damage; or

    **b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

    **a.** Is responsible for the payment of all premiums; and

    **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

    **a.** Paid to us prior to the anniversary date; and

    **b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

    **a.** Prior to a loss to your Covered Property.

    **b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

        **(1)** Someone insured by this insurance;

        **(2)** A business firm:

            **(a)** Owned or controlled by you; or

            **(b)** That owns or controls you; or

        **(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

# PENNSYLVANIA CHANGES

<div align="right">

BUSINESSOWNERS
**BP 01 42 03 15**

</div>

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
INFORMATION SECURITY PROTECTION ENDORSEMENT

**A.** **Section I — Property** is amended as follows:

1. The following is added to Paragraph **E.5. Loss Payment Property** Loss Conditions and supersedes any provision to the contrary:

   **Notice Of Acceptance Or Denial Of Claim**

   **(1)** Except as provided in **(3)** below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

   **(a)** Accept your claim;

   **(b)** Deny your claim; or

   **(c)** Need more time to determine whether your claim should be accepted or denied.

   If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

   If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

   **(2)** If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **(1)(c)** above, and thereafter every 45 days. The written notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

   **(3)** The notice procedures in **(1)** and **(2)** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

2. The following is added to any provision which uses the term actual cash value:

   Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind or quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained a partial or total loss or damage.

   The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**B.** **Section III — Common Policy Conditions** is amended as follows:

1. Paragraph **A. Cancellation** is replaced by the following:

   **A. Cancellation**

   **1.** The first Named Insured shown in the Declarations may cancel this Policy by writing or giving notice of cancellation.

Copyright, Insurance Services Office, Inc., 2012

<div align="right">

**BP 01 42 03 15**
**Page 1 of 3**

</div>

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this Policy has been in effect for 60 days or more or if this Policy is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This Policy may also be cancelled from inception upon discovery that the Policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**2.** Paragraph **L. Transfer Of Your Rights And Duties Under This Policy** is replaced by the following:

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 2012

INSURED'S COPY

If you die, this Policy will remain in effect as provided in **1.** or **2.** below, whichever is later:

   **1.** For 180 days after your death regardless of the policy period shown in the Declarations, unless the insured property is sold prior to that date; or

   **2.** Until the end of the policy period shown in the Declarations, unless the insured property is sold prior to that date.

   Coverage during the period of time after your death is subject to all provisions of this Policy including payment of any premium due for the policy period shown in the Declarations and any extension of that period.

**3.** The following paragraphs are added and supersede any provisions to the contrary:

   **M. Nonrenewal**

   If we decide not to renew this Policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the Policy.

   **N. Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

   Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**C.** The following changes apply only to Information Security Protection Endorsement **BP 15 07** if it is attached to this Policy:

   **1.** Paragraph **(2)** of Insuring Agreement **d. Security Breach Liability** is replaced by the following:

      **(2)** We will pay for "defense expenses" as a result of a "claim" in the form of a "regulatory proceeding" first made against the insured during the "policy period" or during the applicable Extended Reporting Period, in response to a "wrongful act" or a series of "interrelated wrongful acts" covered under Paragraph **d.(1).**

   **2.** Paragraphs **2.e.** and **2.f.** of Paragraph **N. Extended Reporting Periods** are replaced by the following:

      **e.** You must give us a written request for the Supplemental Extended Reporting Period within 60 days after the end of the "policy period" or the effective date of cancellation, whichever comes first.

      **f.** The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium in full along with any premium or deductible you owe us for coverage provided under this Endorsement within 60 days after the end of the "policy period" or the effective date of cancellation, whichever comes first. Once in effect, the Supplemental Extended Reporting Period may not be cancelled.

   **3.** Paragraph **d.** of the definition of "loss" in Paragraph **V.** is replaced by the following:

      **d.** With respect to Insuring Agreements **d.** Security Breach Liability and **g.** Web Site Publishing Liability:

      Compensatory damages, settlement amounts and costs awarded pursuant to judgments or settlements.

      "Loss" does not include:

      **(1)** Civil or criminal fines or penalties imposed by law;

      **(2)** Punitive or exemplary damages;

      **(3)** The multiplied portion of multiplied damages;

      **(4)** Taxes;

      **(5)** Royalties;

      **(6)** The amount of any disgorged profits; or

      **(7)** Matters that are uninsurable pursuant to law.

Copyright, Insurance Services Office, Inc., 2012

**BP 01 42 03 15**
**Page 3 of 3**

# PENNSYLVANIA NOTICE

BUSINESSOWNERS
**BP 01 91 07 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

**1.** Surveys;

**2.** Consultation or advice; or

**3.** Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

**1.** If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

**2.** To consultation services required to be performed under a written service contract not related to a policy of insurance; or

**3.** If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

Copyright, ISO Properties, Inc., 2001

**BP 01 91 07 02**

INSURED'S COPY

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

BUSINESSOWNERS
**BP 04 17 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions - Applicable To Business Liability Coverage** in **SECTION II - LIABILITY:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 2009

**BP 04 17 01 10**
Page 1 of 1

INSURED'S COPY

# REMOVAL OF INSURANCE-TO-VALUE PROVISION

BUSINESSOWNERS
**BP 04 83 01 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

Paragraph **E.5.d. Loss Payment** Property Loss Condition in **SECTION I — PROPERTY** is amended as follows:

**A.** Paragraph **d.(1)(a)** is replaced by the following:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i) The Limit of Insurance under **SECTION I — PROPERTY** that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property:

i. Of comparable material and quality; and

ii. Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

**B.** Paragraph **d.(1)(b)** does not apply.

Copyright, Insurance Services Office, Inc., 2009

**BP 04 83 01 10**
Page 1 of 1

# CALCULATION OF PREMIUM

BUSINESSOWNERS
**BP 05 01 07 02**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, ISO Properties, Inc., 2001                                                    **BP 05 01 07 02**

INSURED'S COPY

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

BUSINESSOWNERS
**BP 05 23 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Policy and apply to Property and Liability Coverages:

**A. CAP ON CERTIFIED TERRORISM LOSSES**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

Copyright, Insurance Services Office, Inc., 2015

**BP 05 23 01 15**
**Page 1 of 1**

INSURED'S COPY

# FUNGI OR BACTERIA EXCLUSION (LIABILITY)

BUSINESSOWNERS
**BP 05 77 01 06**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to **SECTION II — LIABILITY:**

**A.** The following exclusion is added to Paragraph **B.1., Exclusions — Applicable To Business Liability Coverage:**

    **t.  Fungi Or Bacteria**

      **(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

      **(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

      This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following definition is added Paragraph **F. Liability And Medical Expenses Definitions:**

    **1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

Copyright, ISO Properties, Inc., 2004

INSURED'S COPY

# EXCLUSION — ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY — WITH LIMITED BODILY INJURY EXCEPTION

BUSINESSOWNERS
**BP 15 04 05 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** Exclusion **B.1.q.** of Section II — Liability is replaced by the following:

This insurance does not apply to:

**q. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

**(1)** Damages, other than damages because of "personal and advertising injury", arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**B.** The following is added to Paragraph **B.1.p. Personal And Advertising Injury** Exclusion of **Section II — Liability:**

This insurance does not apply to:

**p. Personal And Advertising Injury**

"Personal and advertising injury":

Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Copyright, Insurance Services Office, Inc., 2013

**BP 15 04 05 14**
**Page 1 of 1**

INSURED'S COPY

# ELECTRONIC INFORMATION SYSTEMS COVERAGE

BUSINESSOWNERS
**BP 70 27 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

### A. COVERAGE

We will pay for direct physical loss or damage to Covered Property from any of the Covered Causes of Loss.

#### 1. COVERED PROPERTY

    **a.** "Computer" Equipment, and

    **b.** "Electronic Data"

while at the premises described in the Declarations, while in transit, or while at any unnamed premises.

#### 2. PROPERTY NOT COVERED

Covered Property does not include:

    **a.** "Computer" equipment rented, leased or sold to others;

    **b.** Program support documentation, flowcharts, record formats, or narrative descriptions, unless this property has been converted to "electronic data" form.

    **c.** Accounts, bills, evidences of debt, valuable papers, abstracts, records, deeds, manuscripts or other documents, unless converted to "electronic data" and then only in that form;

    **d.** Contraband or property in the course of illegal transportation or trade;

    **e.** Stock in trade; or

    **f.** Theft or disappearance of "portable computers" while in transit as checked luggage.

### 3. COVERED CAUSES OF LOSS

Covered Causes of Loss means risk of direct physical loss to Covered Property except those causes of loss listed in the Exclusions.

### 4. COVERAGE EXTENSIONS

#### a. Newly Acquired Property

If during the policy period you acquire additional Covered Property, we will cover this Covered Property, for up to 180 days, but not beyond the end of the policy period. The most we will pay for loss or damage under this Coverage Extension is $50,000.

You must:

    **(1)** Report your acquisition of such Covered Property to us within 180 days from the date acquired; and

    **(2)** Pay any additional premium that is due.

If you fail to comply with these requirements, coverage will end automatically 180 days after the date you acquired the Covered Property or at the end of the policy period, whichever occurs first.

This Coverage Extension is in addition to the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 70 27 09 18**
**Page 1 of 6**

INSURED'S COPY

**b. Newly Acquired Premises**

If during the policy period you acquire additional premises, we will cover direct physical loss or damage to Covered Property, at the additional premises from a Covered Cause of Loss for up to 180 days, but not beyond the end of the policy period. The most we will pay for loss or damage under this Coverage Extension is $50,000.

You must:

(1) Report your acquisition of such additional premises to us within 180 days from the date acquired; and

(2) Pay any additional premium that is due.

If you fail to comply with these requirements, coverage will end automatically 180 days after the date you acquired the additional premises or at the end of the policy period, whichever occurs first.

This Coverage Extension is in addition to the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

**c. Debris Removal Coverage**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

(2) This coverage extension does not include the cost to:

   (a) Extract pollutants from land or water; or

   (b) Remove, restore, or replace polluted land or water.

(3) The most we will pay under this coverage extension is:

   (a) 25% of the amount we pay for the direct physical loss. However, we will not pay more for loss to Covered Property and debris removal combined than the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

(b) Up to $25,000 for debris removal expense when the debris removal expense exceeds 25% of the amount we pay for direct physical loss or when the loss to Covered Property and debris removal combined exceeds the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

(4) We will not pay any expenses unless they are report to us in writing within 180 days from the date of direct physical loss to Covered Property.

**d. Emergency Removal**

We will pay for loss to Covered Property from a Covered Cause of Loss that has been moved because of the imminent danger of loss while it is:

(1) At a safe place away from your premises; or

(2) Being taken to and returned from that place.

This Coverage Extension is:

(1) Included within the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule applicable to the premises from which the Covered Property is removed.

(2) Applies for up to 365 days after the Covered Property is first moved, but not beyond the policy expiration.

We will also pay up to $5,000 of the expense to move or store Covered Property to prevent loss or damage from a Covered Cause of Loss. This is in addition to the Limit of Insurance shown for the Blanket Additional Coverage in the Declarations.

**e. Duplicate "Electronic Data" Coverage**

We will cover duplicate or back-up copies of "electronic data" for loss or damage as a result of a Covered Cause of Loss while stored at a separate premises other than the described premises.

The most we will pay for loss or damage under this Coverage Extension is $25,000.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**f.   Fire Protection System Recharge**

We will pay up to $5,000 for costs you actually incur in recharging any automatic fire protection system, even if discharged accidentally. The Deductible will not apply to this Coverage Extension.

**g.   Transit and Unnamed Premises**

We will pay for direct physical loss or damage to Covered Property while in transit or at any unnamed premises within the Coverage Territory as defined in **D.2**. below.

The most we will pay under this Coverage Extension is:

**(1)** $25,000; except when

**(2)** One of the Professional Office or Technology Coverage Options is written. Then the most we will pay is $50,000.

**h.   Virus or Harmful Code**

We will pay:

**(1)** The cost to replace or restore "electronic data":

**(a)** Which has been destroyed or corrupted by a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation;

**(b)** Which has been scanned, copied or observed by an unauthorized person's access into a computer system (including "electronic data") or a network to which it is connected.

**(2)** The loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration" caused by an interruption in computer operation due to the:

**(a)** Destruction or corruption of "electronic data" due to a virus, harmful code or similar instruction; or

**(b)** Scanning, copying or observation of "electronic data" by an unauthorized person.

This Coverage Extension does not apply to:

**(1)** Loss of exclusive use of any "data";

**(2)** Reduction in the economic or market value of any "data";

**(3)** Loss, damage, expense or loss of Business Income caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system; or

**(4)** Theft of personal or proprietary information.

The most we will pay under this Coverage Extension is:

**(1)** $25,000 in any one occurrence; and

**(2)** $75,000 in any one policy year

unless a higher limit is shown in the Declarations.

An occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**i.   Fraud and Deceit**

We will pay for loss by theft of Covered Property when you, your employees, agents, customers, consignees are fraudulently induced to part with the Covered Property:

**(1)** To persons who falsely represent themselves as the property persons to receive the property; or

**(2)** By the acceptance of fraudulent bills of lading or shipping receipts.

The most we will pay in any one occurrence for theft of Covered Property under this Coverage Extension is $5,000.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**j.   Incompatible Equipment and Data**

In the event of loss or damage to Covered Property from a Covered Cause of Loss, we will pay the cost to modify or replace undamaged Covered Property when it:

**(1)** Was dependent on the damaged Covered Property prior to the covered loss; and

**(2)** Is not compatible with the Covered Property that is replacing the property that was involved in the covered loss.

We will only pay for your costs to modify or replace undamaged property if the incompatible property is at a premises described in the Declarations.

The most we will pay in any one occurrence for your costs to modify or replace incompatible Covered Property is $10,000.

This Coverage Extension is in addition to the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

## B.  EXCLUSIONS

**1.**  Section **B., Exclusions of the Businessowners** Coverage Form **SECTION I — PROPERTY,** does not apply to this coverage, except for:

**a.**  Governmental Action;

**b.**  Nuclear Hazard; and

**c.**  War and Military Action.

**2.**  We will not pay for loss or damage caused by or resulting from any of the following:

**a.**  Delay, loss of use, loss of market or any other consequential loss.

**b.**  Dishonest acts by:

**(1)** You, any of your partners, employees or authorized representatives;

**(2)** A manager or a member if you are a limited liability company;

**(3)** Anyone else with an interest in the property, or their employees or authorized representatives; or

**(4)** Anyone else to whom the property is entrusted.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**c.**  Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense except as provided by the Coverage Extension for Fraud and Deceit.

**d.**  Unauthorized instructions to transfer property to any person or to any place.

**e.**  Errors or omissions in programming.

**f.**  Unexplained disappearance.

**g.**  Shortage found upon taking inventory.

**h.**  Lapse, suspension or cancellation of any lease, license, contract or order.

**i.**  Enforcement of any ordinance or law regulating or restricting the construction, use or repair of any property.

**j.**  Virus, harmful code or similar instructions as outlined below except as provided by the Coverage Extension for Virus or Harmful Code:

**(1)** The introduction into your "computer" systems of a virus, harmful code or similar instruction enacted on a computer system (including "electronic data") or network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation; and

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 70 27 09 18**
**Page 4 of 6**

INSURED'S COPY

**(2)** The unauthorized intrusion into your "computer" system (including "electronic data") or network to which it is connected, designed to:

    **(a)** Damage or destroy any part of the system or disrupt its normal operation; or

    **(b)** Observe, scan or copy "data".

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage:

  **a.** Wear and tear, depreciation.

  **b.** Any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration.

  **c.** Insects, vermin or rodents.

  **d.** Corrosion or rust.

  **e.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

## C. LIMIT OF INSURANCE

This section is replaced by the following:

The most we will pay for loss or damage to Covered Property in any one occurrence is the Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

## D. CONDITIONS

**1. Valuation.**

Paragraph **E.5.d.** of the Loss Payment Property Loss Condition is deleted and replaced by the following:

We will determine the value of Covered Property as follows:

  **a.** "Data"

The value of "data" will be the actual cost to reproduce. If the "data" is not replaced or reproduced, we will pay the cost of the value of the "media" with no stored "data".

  **b.** "Computer" Equipment

The value of "computer" equipment will be its replacement cost without deduction for depreciation. We will not pay more for any loss on a replacement cost basis than the least of:

    **(1)** The Limit of Insurance shown for the Blanket Additional Coverage in the Schedule.

    **(2)** The cost to replace the "computer" equipment with other "computer" equipment:

      **(a)** Of comparable material and quality; and

      **(b)** Used for the same purpose; or

    **(3)** The amount you actually spend that is necessary to repair or replace the "computer" equipment.

We will not pay on a replacement cost basis for any loss:

    **(1)** Until the "computer" equipment is actually repaired or replaced; and

    **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss.

In the event of loss, the value of the "computer" equipment will be determined as of the time of loss.

  **c.** Media

The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

**2. Coverage Territory.**

The Coverage Territory provision in the **Property General Conditions** is deleted and replaced with the following:

The coverage territory is worldwide except for any country which the United States has imposed sanctions, embargoes or any similar prohibition or restrictions.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

## E. DEFINITIONS

In addition to the definitions in Paragraph **H.** Property Definitions, the following definitions apply to the coverage contained in this endorsement:

1. "Data" means:

   a. Records, information and files stored on magnetic tapes, disk packs, drums, paper tapes and cards;

   b. Programming records used for electronic data processing or electronically controlled equipment; and

   c. "Media".

2. "Media" means the material on which data is recorded, such as magnetic tapes, disk packs, drums, paper tapes, cards and programs. This includes the data stored on the "media".

3. "Portable computers" means computers used in your "operations" easily transported by one person such as laptops, notebooks and personal digital assistants. This includes portable electronic accessories used with the "portable computer" such as multimedia projectors.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

# EQUIPMENT BREAKDOWN

BUSINESSOWNERS
**BP 71 35 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added to Paragraph **A.3. Covered Causes of Loss** in **SECTION I — PROPERTY:**

### A. ADDITIONAL COVERAGES

#### Equipment Breakdown

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   a. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b. Artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network;

   c. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. The following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   a. **Expediting Expenses**

      With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

      (1) Make temporary repairs; and

      (2) Expedite permanent repairs or permanent replacement.

      The most we will pay for loss or expense under this coverage is $25,000.

   b. **Hazardous Substances**

      We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

      This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.c.(1)(b)** below.

      As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

      The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur is $25,000.

   c. **Spoilage**

      (1) We will pay:

         (a) For physical damage to "perishable goods" due to spoilage.

         (b) For physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

         (c) Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

(2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in the Equipment Breakdown Additional Coverage Increased Limits Schedule.

**d.  Service Interruption**

(1) Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

(2) We will not pay for any loss of Business Income you sustain that results from the interruption of utility services during the first 24 hours following the "accident." However, if a deductible is shown in the Equipment Breakdown Deductible Endorsement as provided for in Paragraph **C.** below, or if the "period of restoration" begins more than 24 hours after the time of the direct physical damage for Business Income, then that deductible or time period will apply instead of the 24 hours provided for in this paragraph.

(3) The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage.

**e.  Business Income and Extra Expense**

Any insurance provided under this policy for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in the Equipment Breakdown Deductible Endorsement, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Deductible Endorsement will apply.

The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense.

**f.  Animals**

We will pay for the loss of or damage to animals owned by others and boarded by you, or if owned by you, only as "stock" while inside of the building and then only if they are killed or their destruction is made necessary.

The most we will pay for loss under this coverage is $25,000 unless otherwise shown in the Equipment Breakdown Additional Coverage Increased Limits Schedule.

**B.** The following is added to Paragraph **B. EXCLUSIONS:**

**Equipment Breakdown Exclusions**

All exclusions in the Businessowners Coverage Form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage for Equipment Breakdown.

1.  The following exclusions are modified:

**a.** The following is added to Exclusion **B.1.g.:**

However, if electrical "covered equipment" requires drying out because of water as described in **g.(1)** through **g.(3)** above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**b.** As respects this endorsement only, the next to the last paragraph in Exclusion **B.1.h.** is deleted and replaced with the following:

However, if excluded loss or damage, as described in Paragraph **(1)** above results in an "accident," we will pay only for the loss, damage or expense caused by such "accident."

**c.** As respects this endorsement only the last paragraph of Exclusion **B.2.l.** is deleted and replaced with the following:

But if an excluded cause of loss that is listed in **2.l.(1)** through **2.l.(7)** results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

**d.** The following is added to Exclusions **B.2.m.** and **B.2.n:**

We will also pay for direct physical loss or damage caused by an "accident."

2. The following exclusions are added:

**a.** We will not pay for loss, damage or expense caused by or resulting from:

**(1)** A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

**(2)** Any of the following:

**(a)** Defect, programming error, programming limitation, computer virus, malicious code, loss of data loss of access, loss of use, loss of functionality or other condition within or involving "electronic data" of any kind; or

**(b)** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."

**b.** With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in **A.1.c.** above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

**c.** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

**(1)** Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

**(2)** Any increase in loss resulting from an agreement between you and your customer or supplier.

**C. DEDUCTIBLES**

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in the Equipment Breakdown Deductible Endorsement. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D.** Deductibles is deleted and replaced with the following:

**1. Deductibles for Each Coverage**

**a.** Unless the Deductible Endorsement indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

**b.** We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Deductible Endorsement. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

**c.** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**2. Direct and Indirect Coverages**

    **a.** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Deductible Endorsement.

    **b.** Unless more specifically indicated in the Deductible Endorsement:

        **(1)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

        **(2)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**3. Application of Deductibles**

    **a. Dollar Deductibles**

    We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Deductible Endorsement. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

    **b. Time Deductible**

    If a time deductible is shown in the Deductible Endorsement, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    **c. Multiple of Average Daily Value (ADV)**

    If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

    The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration".

    The number indicated in the Deductible Endorsement will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    **d. Percentage of Loss Deductibles**

    If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**D. CONDITIONS**

The following conditions are in addition to the Conditions in the Businessowners Coverage Form.

**1. Suspension**

    When any "covered equipment" is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

    **a.** Your last known address; or

    **b.** The address where the "covered equipment" is located.

    Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**2. Jurisdictional Inspections**

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**3. Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident", we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**E.** The following definitions are added:

**1. "Covered equipment"**

**a.** "Covered equipment" means Covered Property:

**(1)** That generates, transmits or utilizes energy; or

**(2)** Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

**b.** None of the following is "covered equipment":

**(1)** Structure, foundation, cabinet, compartment or air supported structure or building;

**(2)** Insulating or refractory material;

**(3)** Sewer piping, buried vessels or piping, or piping forming a part of a sprinkler system;

**(4)** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**(5)** "Vehicle" or any equipment mounted on a "vehicle";

**(6)** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

**(7)** Dragline, excavation or construction equipment;

**(8)** Equipment manufactured by you for sale; or

**(9)** "Computer", unless used to control or operate "covered equipment."

**2.** "Hazardous substance" means any substance that is hazardous to your health or has been declared to be hazardous to health by a governmental agency.

**3.** "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

**4.** "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**5.** "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 71 35 09 18**
**Page 5 of 5**

INSURED'S COPY

# HIRED AUTO AND NON-OWNED LIABILITY

POLICY NUMBER:                                                    BUSINESSOWNERS
                                                                 **BP 71 44 04 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

### SCHEDULE

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | |
| Non-Owned Auto Liability | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in the Schedule.

   **1. HIRED AUTO LIABILITY**

   The insurance provided under Paragraph **A.1. Business Liability** in **SECTION II — LIABILITY** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

   **2. NON-OWNED AUTO LIABILITY**

   The insurance provided under Paragraph **A.1. Business Liability** in **SECTION II — LIABILITY** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

**B.** For insurance provided by this endorsement only:

   **1.** The exclusions, under the Paragraph **B.1. Applicable to Business Liability Coverage** in **SECTION II — LIABILITY,** other than exclusions **a., b., d., f.** and **i.** and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

   **a.** "Bodily injury" to:

      **(1)** An "employee" of the insured arising out of and in the course of:

         **(a)** Employment by the insured; or

         **(b)** Performing duties related to the conduct of the insured's business; or

      **(2)** To the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

   This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

   **(1)** Liability assumed by the insured under an "insured contract"; or

   **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

   **b.** "Property damage" to:

      **(1)** Property owned or being transported by, or rented or loaned to the insured; or

      **(2)** Property in the care, custody or control of the insured.

---

Copyright, 2010 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 71 44 04 10**
**Page 1 of 2**

INSURED'S COPY

2. Paragraph **C. Who Is An Insured** in **SECTION II — LIABILITY** is replaced by the following:

   1. Each of the following is an insured under this endorsement to the extent set forth below:

     **a.** You;

     **b.** Any other person using a "hired auto" with your permission;

     **c.** For a "non-owned auto":

       **(1)** Any partner or "executive officer" of yours; or

       **(2)** Any "employee" of yours;

       but only while such "non-owned auto" is being used in your business; and

     **d.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a., b.** or **c.** above.

   2. None of the following is an insured:

     **a.** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

     **b.** Your "employee", any partner or "executive officer" for any "auto" owned by such employee, partner or "executive officer" or a member of his or her household;

     **c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

     **d.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

     **e.** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** For the purposes of this endorsement only, Paragraph **H. Other Insurance** in **SECTION III — COMMON POLICY CONDITIONS** is replaced by the following:

   1. This insurance is excess over any primary insurance covering the "hired auto" or "non-owned auto".

   2. When this insurance and any other insurance covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our insurance bears to the total of the limits of all insurance covering on the same basis.

**D. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same accident, the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**E.** The following additional definitions apply:

   1. **"Auto Business"** means the business or occupation of selling, repairing, servicing, storing or parking "autos".

   2. **"Hired Auto"** means those "autos" you lease, hire, rent or borrow. This does not include "autos" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers", or members of their household. This does not include:

     **a.** Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more; or

     **b.** Any "auto" you lease, hire, rent or borrow from any of your "employees", partners "executive officer" or members of their households.

   3. **"Non-Owned Auto"** means any "auto" you do not own, lease, hire, rent or borrow which is used in connection with your business. This includes "autos" owned by your "employees", partners or your "executive officers", or members of their households but only while used in your business or your personal affairs.

Copyright, 2010 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 71 44 04 10**
**Page 2 of 2**

# EMPLOYEE THEFT (INCLUDING EMPLOYEE BENEFIT PLANS) ENDORSEMENT

BUSINESSOWNERS
**BP 72 24 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

As described below, coverage is provided for Employee Theft and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Paragraphs **8.** or **9.,** which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in Paragraph **7.** Extended Period To Discover Loss:

1. We pay up to the limit shown in the Schedule for Employee Theft in any one "occurrence" for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons. Employee Theft shall also include "forgery" when committed by someone who is an "employee" at the time the loss is sustained.

2. This endorsement does not cover loss resulting from:

   a. Acts committed by:

      (1) You,

      (2) Any of your partners or "members"; or

      (3) If the insured is a corporation, any person owning 25% or more of the corporation's common stock

      whether acting alone or in collusion with other persons except while handling "money", "securities" or "other property" of an "employee benefit plan".

   b. Acts committed by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

   c. The unauthorized disclosure of your confidential information including, but not limited to patents, trade secrets, processing methods or customer lists.

   d. The unauthorized use or disclosure of confidential information of another person or entity which is held by you including but not limited to patents, trade secrets, processing methods, customer lists, financial information, health information, retirement or health savings account information, personal information, credit card information or similar non-public information. However, this does not apply to loss otherwise covered that results directly from the use of your or an "employee benefit plan" participant's confidential information.

   e. Loss that is an indirect result of an "occurrence" covered by this endorsement including but not limited to loss resulting from:

      (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities", or "other property".

      (2) Payment of damages of any type for which you are legally liable. But, we pay compensatory damages arising directly from a loss covered under this endorsement.

      (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this endorsement.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**f.** Fees, costs and expenses incurred by you which are related to any legal action.

**g.** Loss or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**h.** Trading, whether in your name or in a genuine or fictitious account. However, this exclusion shall not apply to loss sustained by an "employee benefit plan".

**i.** The fraudulent or dishonest signing, issuing, canceling or failing to cancel a warehouse receipt or any papers connected with it. However, this exclusion shall not apply to loss sustained by an "employee benefit plan".

**3. Employee Benefit Plans**

**a.** The "employee benefit plans" (hereinafter referred to as Plan) that are wholly owned and operated by you for the sole benefit of your "employees" are included as insureds under this endorsement.

**b.** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit that is sufficient to provide a Limit for each Plan that is at least equal to that required if each Plan were separately insured.

**c.** With respect to loss sustained or "discovered" by any such Plan, we will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, (and, in the case of loss sustained or "discovered" by an "employee benefit plan", a sole proprietor, partner or "member") acting alone or in collusion with other persons while handling "money", "securities" or "other property" of an "employee benefit plan".

**d.** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**e.** If two or more Plans are insured under this Endorsement, any payment we make for loss:

**(i)** Sustained by two or more Plans; or

**(ii)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit required for each Plan bears to the total Limit of all Plans sustaining loss.

**f.** The Deductible Amount applicable to this Endorsement does not apply to loss sustained by any Plan.

**4.** As respects this Endorsement, "occurrence" means:

**a.** An individual act;

**b.** The combined total of all separate acts whether or not related; or

**c.** A series of acts whether or not related;

committed by an "employee" (and, in the case of loss sustained by an "employee benefit plan", sole proprietor, partner or "member") acting alone or in collusion with other persons, during the Policy Period shown in the Declarations.

**5. Duties in the event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**a.** Notify us as soon as possible.

**b.** Submit to examination under oath at our request and give us a signed statement of your answers.

**c.** Produce for our examination all pertinent records.

**d.** Give us a detailed, sworn proof of loss within 120 days.

**e.** Cooperate with us in the investigation of any claim.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

**6.** **Limits of Insurance under this Endorsement**

The most we pay for all loss resulting directly from an "occurrence" is the applicable Limit shown in the Schedule.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we pay for such loss shall not exceed the largest Limit available under any one of those Insuring Agreements or Coverages.

**7.** **Extended Period to Discover Loss**

We pay for loss that you sustained prior to the effective date of cancellation of this Endorsement, which is "discovered" by you:

**a.** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this endorsement, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**b.** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**8.** **Loss Sustained During Prior Insurance Issued By Us or Any Affiliate**

**a.** **Loss Sustained Partly During This Insurance and Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(1)** Partly during the Policy Period shown in the Declarations; and

**(2)** Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

**b.** **Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we pay for the loss, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

**c.** In settling loss subject to this Condition:

**(1)** The most we pay for the entire loss is the highest single Limit applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 24 09 18**

INSURED'S COPY

**d.** The following examples demonstrate how we will settle losses subject to this condition **8.** under this Endorsement for Employee Theft.:

**EXAMPLE NO. 1:**

You sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

<div align="center">

**POLICY A**

</div>

The current policy is written at a Limit of $50,000 and a Deductible Amount of $5,000.

<div align="center">

**POLICY B**

</div>

Issued prior to Policy **A**, Policy **B** was written at a Limit of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B** is $7,500.

The highest single Limit applicable to this entire loss is $50,000 written under Policy **A**. The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(2)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we pay for this loss is $5,000.

**EXAMPLE NO. 2:**

You sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

<div align="center">

**POLICY A**

</div>

The current policy is written at a Limit of $125,000 and a Deductible Amount of $10,000.

<div align="center">

**POLICY B**

</div>

Issued prior to Policy **A**, Policy **B** was written at a Limit of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B** is $75,000.

The highest single Limit applicable to this entire loss is $150,000 written under Policy **B**. The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

**(2)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we pay for this loss is $150,000.

**EXAMPLE NO. 3:**

You sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D**.

<div align="center">

**POLICY A**

</div>

The current policy is written at a Limit of $1,000,000 and a Deductible Amount of $100,000.

<div align="center">

**POLICY B**

</div>

Issued prior to Policy **A,** it was written at a Limit of $750,000 and a Deductible Amount of $75,000.

<div align="center">

**POLICY C**

</div>

Issued prior to Policy **B,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

<div align="center">

**POLICY D**

</div>

Issued prior to Policy **C,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B** is $250,000, under Policy **C** is $600,000 and under Policy **D** is $800,000.

The highest single Limit applicable to this entire loss is $1,000,000 written under Policy **A**. The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**(2)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we pay is $250,000 (no deductible is applied).

**(3)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we pay is $500,000, the policy limit (no deductible is applied).

**(4)** We will not make any further payment under Policy **D** as the maximum amount payable under the highest single Limit applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we pay for this loss is $1,000,000.

**9. Loss Sustained During Prior Insurance Not Issued By Us or Any Affiliate**

**a.** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we pay for the loss under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**b.** In settling loss subject to this condition in Paragraph **9.:**

**(1)** The most we pay for the entire loss is the lesser of the Limits applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or Declarations to the amount of loss sustained under the prior cancelled insurance.

**c.** The insurance provided under this Paragraph **9.** condition is subject to the following:

**(1)** If loss covered under this condition is also partially covered under the condition set out in Paragraph **8.,** the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under the condition in Paragraph **8.**

**(2)** For loss covered under this condition that is not subject to Paragraph **(1),** the amount recoverable under this condition is part of, not in addition to, the Limit applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(a)** This insurance as of its effective date; or

**(b)** The prior cancelled insurance had it remained in effect.

**10. Legal Action Against Us**

You may not bring any legal action against us involving loss under this Endorsement:

**a.** Unless you have complied with all the terms of this insurance;

**b.** Until 90 days after you have filed proof of loss with us; and

**c.** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**11. Ownership of Property; Interests Covered**

The property covered under this Endorsement is limited to property:

**a.** That you own or lease; or

**b.** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**12. Termination as To Any Employee.**

Insurance coverage for Employee Theft terminates as to any "employee":

**a.** As soon as:

**(1)** You; or

**(2)** Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

**b.** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**13. Joint Insured**

**a.** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this Employee Theft coverage. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**b.** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

**d.** If this Endorsement is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(1)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**f.** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**14. Recoveries**

**a.** Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

**(1)** First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

**(2)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(3)** Third, to you in satisfaction of any Deductible Amount; and

**(4)** Fourth, to you in satisfaction of any loss not covered under this policy.

**b.** Recoveries do not include any recovery:

**(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(2)** Of original "securities" after duplicates of them have been issued.

**15. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**a.** **Primary Insurance**

When this insurance is written as primary insurance, and:

**(1)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Schedule bears to the total limit of all insurance covering the same loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**(2)** You have other insurance covering the same loss other than that described in Paragraph **a.(1),** we will only pay for the amount of loss that exceeds:

   **(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

   **(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**b. Excess Insurance**

   **(1)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

   **(2)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**16. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

# COMPUTER FRAUD ENDORSEMENT

BUSINESSOWNERS
**BP 72 25 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

As described below, coverage is provided for Computer Fraud if a Limit of Insurance is shown in the Schedule and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in **7.** or **8.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss **6.:**

1. We pay up to the limit shown in the Schedule for Computer Fraud in any one "occurrence" for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

   a. To a person (other than a "messenger") outside those "premises"; or

   b. To a place outside those "premises".

2. This endorsement does not cover loss resulting from:

   a. Acts committed by:

      (1) You,

      (2) Any of your partners or "members"; or

      (3) If the insured is a corporation, any person owning 25% or more of the corporation's common stock

      whether acting alone or in collusion with other persons.

   b. Acts committed by any of your "employees", "managers", directors, trustees or authorized representatives:

      (1) Whether acting alone or in collusion with other persons; or

      (2) While performing services for you or otherwise.

   c. The unauthorized disclosure of your confidential information including, but not limited to patents, trade secrets, processing methods or customer lists.

   d. The unauthorized use or disclosure of confidential information of another person or entity which is held by you including but not limited to financial information, personal information, credit card information or similar non-public information.

   e. Loss that is an indirect result of an "occurrence" including but not limited to loss resulting from:

      (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities", or "other property".

      (2) Payment of damages of any type for which you are legally liable. But, we pay compensatory damages arising directly from a loss covered under this endorsement.

      (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this endorsement.

   f. Fees, costs and expenses incurred by you which are related to any legal action.

   g. Loss resulting from credit card transactions which includes the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**h.** Loss resulting from funds transfer fraud which includes a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**i.** Inventory Shortages which includes loss or that part of any loss that its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**j.** Document Generation which includes Loss resulting from the use of a computer to generate counterfeit, misleading or other documents used to facilitate or aid in fraudulently causing a transfer or "theft" of "money", "securities" or "other property".

**k.** Phishing which includes Loss resulting from the use of information obtained from an insured by deception, through the use or aid of a computer.

**3.** As respects this Endorsement, "occurrence" means:

**a.** An individual act or event;

**b.** The combined total of all separate acts or events whether or not related; or

**c.** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations except as provided in Paragraph **7.** or **8.**

**4. Duties in the event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**a.** Notify us as soon as possible. If you have reason to believe that any loss involves a violation of law, you must also notify the local law enforcement authorities.

**b.** Submit to examination under oath at our request and give us a signed statement of your answers.

**c.** Produce for our examination all pertinent records.

**d.** Give us a detailed, sworn proof of loss within 120 days.

**e.** Cooperate with us in the investigation of any claim.

**5. Limits of Insurance under this Endorsement**

The most we pay for all loss resulting directly from an "occurrence" is the applicable Limit shown in the Schedule.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we pay for such loss shall not exceed the largest Limit available under any one of those Insuring Agreements or Coverages.

**6. Extended Period to Discover Loss**

We pay for loss that you sustained prior to the effective date of cancellation of this Endorsement, which is "discovered" by you no later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this endorsement, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**7. Loss Sustained During Prior Insurance Issued By Us or Any Affiliate**

**a. Loss Sustained Partly During This Insurance and Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(1)** Partly during the Policy Period shown in the Declarations; and

**(2)** Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 25 09 18**
**Page 2 of 6**

INSURED'S COPY

**b. Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we pay for the loss, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

**c.** In settling loss subject to this Condition:

**(1)** The most we pay for the entire loss is the highest single Limit applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**d.** The following examples demonstrate how we will settle losses subject to this Condition **8.** under this Endorsement for Computer Fraud:

**EXAMPLE NO. 1:**

You sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

**POLICY A**

The current policy is written at a Limit of $50,000 and a Deductible Amount of $5,000.

**POLICY B**

Issued prior to Policy **A**, Policy **B** was written at a Limit of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B** is $7,500.

The highest single Limit applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(2)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we pay for this loss is $5,000.

**EXAMPLE NO. 2:**

You sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

**POLICY A**

The current policy is written at a Limit of $125,000 and a Deductible Amount of $10,000.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

## POLICY B

Issued prior to Policy **A,** Policy **B** was written at a Limit of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B** is $75,000.

The highest single Limit applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

**(2)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we pay for this loss is $150,000.

### EXAMPLE NO. 3:

You sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

#### POLICY A

The current policy is written at a Limit of $1,000,000 and a Deductible Amount of $100,000.

#### POLICY B

Issued prior to Policy **A,** it was written at a Limit of $750,000 and a Deductible Amount of $75,000.

#### POLICY C

Issued prior to Policy **B,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

#### POLICY D

Issued prior to Policy **C,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B** is $250,000, under Policy **C** is $600,000 and under Policy **D** is $800,000.

The highest single Limit applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(2)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we pay is $250,000 (no deductible is applied).

**(3)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we pay is $500,000, the policy limit (no deductible is applied).

**(4)** We will not make any further payment under Policy **D** as the maximum amount payable under the highest single Limit applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we pay for this loss is $1,000,000.

**8. Loss Sustained During Prior Insurance Not Issued By Us or Any Affiliate**

**a.** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we pay for the loss under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 25 09 18**
**Page 4 of 6**

INSURED'S COPY

**b.** In settling loss subject to this condition in Paragraph **8.**:

**(1)** The most we pay for the entire loss is the lesser of the Limits applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or Declarations to the amount of loss sustained under the prior cancelled insurance.

**c.** The insurance provided under this Paragraph **8.** condition is subject to the following:

**(1)** If loss covered under this condition is also partially covered under the condition set out in Paragraph **7.**, the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under the condition in Paragraph **7.**

**(2)** For loss covered under this condition that is not subject to Paragraph **(1)**, the amount recoverable under this condition is part of, not in addition to, the Limit applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(a)** This insurance as of its effective date; or

**(b)** The prior cancelled insurance had it remained in effect.

### 9. Legal Action Against Us

You may not bring any legal action against us involving loss under this Endorsement:

**a.** Unless you have complied with all the terms of this insurance;

**b.** Until 90 days after you have filed proof of loss with us; and

**c.** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

### 10. Ownership of Property; Interests Covered

The property covered under this Endorsement is limited to property:

**a.** That you own or lease; or

**b.** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

### 11. Special Limit of Insurance for Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

### 12. Territory

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world.

### 13. Joint Insured

**a.** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this Computer Fraud coverage. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**b.** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

**c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

**d.** If this Endorsement is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(1)** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**f.** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

## 14. Recoveries

**a.** Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

**(1)** First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

**(2)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(3)** Third, to you in satisfaction of any Deductible Amount; and

**(4)** Fourth, to you in satisfaction of any loss not covered under this policy.

**b.** Recoveries do not include any recovery:

**(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(2)** Of original "securities" after duplicates of them have been issued.

## 15. Other Insurance

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**a. Primary Insurance**

When this insurance is written as primary insurance, and:

**(1)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Schedule bears to the total limit of all insurance covering the same loss.

**(2)** You have other insurance covering the same loss other than that described in Paragraph **a.(1)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**b. Excess Insurance**

**(1)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

## 16. Records

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 25 09 18**
**Page 6 of 6**

INSURED'S COPY

# FUNDS TRANSFER FRAUD ENDORSEMENT

BUSINESSOWNERS
**BP 72 26 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

As described below, coverage is provided for Funds Transfer Fraud if a Limit of Insurance is shown in the Schedule and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Paragraphs **7.** or **8.,** which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in Paragraph **6.** Extended Period To Discover Loss:

1. We pay up to the limit shown in the Schedule for Funds Transfer Fraud in any one "occurrence" for loss of or damage to "funds", resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

2. This endorsement does not cover loss resulting from:

   **a.** Acts committed by:

   **(1)** You,

   **(2)** Any of your partners or "members"; or

   **(3)** If the insured is a corporation, any person owning 25% or more of the corporation's common stock

   whether acting alone or in collusion with other persons.

   **b.** Acts committed by any of your "employees", "managers", directors, trustees or authorized representatives:

   **(1)** Whether acting alone or in collusion with other persons; or

   **(2)** While performing services for you or otherwise.

   **c.** The unauthorized disclosure of your confidential information including, but not limited to patents, trade secrets, processing methods or customer lists.

   **d.** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including but not limited to financial information, personal information, credit card information or similar non-public information.

   **e.** Loss that is an indirect result of an "occurrence" including but not limited to loss resulting from:

   **(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities", or "other property".

   **(2)** Payment of damages of any type for which you are legally liable. But, we pay compensatory damages arising directly from a loss covered under this endorsement.

   **(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this endorsement.

   **f.** Fees, costs and expenses incurred by you which are related to any legal action.

   **g.** Loss resulting from computer fraud which includes the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

3. As respects this Endorsement, "occurrence" means:

   **a.** An individual act or event;

   **b.** The combined total of all separate acts or events whether or not related; or

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**c.** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations except as provided in Paragraphs **7.** or **8.**

**4. Duties in the event of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**a.** Notify us as soon as possible. If you have reason to believe that any loss involves a violation of law, you must also notify the local law enforcement authorities.

**b.** Submit to examination under oath at our request and give us a signed statement of your answers.

**c.** Produce for our examination all pertinent records.

**d.** Give us a detailed, sworn proof of loss within 120 days.

**e.** Cooperate with us in the investigation of any claim.

**5. Limits of Insurance under this Endorsement**

The most we pay for all loss resulting directly from an "occurrence" is the applicable Limit shown in the Schedule.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we pay for such loss shall not exceed the largest Limit available under any one of those Insuring Agreements or Coverages.

**6. Extended Period to Discover Loss**

We pay for loss that you sustained prior to the effective date of cancellation of this Endorsement, which is "discovered" by you:

**a.** No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this endorsement, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**b.** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**7. Loss Sustained During Prior Insurance Issued By Us or Any Affiliate**

**a. Loss Sustained Partly During This Insurance and Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(1)** Partly during the Policy Period shown in the Declarations; and

**(2)** Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

**b. Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we pay for the loss, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

**c. In settling loss subject to this Condition:**

**(1)** The most we pay for the entire loss is the highest single Limit applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Businessowners Coverage Form or the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**d.** The following examples demonstrate how we will settle losses subject to this condition **8.** under this Endorsement for Funds Transfer Fraud:

**EXAMPLE NO. 1:**

You sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

### POLICY A

The current policy is written at a Limit of $50,000 and a Deductible Amount of $5,000.

### POLICY B

Issued prior to Policy **A,** Policy **B** was written at a Limit of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B** is $7,500.

The highest single Limit applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(2)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we pay for this loss is $5,000.

**EXAMPLE NO. 2:**

You sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

### POLICY A

The current policy is written at a Limit of $125,000 and a Deductible Amount of $10,000.

### POLICY B

Issued prior to Policy **A,** Policy **B** was written at a Limit of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B** is $75,000.

The highest single Limit applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.

**(2)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we pay for this loss is $150,000.

**EXAMPLE NO. 3:**

You sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

### POLICY A

The current policy is written at a Limit of $1,000,000 and a Deductible Amount of $100,000.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

### POLICY B

Issued prior to Policy **A,** it was written at a Limit of $750,000 and a Deductible Amount of $75,000.

### POLICY C

Issued prior to Policy **B,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

### POLICY D

Issued prior to Policy **C,** it was written at a Limit of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B** is $250,000, under Policy **C** is $600,000 and under Policy **D** is $800,000.

The highest single Limit applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(1)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(2)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we pay is $250,000 (no deductible is applied).

**(3)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we pay is $500,000, the policy limit (no deductible is applied).

**(4)** We will not make any further payment under Policy **D** as the maximum amount payable under the highest single Limit applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we pay for this loss is $1,000,000.

**8. Loss Sustained During Prior Insurance Not Issued By Us or Any Affiliate**

**a.** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we pay for the loss under this insurance, provided:

**(1)** This insurance became effective at the time of cancellation of the prior insurance; and

**(2)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**b.** In settling loss subject to this condition in Paragraph **8.:**

**(1)** The most we pay for the entire loss is the lesser of the Limits applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

**(2)** We apply the applicable Deductible Amount shown in the Businessowners Coverage Form or Declarations to the amount of loss sustained under the prior cancelled insurance.

**c.** The insurance provided under this Paragraph **8.** condition is subject to the following:

**(1)** If loss covered under this condition is also partially covered under the condition set out in Paragraph **7.,** the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under the condition in Paragraph **7.**

**(2)** For loss covered under this condition that is not subject to Paragraph **(1),** the amount recoverable under this condition is part of, not in addition to, the Limit applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(a)** This insurance as of its effective date; or

**(b)** The prior cancelled insurance had it remained in effect.

**9. Legal Action Against Us**

You may not bring any legal action against us involving loss under this Endorsement:

**a.** Unless you have complied with all the terms of this insurance;

**b.** Until 90 days after you have filed proof of loss with us; and

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

c. Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

## 10. Ownership of Property; Interests Covered

The property covered under this Endorsement is limited to property:

a. That you own or lease; or

b. That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

## 11. Joint Insured

a. If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this Funds Transfer Fraud coverage. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

b. If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

c. An "employee" of any Insured is considered to be an "employee" of every Insured.

d. If this Endorsement is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

(1) No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

f. Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

## 12. Recoveries

a. Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

(1) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

(2) Second, to us in satisfaction of amounts paid in settlement of your claim;

(3) Third, to you in satisfaction of any Deductible Amount; and

(4) Fourth, to you in satisfaction of any loss not covered under this policy.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

## 13. Other Insurance

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

a. **Primary Insurance**

When this insurance is written as primary insurance, and:

(1) You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Schedule bears to the total limit of all insurance covering the same loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**(2)** You have other insurance covering the same loss other than that described in Paragraph **a.(1),** we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**b. Excess Insurance**

**(1)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**14. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 26 09 18**
**Page 6 of 6**

INSURED'S COPY

# FINE ARTS ENDORSEMENT

BUSINESSOWNERS
**BP 72 27 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

### A. COVERAGE

We will pay for direct physical loss or damage to Covered Property caused by or resulting from any of the Covered Causes of Loss.

**1. COVERED PROPERTY**

"Fine arts" which are:

a. Owned by you; or

b. Owned by others, and in your care, custody and control;

c. Located at the described premises, or in transit to and from the described premises; or

d. Temporarily located:

(1) On exhibit in a premises not owned or operated by you;

(2) In the premises of your customer while on approval awaiting their decision to purchase; or

(3) In a premises not owned or operated by you for framing, renovating, packing or appraising.

**2. PROPERTY NOT COVERED**

Covered Property does not include:

a. Property on exhibition at fairgrounds or on the premises of any national or international exhibition;

b. Contraband; or

c. Property in the course of illegal transportation or trade.

**3. COVERED CAUSES OF LOSS**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS to Covered Property except those causes of loss listed in the Exclusions.

**4. LIMITATION**

Art glass windows, glassware, statuary, marbles, bric-a-brac, porcelains and other articles of fragile or brittle nature are covered against loss by breakage only if loss or damage is caused by "specified causes of loss".

### B. EXCLUSIONS

1. Section **B., Exclusions** of the Businessowners Coverage Form **SECTION I — PROPERTY,** does not apply to this coverage, except for:

a. Governmental Action;

b. Nuclear Hazard; and

c. War and Military Action.

2. Additional Exclusions

We will not pay for loss or damage caused by or resulting from any of the following:

a. Delay, loss of use, loss of market or any other consequential loss.

b. Dishonest acts by:

(1) You, your employees or authorized representatives;

(2) Anyone else with an interest in the property, or their employees or authorized representatives; or

(3) Anyone else to whom the property is entrusted.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

But this exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 27 09 18**
**Page 1 of 2**

c. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

d. Unauthorized instructions to transfer property to any person or to any place.

e. Any repairing, restoration or retouching of the Covered Property.

f. Theft from any unattended vehicle unless at the time of theft its windows, doors and compartments were closed and locked and there are visible signs that the theft was the result of forced entry.

But this exclusion does not apply to property in the custody of a carrier for hire.

g. Unexplained disappearance.

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage:

a. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

b. Wear and tear, depreciation or obsolescence;

c. Rust, corrosion, fungus, decay, deterioration, hidden or latent defect, or any quality in the property that causes it to damage or destroy itself;

d. Insects, birds, rodents or other animals.

**C. LIMIT OF INSURANCE**

Section **C. Limits of Insurance** is replaced by the following:

The most we will pay for Covered Property under this endorsement is $5,000 for any one item of "fine arts".

The most we will pay for loss or damage to Covered Property in any one occurrence is the Limit of Insurance shown in the Schedule.

The most we will pay for Covered Property in transit is 10% of the Limit of Insurance shown in the Schedule.

**D. LOSS PAYMENT**

Section **E.5. Loss Payment** is deleted and replaced by the following:

In the event of loss or damage covered by this endorsement:

1. At our option, we will pay the least of the following amounts:

a. The cost of reasonably restoring Covered Property to its condition immediately before the loss or damage;

b. The cost of replacing Covered Property with substantially identical property; or

c. Market value of Covered Property at the time of loss or damage.

2. In case of total loss to an item of Covered Property which is part of a pair or set, we agree to pay you the full amount of the pair or set as shown in the Schedule and you agree to surrender the remaining item(s) of the pair or set to us.

3. You agree that Covered Property will be packed and unpacked by competent packers.

4. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

5. We will not pay you more than your financial interest in the Covered Property.

6. Our payment for loss of or damage to Covered Property of others will only be for the account of the owners of the Covered Property. We may adjust losses with the owners of lost or damaged Covered Property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

7. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**E. DEFINITIONS**

The following definitions are added:

1. "Antique" means an object having value because its:

a. Craftsmanship is in the style or fashion of former times; and

b. Age is 100 years old or older.

2. "Fine arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, rare books and manuscripts, statuary, sculptures, "antique" furniture, "antique" jewelry, porcelains, bric-a-brac, and similar property of rarity, historical value or artistic merit.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

# BUSINESSOWNERS PROPERTY ENHANCEMENT ENDORSEMENT

BUSINESSOWNERS
**BP 72 46 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION I — PROPERTY** of the Businessowners Coverage Form is amended as shown below.

**1.** All references to 100 feet are changed to 1,000 feet.

**2.** If we or any of our affiliates issue other insurance to you and more than one limit of insurance applies to loss or damage sustained by you, the following limitations will apply:

   **a.** Your recovery under all such insurance will not exceed the actual amount of loss or damage sustained; and

   **b.** The insurance provided by this endorsement applies in excess of and, except as to premium, limits and notice, follows the terms, conditions, limitations and exclusions of other applicable insurance issued to you by us or any of our affiliates.

**3.** With respect to coverage provided by this endorsement, the provisions of the Businessowners Coverage Form apply unless modified by this endorsement.

**A.** Paragraph **A.1. Covered Property** is amended as follows:

   **1.** Paragraph **1.a.(5)** does not apply and is replaced by the following:

     **(5)** Personal property owned by you, or for which you are liable, that is used to maintain or service the buildings or structures or the premises, including:

       **(a)** Fire extinguishing equipment;

       **(b)** Outdoor furniture;

       **(c)** Floor coverings, draperies and shades;

       **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

       **(e)** Personal property located within common areas of buildings owned by you. This includes but is not limited to furnishings and fixtures in lobbies, public hallways, stairs and corridors;

       **(f)** Lawn maintenance and snow removal equipment;

       **(g)** Alarm systems;

   **2.** The following is added to Paragraph **1.a. Buildings:**

     **(7)** Indoor swimming pools which are an integral part of the buildings.

     **(8)** Office contents owned by you as the building owner that is used to maintain or service the buildings or structures.

   **3.** Paragraph **1.b.(2) Business Personal Property** does not apply and is replaced by the following:

     **(2)** Property of others that is in your care, custody or control, but this property is not covered for more than the amount for which you are legally liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others. Property of others does not include Personal Property of Employees;

   **4.** Paragraph **1.b.(3) Business Personal Property** does not apply and is replaced by the following:

     **(3)** Tenant's improvements and betterments unless a separate tenant's improvements and betterments limit is shown in the Declarations for a described premises. Improvements and betterments are fixtures, alterations, installations or additions:

       **(a)** Made a part of the building or structure you occupy but do not own; and

       **(b)** You acquired or made at your expense but cannot legally remove;

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 09 18**
**Page 1 of 27**

INSURED'S COPY

5. Paragraph **1.b.(5) Business Personal Property** does not apply and is replaced by the following:

    **(5)** Exterior and interior building glass, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The glass must be owned by you or in your care, custody or control.

6. The following is added to **1.b. Business Personal Property:**

    **(6)** Exterior awnings or related exterior coverings attached to the building, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property. The exterior awning or related exterior covering attached to the building must be owned by you or in your care, custody or control.

**B.** Paragraph **A.2. Property Not Covered** is amended as follows:

1. Paragraphs **2.b.**, **2.e.** and **2.i.** do not apply and are replaced by the following:

    **b.** "Money" or "securities," except as provided in the Employee Theft, Forgery Or Alterations, Computer Fraud, Funds Transfer Fraud and the Money and Securities Coverage Extensions;

    **e.** Outdoor fences, radio and television receiving equipment, including its lead-in wiring, masts or towers, signs, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Outdoor Property and Trees, Shrubs and Plants Coverage Extensions;

    **i.** "Electronic data", except as provided under the Electronic Information Systems coverage included in the Blanket Additional Coverage. This Paragraph **i.** does not apply to your "stock" of prepackaged software.

**C.** Paragraph **A.4. Limitations** is amended as follows:

1. Paragraph **4.a.(3)** does not apply and is replaced by the following:

    **(3)** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property. This limitation does not apply to the Money and Securities Coverage Extension.

2. Paragraph **4.c.** does not apply and is replaced by the following:

    **c.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

        **(1)** For furs, fur garments and garments trimmed with fur, the limit shown in the Schedule.

        **(2)** For jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals, the limit shown in the Schedule. This limit does not apply to jewelry or watches worth $100 or less per item.

        **(3)** For patterns, dies, molds and forms, the limit shown in the Schedule.

**D.** Paragraph **A.5. Additional Coverages** does not apply and is replaced by the following:

Unless otherwise stated in this Endorsement or in a specific Additional Coverage, Additional Coverages:

1. Apply to each described premises on a per occurrence basis; and

2. Are subject to the Deductible provision of this Endorsement.

**Business Income**

1. **Direct Damage**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises includes the area within 1,000 feet of the site at which the described premises is located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

    **a.** The portion of the building which you rent, lease or occupy;

    **b.** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

c. Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

If the Schedule shows for Business Income:

a. Actual Loss Sustained, then we will pay the actual loss of Business Income that occurs within 12 consecutive months following the date of direct physical loss or damage unless optional coverage for 18 or 24 consecutive months is shown in the Schedule; or

b. A maximum dollar limit, then we will pay for loss of Business Income that occurs within 12 consecutive months following the date of direct physical loss or damage, unless optional coverage for 18 or 24 consecutive months is shown in the Schedule, subject to the Limit of Insurance shown in the Schedule.

**2. Extended Period of Indemnity**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

a. Begins on the date property except finished "stock" is actually repaired, rebuilt or re-placed and "operations" are resumed; and

b. Ends on the earlier of:

(1) The date you could restore your "operations" with reasonable speed to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage occurred;

(2) The number of consecutive days shown in the Schedule after the date deter-mined in **(1)** above unless a greater number of consecutive days is shown in the Schedule.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from a Covered Cause of Loss.

**3. Civil Authority**

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage and the described premises are within that area but are not more than five miles from the damaged property; and

b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

For Business Income, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises, unless one of the optional waiting period endorsements is attached to this policy and will apply for a period of up to 30 consecutive days from the date on which such coverage begins.

For Extra Expense, this Additional Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

a. Four consecutive weeks after the date of that action; or

b. When your Civil Authority Coverage for Business Income ends;

whichever is later.

**4. Dependent Properties**

We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent prop-erty or secondary dependent property caused by or resulting from a Covered Cause of Loss.

Dependent property means property owned or operated by others you depend on to:

a. Deliver materials or services to you or to others for your account (Contributing Loca-tions). But services does not mean water supply services, wastewater removal ser-vices, communication supply services or power supply services;

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**b.** Accept your products or services (Recipient Locations);

**c.** Manufacture your products for delivery to your customers under contract of sale (Manufacturing Locations); or

**d.** Attract customers to your business (Leader Locations).

Secondary dependent property means an entity which is not owned or operated by a dependent property and which:

**a.** Delivers materials or services to a dependent property, which in turn are used by the dependent property in providing materials or services to you; or

**b.** Accepts materials or services from a dependent property, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary dependent property.

Any property which delivers any of the following services is not a secondary dependent property with respect to such services:

    **(1)** Water supply services;

    **(2)** Wastewater removal services;

    **(3)** Communication supply services; or

    **(4)** Power supply services.

The dependent property or secondary dependent property must be located in the coverage territory of this policy.

This Additional Coverage does not apply:

**a.** To loss of Business Income you sustain due to physical loss or damage at the premises of dependent or secondary dependent properties for which you have more specific insurance either under this policy or another.

**b.** When the only loss to dependent property is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the dependent property sustains loss or damage to "electronic data" and other property, coverage under this Additional Coverage will not continue once the other property is repaired, rebuilt or replaced.

**c.** To loss of Business Income you sustain due to physical loss or damage at dependent or secondary dependent properties located outside this policy's coverage territory.

We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**a.** Source of materials or services; or

**b.** Outlet for your products or services

If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

The expiration date of this policy will not reduce the Dependent Properties Business Income coverage period.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

**5. Food Contamination Shutdown**

If your business at a described location is ordered closed by the Board of Health or any other governmental authority as a result of the discovery of, or suspicion of, "food contamination" we will pay:

**a.** The loss of Business Income you sustain due to the necessary suspension of your "operations";

**b.** Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

**c.** Your costs to replace consumable goods suspected to be contaminated;

**d.** Reimbursement to infected customers for doctor's care, hospitalization and necessary medical tests or vaccinations; and

**e.** Your expense to provide necessary medical tests and vaccinations for your employees (including temporary or leased employees) who are potentially infected by the "food contamination". This coverage is primary to any other insurance coverage. However, we will not pay for any expense that is otherwise covered under a Workers' Compensation policy.

In addition to the Food Contamination coverage outlined above, we will also pay additional advertising expenses you incur to restore your reputation.

We will not pay for loss caused directly or indirectly due to fines or penalties of any kind. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 09 18**
**Page 4 of 27**

In the event of a loss you must:

**a.** Give us prompt notice of the suspension declaration;

**b.** Notify any public authority that may have jurisdiction over the incident; and

**c.** As soon as possible, give us a description of how, when and where the "food contamination" was first discovered.

"Food contamination" means an outbreak of food poisoning or food-related illness of one or more persons arising out of:

**a.** Tainted food you distributed or purchased;

**b.** Food which has been improperly processed, stored, handled or prepared in the course of your business operations; or

**c.** Food which has been contaminated by virus or bacteria transmitted through one or more of your employees, including temporary or leased employees.

The most we will pay for:

**a.** Food Contamination is the limit shown in the Schedule; and

**b.** Additional Advertising Expense is $5,000 unless a different limit shown in the Schedule.

**6. Newly Acquired Premises**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the newly acquired premises. The loss or damage must be caused by or result from a Covered Cause of Loss at any premises you newly acquire by purchase or lease, other than fairs, trade shows or exhibits.

The most we will pay under this Additional Coverage is the limit shown in the Schedule for each newly acquired premise.

Insurance under this Additional Coverage will end when any of the following first occurs:

**a.** This policy expires;

**b.** The number of days shown in the Schedule after you acquire the premises;

**c.** You report the premises to us.

**7. Off Premises Utility Services - Time Element**

We will pay for the actual loss of Business Income or Extra Expense at a described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property not located on the described premises:

**a.** Water Supply Property, meaning the following types of property supplying water to the described premises:

**(1)** Pumping stations; and

**(2)** Water mains.

**b.** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities.

Coverage under this Additional Coverage does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**c.** Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(1)** Communication transmission lines, including optic fiber transmission lines;

**(2)** Coaxial cables; and

**(3)** Microwave radio relays except satellites.

**d.** Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(1)** Utility generating plants;

**(2)** Switching stations;

**(3)** Substations;

**(4)** Transformers; and

**(5)** Transmission lines.

As used in this Additional Coverage, the term transmission lines includes all lines which serve to transmit communication service or power including lines which may be identified as distribution lines.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

We will pay the actual loss sustained from the initial time of service(s) failure at the described premises but only when the service interruption at the described premises exceeds 24 hours immediately following the direct physical loss or damage. Coverage does not apply to any reduction of income after service has been restored to your premises.

The most we will pay for loss or damage in any one occurrence under this Additional Coverage is the limit shown in the Schedule.

8.  **Interruption of Computer Operations**

    **a.** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a suspension of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss.

    **b.** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

    **(1)** Coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" and Collapse.

    **(2)** If the Businessowners Coverage Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage.

    **(3)** The Covered Causes of Loss include a computer virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you, or for you, to inspect, design, install, modify, maintain, repair or replace that system.

    **c.** The most we will pay under this Additional Coverage - Interruption Of Computer Operations for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved, is $10,000 unless a higher Limit of Insurance is shown in the Declarations. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

    **d.** This Additional Coverage - Interruption Of Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **c.** above has not been exhausted.

    **e.** Coverage for Business Income does not apply when a suspension of "operations" is caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **a.** through **d.** of this Additional Coverage.

    **f.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of "operations" caused by destruction or corruption of "electronic data", or any loss or damage to "electronic data", except as provided under Paragraphs **a.** through **d.** of this Additional Coverage.

9.  **Web Sites**

    We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" caused by direct physical loss or damage by a Covered Cause of Loss to:

    **a.** Your business "computer" hosting your business web site at a described location; or

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**b.** Your business web site operation at the premises of a vendor acting as your service provider.

The most we will pay for loss under this Additional Coverage is the lesser of:

**a.** The loss you sustain during the 7-day period immediately following the first 12 hours after the suspension of your website operations; or

**b.** The limit shown in the Schedule.

**10. Contractual Penalties**

You may extend your Business Income coverage to apply to contractual penalties you are legally liable to pay under a written contract between you and your customers. This Additional Coverage only applies if the penalties:

**a.** Result from your failure to timely deliver your product according to contract terms;

**b.** Result from direct physical loss or damage by a Covered Cause of Loss; and

**c.** Have been paid to your customer.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

**11. Unnamed Premises - Business Income**

We will pay for:

**a.** The loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

**b.** The reasonable and necessary Extra Expense you incur during the "period of restoration";

as a result of direct physical loss or damage to property at "unnamed premises" caused by or resulting from a Covered Cause of Loss.

For this Additional Coverage, "unnamed premises" means locations:

**a.** Owned, leased or operated by you; or

**b.** Not owned, leased or operated by you,

where Your Business Personal Property or Personal Property of Others in your care, custody or control is located that are within the Coverage Territory and not described in the Declarations.

This Additional Coverage does not apply to loss of Business Income caused by or resulting from loss or damage to property:

**a.** At the premise of a dependent property;

**b.** At any location to which the Newly Acquired Premises Additional Coverage applies;

**c.** At any vendor location to which the Web Sites Additional Coverage applies; or

**d.** In transit.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

**12. Pollutant Clean-Up And Removal**

We will pay for the loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by the discharge, dispersal, seepage, migration, release or escape of "pollutants" to land or water at the described premises. Such discharge, dispersal, seepage, migration, release or escape must be caused by or result from a Covered Cause of Loss that occurs during the policy period.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

**13. Auto Physical Damage Business Income**

We will pay for the loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss or damage to a "covered motor vehicle". The loss or damage must be caused by or result from a Covered Cause of Loss.

"Covered motor vehicle" means a vehicle:

**a.** Owned by you; or

**b.** Leased to you for a period greater than 6 months; and

**c.** Insured by us or any of our affiliates under an Automobile or Garage Coverage Part:

   **(1)** Covered for direct physical loss or damage; and

   **(2)** Maintains rental reimbursement coverage; and

**d.** Used to transport your business personal property.

For this Additional Coverage only:

**a.** "Operations" also means your business activities involving the use of a "covered motor vehicle".

**b.** "Period of restoration" applies to the "covered motor vehicle" rather than the described premises.

Payment for Extra Expense does not apply under this Additional Coverage.

This Additional Coverage does not apply to "private passenger type vehicles".

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

"Private passenger type vehicle" means a four-wheel auto of the private passenger or station wagon type.

The most we will pay under this Additional Coverage is the limit shown in the Schedule.

The following applies to all Business Income Additional Coverages:

**1.** Business Income means the:

    **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

    **b.** Continuing normal operating expenses incurred, including payroll.

**2.** Suspension means:

    **a.** The partial slowdown or complete cessation of your business activities; and

    **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**3.** When Business Income is written on an Actual Loss Sustained basis, all Business Income Additional Coverages are in addition to the Limit of Insurance shown in the Declarations.

When Business Income is written with a maximum dollar limit, then Business Income - Direct Damage, Extended Business Income and Civil Authority are subject to the Limit of Insurance shown in the Declarations.

**Extra Expense**

**1.** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

    **a.** The portion of the building which you rent, lease or occupy;

    **b.** The area within 1,000 feet of the building or within 1,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

    **b.** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

**2.** Extra Expense means expense incurred:

    **a.** To avoid or minimize the suspension of business and to continue "operations":

        **(1)** At the described premises; or

        **(2)** At replacement premises or at temporary location, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

    **b.** To minimize the suspension of business if you cannot continue "operations".

    **c.** To:

        **(1)** Repair or replace any property; or

        **(2)** Research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Business Income Additional Coverage.

**3.** With respect to the coverage provided in this Additional Coverage, suspension means:

    **a.** The partial slowdown or complete cessation of your business activities; or

    **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income applies.

**4.** We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage unless optional coverage for 18 or 24 consecutive months is shown in the Schedule. This Additional Coverage is not subject to the Limits of Insurance of **SECTION I — PROPERTY.**

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**BP 72 46 09 18
Page 8 of 27**

**Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you shall:

1. Stamp the word "Salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

2. Remove the brands and labels, if doing so will not physically damage the merchandise or its containers.

You must relabel the merchandise or its containers to comply with the law.

We will pay reasonable costs you incur to perform the activity described in **1.** or **2.** above.

This Additional Coverage is included within the Business Personal Property Limit of Insurance shown in the Declarations.

**Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in Paragraphs **1.** through **7.** below.

1. For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this policy or that contains Covered Property insured under this policy, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   **(1)** A cause of loss listed in Paragraph **2.a.** or **2.b.;**

   **(2)** One or more of the "specified causes of loss";

   **(3)** Breakage of building glass;

   **(4)** Weight of people or personal property; or

   **(5)** Weight of rain that collects on a roof.

3. This Additional Coverage - Collapse does not apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Awnings;

   **b.** Gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Piers, wharves and docks;

   **f.** Beach or diving platforms or appurtenances;

   **g.** Retaining walls; and

   **h.** Walks, roadways and other paved surfaces,

   If an abrupt collapse is caused by a cause of loss listed in Paragraphs **2.a.** through **2.d.,** we will pay for loss or damage to that property only if such loss or damage is a direct result of the abrupt collapse of a building insured under this policy and the property is Covered Property under this policy.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in Paragraphs **2.a.** through **2.d.** of this Additional Coverage; and

   **b.** The personal property which collapses is inside a building; and

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

c.   The property which collapses is not of a kind listed in Paragraph **4.** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.**   This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.**   This Additional Coverage - Collapse, will not increase the Limits of Insurance provided in this policy.

**8.**   As used in this Additional Coverage, the term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in Paragraphs **1.** through **7.** above.

### Consequential Loss

If a Covered Cause of Loss occurs to covered "stock", we will pay any reduction in value of the remaining undamaged parts of damaged "stock".

This Additional Coverage is included within the Business Personal Property Limit of Insurance shown in the Declarations.

### Debris Removal

We will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the Policy Period.

This Additional Coverage does not apply to costs to:

**1.**   Extract "pollutants" from land or water; or

**2.**   Remove, restore, or replace polluted land or water.

If the sum of direct physical loss or damage and debris removal expense exceeds the applicable Limit of Insurance we will pay up to an additional 10% of this Limit of Insurance for each location under the Debris Removal Additional Coverage or $25,000 whichever is greater, unless a higher percentage/limit is shown in the Schedule.

### Limited Coverage For "Fungi", Wet Rot Or Dry Rot

**1.**   The coverage described in Paragraphs **2.** and **6.** below only applies when the "fungi", wet rot or dry rot are the result of a "specified cause of loss" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**2.**   We will pay for loss or damage by "fungi", wet rot or dry rot. As used in this Limited Coverage, the term loss or damage means:

a.   Direct physical loss or damage to Covered Property caused by "fungi", wet rot or dry rot, including the cost of removal of the "fungi", wet rot or dry rot;

b.   The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot or dry rot; and

c.   The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot or dry rot are present.

**3.**   The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in a 12 month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungi", wet rot or dry rot, we will not pay more than the total of $15,000 even if the "fungi", wet rot or dry rot continues to be present or active, or recurs, in a later policy period.

**4.**   The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungi", wet rot or dry rot, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

If there is covered loss or damage to Covered Property, not caused by "fungi", wet rot or dry rot, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet rot or dry rot causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5.  The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water Damage, Other Liquids, Powder Or Molten Material Damage or Collapse Additional Coverage.

6.  The following applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all the terms and conditions of the applicable Business Income and/or Extra Expense Additional Coverage.

    a.  If the loss which resulted in "fungi", wet rot or dry rot does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet rot or dry rot, then our payment under the Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    b.  If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet rot or dry rot, but remediation of "fungi", wet rot or dry rot prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## Ordinance or Law Coverage

You may extend the insurance provided by this Coverage Form to apply to Ordinance or Law.

This Additional Coverage is subject to the provisions of the Ordinance Or Law Endorsement **BP 72 67** attached to this policy.

## Pollutant Clean-Up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from land or water.

The most we will pay for each location under this Additional coverage is the limit shown in the Schedule for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

## Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

1.  While it is being moved or while temporarily stored at another location; and

2.  Only if the loss or damage occurs within the number of days shown in the Schedule after the property is first moved.

## Tenant Additional Rental Expense

If your lease is cancelled by the lessor in accordance with a valid lease provision due to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to property at the location in which you are a tenant, we will pay for additional rental expense incurred by you for a period of up to 365 days up to the limit shown in the Schedule.

Additional rental expense means the difference between the monthly rent you were paying prior to the loss and the monthly rent you are paying at your new replacement location. If the area being occupied at the new location is greater than that at the old location, the additional rental expense to be paid will be pro-rated.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

## Tenant Lease Assessment

We will extend your Business Personal Property to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical loss or damage caused by or resulting from a Covered Cause of Loss to building property you occupy as agreed to in your written lease agreement.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Tenant Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision due to direct physical loss or damage caused by or resulting from a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove tenant's improvements and betterments, we will extend Business Personal Property coverage or if written under a separate limit of insurance your Tenant's Improvements and Betterments coverage to apply to the unamortized value of tenant's improvements and betterments that remain and that you were forced to abandon.

The most we will pay for loss under this Additional Coverage is the limit shown in the Schedule.

This Additional Coverage is included within the Business Personal Property or if written separately, the Tenant's Improvements and Betterments Limit of Insurance in the Declarations.

**Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

1. Results in discharge of any substance from an automatic fire protection system; or

2. Is directly caused by freezing.

E. Paragraph **A.6. Coverage Extensions** does not apply and is replaced by the following:

**Coverage Extensions**

In addition to the Limits of Insurance of **SECTION I — PROPERTY,** you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Coverage Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

Unless otherwise stated in this Endorsement or in a specific Coverage Extension, Coverage Extensions:

1. Are in addition to the Building and Business Personal Property Limits of Insurance shown in the Declarations;

2. Apply to each described premises on a per occurrence basis; and

3. Are subject to the Deductible provision of this Endorsement.

**Additional Costs**

You may extend the insurance provided by this Coverage Form to pay for Additional Costs as a result of direct physical loss or damage to buildings at described premises caused by or resulting from a Covered Cause of Loss.

1. Additional Costs mean only the following necessary additional expenses you have paid over and above the estimated completed cost of any building or structure covered by this Coverage Extension:

   a. Additional real estate broker fees or commission;

   b. Additional architect, engineering and consulting fees other than fees and costs billed by and payable to independent or public adjusters or any of their affiliated entities;

   c. Additional legal or accounting fees; and

   d. Additional advertising and promotional expenses.

2. This Coverage Extension does not apply to:

   a. Claim Expenses; or

   b. Ordinance Or Law.

3. We will pay any covered loss of Additional Costs only for that period of time that:

   a. Begins on the date of the Covered Cause of Loss; and

   b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

   The most we will pay under this Coverage Extension is the limit shown in the Schedule.

**Appurtenant Structures**

1. When there is Building Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to incidental appurtenant structures within 1,000 feet of the described premises, caused by or resulting from a Covered Cause of Loss.

2. When there is a Business Personal Property Limit of Insurance shown in the Declarations at the described premises, you may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Business Personal Property within incidental appurtenant structures within 1,000 feet of the described premises, caused by or resulting from a Covered Cause of Loss.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

3. Incidental appurtenant structures include storage buildings, carports, garages and similar structures which have not been specifically described in the Declarations.

The most we will pay for loss or damage under this Coverage Extension for any combination of loss or damage to Building and Business Personal Property is the limit shown in the Schedule.

**Arson, Theft and Vandalism Rewards**

(This provision does not apply in New York)

We will pay for rewards given to any person or persons other than you; your officers; your partners or "members"; your "managers"; your employees; or public police, or fire officials for information leading to a conviction in connection with:

1. A fire loss to the described premises caused by arson;

2. An actual or attempted theft of "money", "securities", or Covered Property; or

3. A vandalism loss to the described premises.

The most we will pay under this Coverage Extension is the limit shown in the Schedule, or the amount of the claim, whichever is less. This is the most we will pay regardless of the number of persons who provided information.

**Back-Up Of Sewers And Drains**

You may extend the insurance provided by this Coverage Form to pay for direct loss or damage caused by:

1. Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

2. Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown of a sump pump or its related equipment.

For purposes of this Coverage Extension, drain does not include a roof drain, gutter, downspout or similar above ground drainage fixture or equipment.

With respect to Paragraph **2.** above, we will not pay the cost of repairing or replacing a sump pump or its related equipment in the event of mechanical breakdown.

This Coverage Extension does not apply to loss or damage resulting from:

1. Your failure to keep a sump pump or its related equipment in proper working condition; or

2. Your failure to perform the routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the schedule.

**This Coverage Extension is not flood insurance.** We will not pay for direct physical loss or damage from water that backs up or overflows from a sewer, drain or sump pump caused by any flood whether or not the flood contributes concurrently or in any sequence to the loss. This applies regardless of the proximity of the flood to Covered Property. Flood includes the accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not that enters the sewer or drain system.

**Blanket Additional Coverage**

You may extend the insurance provided by this Coverage Form to apply to a Blanket Additional Coverage Limit of Insurance, which applies at each described premises to the sum of all covered losses under the coverages described below. You may allocate this limit among the coverages as you desire.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under the Blanket Additional Coverage is the limit shown in the Schedule.

The Blanket Additional Coverage consists of the following coverages:

1. **Accounts Receivable**

   Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss or damage to your records of "accounts receivable" at the described premises caused by or resulting from a Covered Cause of Loss.

   For "accounts receivable" not at the described premises, the most we will pay is up to the limit shown in the Schedule unless you give us written notice within 10 days after removal of your records of "accounts receivable" because of imminent danger of loss. We will pay for loss while they are:

   a. At a safe place away from your described premises.

   b. Being taken to and returned from that place.

   This off-premises "accounts receivable" limit is included in and not in addition to the Blanket Additional Coverage limit.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

Paragraph **B. Exclusions** in Section I — Property does not apply to this Coverage Extension except for:

**a.** Governmental Action;

**b.** Nuclear Hazard;

**c.** War and Military Action;

**d.** Dishonesty;

**e.** False Pretense;

**f.** Weather Conditions;

**g.** Acts or Decisions;

**h.** Negligent Work; and

**i.** Accounts Receivable Exclusion.

**2. Electronic Information Systems**

Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss of or damage to your "computer(s)" and "electronic data".

This Coverage Extension is subject to the provisions of the Electronic Information Systems Coverage Endorsement **BP 70 27** attached to this policy.

**3. Spoilage**

Within the Blanket Additional Coverage Limit of Insurance, when a Business Personal Property Limit is shown in the Declarations for the described premises, you may extend the insurance provided by this Coverage Form to apply to direct loss or damage to "perishable stock" caused by:

**a.** A change in temperature or humidity resulting from mechanical breakdown or mechanical failure of refrigerating, cooling or humidity control apparatus or equipment at the described premises;

**b.** Contamination by a refrigerant only while the refrigerating apparatus or equipment is at the described premises; or

**c.** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises due to conditions beyond your control.

We will not pay for loss or damage to "perishable stock" located:

**a.** On buildings;

**b.** In the open; or

**c.** In vehicles.

Paragraph **B. Exclusions** in **Section I — Property** is replaced by the following:

**a.** Of the exclusions contained in Paragraph **B.1.** in Section I — Property, only the following apply:

**(1)** Earth Movement;

**(2)** Governmental Action;

**(3)** Nuclear Hazard;

**(4)** War And Military Action; and

**(5)** Water.

**b.** The following exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**(1)** The disconnecting of any refrigeration, cooling or humidity control systems from the source of electrical power;

**(2)** The shutting off of any switch or other device used to control the flow of electric power or current;

**(3)** The inability of an electrical utility company, your stationary heating plant or any other power source to provide sufficient heat or power due to:

**(i)** Lack of fuel;

**(ii)** Lack of capacity to make enough heat or power;

**(iii)** Order of the government.

**(4)** Breaking of any glass that is a permanent part of any refrigeration, cooling or humidity control system.

"Perishable Stock" means personal property:

**1.** Maintained under controlled temperature or humidity conditions for its preservation; and

**2.** Susceptible to loss or damage if the controlled temperature or humidity conditions change.

**4. Valuable Papers and Records - Cost of Research**

Within the Blanket Additional Coverage Limit of Insurance, we will pay for direct physical loss or damage to your "valuable papers and records" or those in your care, custody or control at the described premises caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research, replace, or restore the lost information on lost or damaged "valuable papers and records", for which duplicates do not exist.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

For "valuable papers and records" not at the described premises, the most we will pay is the limit shown in the Schedule. This off-premises "valuable papers and records" limit is included in and not in addition to the Blanket Additional Coverage limit.

Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

Paragraph **B. Exclusions** in Section **I —** Property does not apply to this Coverage Extension except for:

**a.** Governmental Action;

**b.** Nuclear Hazard;

**c.** War and Military Action;

**d.** Dishonesty;

**e.** False Pretense;

**f.** Errors Or Omissions;

**g.** Weather Conditions;

**h.** Acts or Decisions; and

**i.** Negligent Work.

**Building Owner - Leasehold Interest**

**1.** You may extend the insurance provided by this Coverage Form to apply to loss of rental income in the event that your tenant(s) cancel their lease(s) in a described premises due to untenantability caused by direct physical loss or damage by a Covered Cause of Loss.

**2.** Loss of Rental Income does not include:

**a.** Prepaid Rent;

**b.** Security and other deposits made by tenants;

**c.** Insurance, taxes or other payments you made on behalf of the tenants.

**3.** We will pay only for loss of rental income that you sustain after tenantability is restored and until the earlier of:

**a.** The date you lease the premises to another tenant;

**b.** 12 months immediately following the "period of restoration"; or

**c.** The normal expiration date of the cancelled lease(s).

The most we will pay for loss of rental income under this Coverage Extension is the limit shown in the Schedule.

**Building Owner - Tenant Move Back Expenses**

**1.** You may extend the insurance provided by this Coverage Form to apply to expenses you incur as building owner to move tenants back into a described premises that was previously vacated due to temporary untenantability caused by direct physical loss or damage by a Covered Cause of Loss.

**2.** We will pay only for the following move back expenses that are documented, reasonable and necessary:

**a.** Packing, insuring and transporting Business Personal Property;

**b.** Re-establishing electric utility and communication services, less any refunds due tenants from discontinued services;

**c.** Assembly and setting up fixtures and equipment; or

**d.** Unpacking and reshelving "stock" and supplies.

**3.** We will pay only for move back expenses incurred within 60 days of the date that the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**4.** If your tenants have valid and collectible insurance for move back expenses, we will pay only for the amount in excess of the amount payable from such other insurance.

The most we will pay for move back expenses under this Coverage Extension is the limit shown in the Schedule.

**Claim Expenses**

You may extend the insurance provided by this Coverage Form to apply to necessary and reasonable expenses you incur at our specific request to assist us in:

**1.** The investigation of a claim or suit; or

**2.** The determination of the amount of loss, such as taking inventory or auditing business records.

We will not pay for:

**1.** Any expenses incurred, directed or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries.

**2.** Any costs incurred due to the Loss Condition - Appraisal.

**3.** Any expenses incurred, directed or billed by or payable to insurance agents or brokers or their associates or subsidiaries.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Commercial Tools and Small Equipment**

**1.** You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to commercial tools and small equipment including communication devices and diagnostic equipment usual to your business operations which are:

    **a.** Your property;

    **b.** The property of others in your care, custody or control; or

    **c.** The property of your employees. Damage to the property of your employees is limited to while on your premises

but only if such loss or damage is caused by or results from a Covered Cause of Loss or is caused by flood, earthquake or landslide.

**2.** In addition to the items listed within **Property Not Covered,** we will not pay for any loss to the following property:

    **a.** Watercraft or watercraft parts and equipment;

    **b.** Commercial tools and small equipment that are permanently mounted to a vehicle, including trailers;

    **c.** Tires or tire tubes, attached or unattached, for use with commercial tools and small equipment, unless the loss or damage is caused by "theft", malicious mischief, or the result of a "specified cause of loss"; or

    **d.** Any property while underground, airborne or waterborne.

**3.** We will not pay for any loss caused by or resulting from:

    **a.** Any repair, adjusting, servicing, testing or maintenance process unless fire or explosion ensues, then only for the loss caused by such ensuing fire or explosion;

    **b.** "Theft" from an unattended vehicle including loss:

        **(1)** From inside a vehicle, including trailers or from a permanently mounted toolbox, except when:

            **(a)** Securely locked;

            **(b)** There is visible evidence that entry was forced; and

            **(c)** Its windows were fully closed; or

        **(2)** While items are placed on the exterior of an unattended vehicle, including trailers, unless the item:

            **(a)** Was secured;

            **(b)** Was protected by privacy locks; and

            **(c)** There is visible evidence that removal was accomplished by force.

**4.** The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule but not more than $1,000 for any one tool and not more than $2,500 for any one tool box or piece of small equipment.

**Computer Fraud**

If a limit of insurance is shown in the Declarations for Computer Fraud, you may extend the insurance provided by this Coverage Form to apply to Computer Fraud.

This Coverage Extension is subject to the provisions of the Computer Fraud Endorsement **BP 72 25** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Credit Card Slips**

We will pay for amounts you are unable to collect due to loss of or damage to credit card slips while located at the described premises as the result of a Covered Cause of Loss.

It is your responsibility to demonstrate the amount of the loss under this Coverage Extension. If you are unable to conclusively demonstrate the amount of loss, the amount of the loss will be determined as follows:

**1.** If you have been in business for more than twelve months at the location of the loss, one-thirtieth (1/30) of the average monthly amount of credit card slips will be considered as average daily credit card slips for that location.

    The twelve months immediately preceding the discovery of the loss will be used to determine the average monthly amount.

**2.** If you have been in business for less than twelve months at the location of the loss, the average daily credit card slips shall be one-thirtieth (1/30) of the average monthly amount of credit card slips for the number of months you have been in business at that location.

**3.** The average daily credit card slips will be multiplied by the number of days for which slips are lost to determine the amount of the loss subject to the maximum limit indicated below.

The most we will pay as a result of loss or damage to credit card slips under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Deferred Payments**

You may extend the insurance provided by this Coverage Form to cover your interest in lost or damaged personal property, caused by or resulting from a Covered Cause of Loss, sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after delivery to buyers.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

When loss occurs and the buyer continues to pay you, there will be no loss payment.

In the event of loss or damage covered by this Coverage Extension:

1. When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer.

2. When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

   a. If the realized value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

   b. If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**Employee Theft (including Employee Benefit Plans)**

If a limit of insurance is shown in the Declarations for Employee Theft, you may extend the insurance provided by this Coverage Form to apply to Employee Theft.

This Coverage Extension is subject to the provisions of the Employee Theft Endorsement **BP 72 24** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Expediting Expenses**

You may extend the insurance provided by this Coverage Form to apply to necessary and reasonable expenses you incur to make temporary repairs, expedite permanent repairs, or expedite permanent replacement, at the described premises if the described premises has sustained direct physical loss or damage causes by a Covered Cause of Loss.

Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

Expediting expenses do not include expenses you incur for the temporary rental of property or temporary replacement of damaged property.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

**Fine Arts**

You may extend the insurance provided by this Coverage Form to apply to fine arts.

This Coverage Extension is subject to the provisions of the Fine Arts Endorsement **BP 72 27** attached to this policy.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for any one item of fine art and the limit shown in the Schedule for any one occurrence.

**Fire Department Service Charge**

When the Fire Department is called to save or protect Covered Property from direct physical loss or damage caused by or resulting from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

1. Assumed by contract or agreement prior to loss; or

2. Required by local ordinance.

The most we will pay under this Coverage Extension is the limit shown in the Schedule. The limit shown in the Schedule is the most we will pay regardless of the number of responding fire departments or fire units and the number or type of services performed.

**Fire Extinguisher Systems Recharge Expense**

1. We will pay:

   a. The lesser of the cost to recharge or replace your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises; and

   b. For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

2. No coverage will apply if the fire extinguishing system is discharged during installation or testing.

3. The most we will pay under this Coverage Extension is the actual cost/loss sustained.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Forgery Or Alterations**

If a limit of insurance is shown in the Schedule for Forgery Or Alteration, you may extend the insurance provided by this Coverage Form to apply to Forgery Or Alterations.

This Coverage Extension is subject to the provisions of the Forgery Or Alterations Endorsement **BP 72 68** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Funds Transfer Fraud**

If a limit of insurance is shown in the Schedule for Funds Transfer Fraud, you may extend the insurance provided by this Coverage Form to apply to Funds Transfer Fraud.

This Coverage Extension is subject to the provisions of the Funds Transfer Fraud Endorsement **BP 72 26** attached to this policy.

The most we will pay under this Coverage Extension is the limit shown in the Schedule for any one "occurrence".

**Glass Expenses**

In the event direct physical loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss results in loss or damage to building glass, we will pay for glass expenses incurred to:

1.  Repair and replace frames immediately encasing and contiguous to such glass when necessary because of such damage;

2.  Install temporary plates in or board up openings containing such glass when necessary because of unavoidable delay in repairing or replacing such damaged glass;

3.  Remove or replace any obstructions other than window displays, when necessary in replacing such damaged glass, lettering or ornamentation; and

4.  Repair or replace damage to or destruction of the lettering and ornamentation of glass including loss caused by chemicals accidentally or maliciously applied.

This Coverage Extension is included within the Building and/or Business Personal Property Limit of Insurance shown in the Declarations.

**Installation Property**

1.  You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to "installation property" while:

    a.  At a premises, other than a described premises, where you or subcontractors working for you are performing operations;

    b.  At any temporary storage location you do not own, lease or operate; or

    c.  While in transit;

    but only if such loss or damage is caused by or results from a Covered Cause of Loss or is caused by flood, earthquake or landslide.

2.  "Installation property" means your property and property of others for which you are liable or in which you have an interest, which is intended for installation, such as, but not limited to materials, supplies, fixtures, machinery and equipment and including labor or services furnished in connection with the installation.

3.  This Coverage Extension does not apply to Commercial Tools and Small Equipment which is covered under the Commercial Tools and Small Equipment Coverage Extension.

4.  The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Lock Replacement Coverage**

We will pay for the cost to replace locks necessitated by the theft of keys from your premises.

The most we will pay for loss under this Coverage Extension is the limit shown in the Schedule.

Each loss for lock replacement covered by this Coverage Extension is subject to a $50 deductible.

**Loss Payment on Merchandise Sold**

You may extend the coverage that applies to your Business Personal Property to cover direct physical loss or damage to merchandise that you have sold but not yet delivered caused by or resulting from a Covered Cause of Loss.

The basis of the valuation of such merchandise shall be the price paid by the customer to the insured, not to exceed the amount for which the insured is legally liable.

This Coverage Extension is included within the Business Personal Property Limit of Insurance shown in the Declarations for each described premises.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Mobile Equipment**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to your mobile equipment such as fork lifts, lawn mowers, electric carts, tractors and similar vehicles, which are used principally on the described premises to service the premises or your business caused by or resulting from a Covered Cause of Loss.

This Coverage Extension does not apply to vehicles which are licensed for use on public roads, not principally kept on the described premises or insured elsewhere.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Money and Securities**

1.  We will pay for loss of "money" and "securities":

    a.  Inside the "premises" or "banking premises":

        (1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

        (2) Resulting directly from disappearance or destruction.

        The most we will pay for loss in any one "occurrence" is the limit shown in the Schedule.

    b.  Outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

        The most we will pay for loss in any one "occurrence" is the limit shown in the Schedule.

2.  For purposes of this Coverage Extension, an "occurrence" means:

    a.  An individual act or event;

    b.  The combined total of all separate acts or events whether or not related; or

    c.  A series of acts or events whether or not related;

    committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

3.  This Coverage Extension does not cover:

    a.  Acts by you, your partners or "members" or of "employees", "managers", directors, trustees or authorized representatives:

        (1) Whether acting alone or in collusion with other persons; or

        (2) While performing services for you or otherwise.

    b.  Loss that is an indirect result of an "occurrence" covered by this Coverage Extension including, but not limited to loss resulting from:

        (1) Your inability to realize income that you would have realized had there been no loss of or damage to "money" or "securities";

        (2) Payment of damages of any type for which you are legally liable;

        (3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

    c.  Loss resulting from accounting or arithmetical errors or omissions.

    d.  Loss resulting from the giving or surrendering of property in any exchange or purchase.

    e.  Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

    f.  Fees, costs and expenses incurred by you which are related to any legal action.

5.  You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise "money" or services:

1.  Money orders issued by any post office, express company or bank that are not paid upon presentation; or

2.  "Counterfeit money" that is acquired during the regular course of business.

This Coverage Extension does not cover:

1.  Acts by you, your partners or "members" or of "employees", "managers", directors, trustees or authorized representatives:

    a.  Whether acting alone or in collusion with other persons; or

    b.  While performing services for you or otherwise;

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

2. Loss that is an indirect result of an "occurrence" covered by this Coverage Extension including, but not limited to loss resulting from:

   **a.** Your inability to realize income that you would have realized had there been no loss of or damage to "money" or "securities";

   **b.** Payment of damages of any type for which you are legally liable;

   **c.** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. Loss resulting from accounting or arithmetical errors or omissions.

4. Loss resulting from the giving or surrendering of property in any exchange or purchase.

5. Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

6. Fees, costs and expenses incurred by you which are related to any legal action.

For purposes of this Coverage Extension, an "occurrence" means:

1. An individual act or event;

2. The combined total of all separate acts or events whether or not related; or

3. A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

The most we will pay for any one loss under this Coverage Extension is the limit shown in the Schedule.

**Newly Acquired or Constructed Property**

1. When a Building Limit of Insurance is shown in the Declarations, you may extend the insurance that applies to Building to apply to:

   **a.** Your new buildings while being built on the described premises; and

   **b.** Buildings you acquire at premises, other than the described premises, intended for:

      **(1)** Similar use as the building described in the Declarations; or

      **(2)** Use as a warehouse.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for each newly acquired property.

2. When a Business Personal Property Limit of Insurance is shown in the Declarations, you may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule for each newly acquired property.

3. Insurance under this Coverage Extension for each newly acquired or constructed property will end when any of the following first occurs:

   **a.** This policy expires;

   **b.** The number of days shown in the Schedule after you acquire or begin to construct the property; or

   **c.** You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**Non-Owned Detached Trailers**

1. When a Business Personal Property Limit of Insurance is shown in the Declarations at the described premises, you may extend the insurance provided under this Coverage Form to apply to direct physical loss or damage to trailers or semi-trailers that you do not own caused by a Covered Cause of Loss, provided that:

   **a.** The trailer or semi-trailer is used in your business;

   **b.** The trailer or semi-trailer is in your care, custody or control at the described premises; and

   **c.** You have a contractual responsibility to pay for loss or damage to the trailer or semi-trailer.

2. We will not pay for loss or damage that occurs:

   **a.** While the trailer or semi-trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion; or

   **b.** During hitching or unhitching operations, or when a trailer or semi-trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

3. The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

4. This insurance applies in excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**Off Premises Utility Services - Direct Damage**

You may extend the insurance provided by this Coverage Form to apply to loss or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following types of property not located on the described premises:

1. Water Supply Services meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

**Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage, including debris removal expense, to the following outdoor property owned or leased by you caused by or resulting from a Covered Cause of Loss:

1. Outdoor fences;

2. Outdoor signs and flagpoles whether or not attached to buildings;

3. Outdoor lights, whether or not attached to buildings;

4. Paved surfaces, including but not limited to bridges, roads, walks, foot and cart bridges, patios and parking lots;

5. Playground equipment;

6. Radio and television receiving equipment including loss or damage to your radio and television antennas, satellite dishes and similar audio/visual receiving equipment, their lead-in wiring, masts or towers;

7. Outdoor tents, canopies, and awnings of fabric or slate construction not attached to a building and located on your described premises;

8. Ornamental Gardens. However, loss or damage caused by weight of ice, snow or sleet is not covered;

9. Hardscape landscaping consisting of masonry or stone bridges, walks, patios, retaining walls or similar surfaces or wooden landscaping bridges, permanent objects whose primary function is decoration, benches, statues, fountains, monuments and gazeboes or similar structures; and

10. Outdoor artwork and decorative objects.

However, this Coverage Extension does not apply to loss or damage caused by freezing or thawing.

The most we will pay including debris removal expense, for loss or damage to any combination of Covered Property, Business Income and Extra Expense, under this Coverage Extension is the limit shown in the Schedule.

**Outdoor Trees, Shrubs and Plants**

You may extend the insurance provided by this Coverage Form, including debris removal expense, to apply to loss of your outdoor trees, shrubs and plants, caused by or resulting from a Covered Cause of Loss other than windstorm, hail, or weight of snow, ice or sleet.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule, but not more than $2,500 for any one tree, shrub or plant.

**Personal Effects**

You may extend the insurance that applies to Your Business Personal Property to apply to direct physical loss or damage to personal effects owned by you, your officers, your partners or "members", your "managers" or your employees caused by or resulting from a Covered Cause of Loss.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

Each loss for personal effects owned by any one individual is subject to a $100 deductible.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Property in Transit (including F.O.B. Shipments)**

**1.** You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to personal property used in your business that is in transit at your risk more than 1,000 feet from the described premises caused by or resulting from a Covered Cause of Loss or caused by flood, earthquake or landslide.

We cover property shipped:

**a.** By any type of carrier you do not own, lease, or operate; or

**b.** In or on any vehicle you own, lease, or operate.

**2.** We will also pay for loss or damage to property you ship on a F.O.B., meaning Free on Board, basis if you cannot collect the loss from the consignee. But we will only pay the amount of your interest in the property.

**3.** This Coverage Extension does not apply to:

**a.** Personal Property At Unnamed Premises - Within the Coverage Territory;

**b.** Salesperson's Samples

which are covered under separate Coverage Extensions.

**4.** The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Personal Property At Unnamed Premises - Within the Coverage Territory**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to your Business Personal Property and Personal Property of Others while at an "unnamed premises" caused by or resulting from a Covered Cause of Loss and for direct loss or damage caused by flood, earthquake or landslide.

For this Coverage Extension, "unnamed premises" means locations:

**1.** Owned, leased or operated by you; or

**2.** Not owned, leased or operated by you, where Your Business Personal Property or Personal Property of Others in your care, custody or control is located, including fairs, trade shows or exhibitions;

that are within the Coverage Territory and not described in the Declarations.

This Coverage Extension does not apply to:

**1.** Commercial Tools and Small Equipment;

**2.** Installation Property;

**3.** Newly Acquired or Constructed Property;

**4.** Personal Effects;

**5.** "Portable Computers";

**6.** Property In Transit;

**7.** Salesperson's Samples; and

**8.** Property outside of the Coverage Territory.

which are covered under separate Coverage Extensions.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the Schedule.

**Personal Property At Unnamed Premises - Outside the Coverage Territory**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Business Personal Property and Personal Property of Others while at an "unnamed premises" caused by or resulting from a Covered Cause of Loss.

For this Coverage Extension, "unnamed premises" means locations:

**1.** Owned, leased or operated by you; or

**2.** Not owned, leased or operated by you, where Your Business Personal Property or Personal Property of Others in your care, custody or control is located, including fairs, trade shows or exhibitions;.

that are at worldwide locations outside the Coverage Territory except within any country upon which the United States government has imposed sanctions, embargoes or any similar prohibition.

This Coverage Extension does not apply to:

**1.** Commercial Tools and Small Equipment;

**2.** Installation Property;

**3.** Newly Acquired or Constructed Property;

**4.** Personal Effects;

**5.** "Portable Computers";

**6.** Property In Transit except as provided below;

**7.** Salesperson's Samples; and

**8.** Property within the Coverage Territory.

The most we will pay for loss or damage to any combination of Covered Property, Business Income and Extra Expense for this Coverage Extension is the limit shown in the schedule except for Property In Transit which is $5,000.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**Salesperson's Samples**

**1.** You may extend the insurance provided by the Coverage Form to apply to direct physical loss or damage to samples of your stock in trade including containers while:

   **a.** In the custody of your sales representative, agent or any employee who travels with sales samples;

   **b.** In your custody while you are acting as a sales representative; or

   **c.** In transit between premises that you own, lease or operate and your sales repre-sentative;

   but only if such loss or damage is caused by or results from a Covered Cause of Loss.

**2.** We will not pay for any loss to the following property:

   **a.** Property which has been sold;

   **b.** "Money" and "securities", "valuable papers and records" or "accounts receivable";

   **c.** Jewelry, precious or semi-precious stones, gold, silver, platinum, or other precious metals or alloys;

   **d.** Furs, fur garments or garments trimmed with fur; or

   **e.** Any property while waterborne.

**3.** The following exclusions set forth in Paragraph **B. Exclusions** in Section **I** — Property do not apply:

   **a.** **B.1.b.** Earth Movement;

   **b.** **B.1.g.** Water;

   **c.** **B.2.g.** False Pretense;

   **d.** **B.2.l.(4)** Settling, cracking, shrinking or expansion;

   **e.** **B.2.l.(7)(a)** Dampness or dryness of atmosphere; and

   **f.** **B.2.l.(7)(b)** Changes in or extremes of temperature.

**4.** We will not pay for any loss or damage caused by "theft" from an unattended vehicle including:

   **a.** Loss from inside a vehicle, including trailers, or from a permanently mounted exterior toolbox except when:

      **(1)** Securely locked;

      **(2)** There is visible evidence that entry was forced; and

      **(3)** Its windows were fully closed; or

   **b.** While items are placed on the exterior of an unattended vehicle, including trailers, unless the item:

      **(1)** Was secured;

      **(2)** Was protected by privacy locks; and

      **(3)** There is visible evidence that removal was accomplished by force.

**5.** The most we will pay for any loss or damage to any combination of Covered Property, Business Income and Extra Expense under this Coverage Extension is the limit shown in the schedule.

**Tenant Building and Business Personal Property Coverage - Required by Lease**

You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to Building and Business Personal Property for which you have a contractual responsibility to insure caused by or resulting from a Covered Causes of Loss. This includes building fixtures, machinery and equipment that you are contractually responsible to insure.

The most we will pay for loss or damage under this Coverage Extension is the limit shown in the Schedule.

**Theft Loss to Building**

You may extend the coverage that applies to your Business Personal Property to cover loss directly resulting from an act of theft to that portion of a non-owned building that you occupy.

**Unauthorized Business Card Use**

You may extend the insurance provided by this Coverage Form to apply to loss and related actually incurred costs resulting from the theft or unauthorized use of your business credit, debit or charge cards issued in your business name and used solely for business purposes.

We will not pay for the theft or unauthorized use by employees of business credit, debit or charge cards or when such cards have been entrusted to a person other than the person whose name is on the card.

The most we will pay under this Coverage Extension is the limit shown in the Schedule.

**F.** Paragraph **B. Exclusions** is amended as follows:

   **1.** The following is added to Exclusion **1.a. Ordinance or Law:**

   This exclusion applies except as provided under the Additional Coverage for Ordinance Or Law.

   **2.** The following is added to Exclusion **1.g. Water:**

   This exclusion applies except as provided under the Coverage Extension for Back-Up of Sewers and Drains.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

3. The following exclusion is added to **B.1.:**

**k.  Computer Virus or Harmful Code**

Computer virus, harmful code or similar instruction introduced into or enacted on a computer system, including "electronic data", or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

This exclusion does not apply to the extent that coverage is provided under the Electronic Information Systems coverage which is part of the Blanket Additional Coverage.

G. Paragraph **C. Limits Of Insurance** is amended as follows:

1. Paragraph **C.2.** is deleted and does not apply.

2. Paragraph **C.5. Business Personal Property Limit - Seasonal Increase** does not apply and is replaced by the following:

**a.** Subject to meeting the requirements outlined in Paragraph **b.** below, the Limit of Insurance for Business Personal Property will increase by the percentage shown in the Schedule to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations for the described premises is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

Otherwise, the Limit of Insurance for Business Personal Property will automatically increase by only 10% to provide for seasonal variations.

If Business Personal Property is written on a blanket basis, the blanket limit does not apply to the Business Personal Property Limit - Seasonal Increase provision. The seasonal increase percentage is applied to the applicable described premises Business Personal Property limit shown in the Declarations.

H. Paragraph **D. Deductibles** does not apply and is replaced by the following:

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of **SECTION I — PROPERTY.**

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the following Coverage Extensions is $250:

**a.** Blanket Additional Coverage except for Spoilage. Deductible shown in the Declarations applies to Spoilage;

**b.** Commercial Tools and Small Equipment;

**c.** Computer Fraud;

**d.** Deferred Payments;

**e.** Employee Theft;

**f.** Fine Arts;

**g.** Forgery or Alterations;

**h.** Funds Transfer Fraud;

**i.** Glass Expenses;

**j.** Installation Property;

**k.** Money and Securities;

**l.** Money Orders and Counterfeit Paper;

**m.** Outdoor Property;

**n.** Outdoor Trees, Shrubs and Plants;

**o.** Salesperson's Samples;

**p.** Unauthorized Business Card Use.

3. Regardless of the Deductible applicable to any Coverage, Additional Coverage, or Coverage Extension, the Deductible shown in the Declarations is the most we will deduct from all loss or damage arising out of one occurrence.

4. No deductible applies to the following Additional Coverages:

**a.** Business Income;

**b.** Extra Expense;

**c.** Preservation of Property.

5. No deductible applies to the following Coverage Extensions:

**a.** Arson, Theft and Vandalism Rewards;

**b.** Claim Expenses;

**c.** Credit Card Slips;

**d.** Expediting Expenses;

**e.** Fire Department Service Charge;

**f.** Fire Extinguisher Systems Recharge Expense.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

**INSURED'S COPY**

**I.** Paragraph **E. Property Loss Conditions** is amended as follows:

1. The following is added to Paragraph **E.5.d.:**

    **(8)** If the Guaranteed Replacement Cost - Buildings option applies as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead we will determine the value of Buildings at replacement cost (without depreciation) and without regard to the Limit of Insurance shown in the Declarations, subject to the following:

    **(a)** We will not pay more for loss or damage on a replacement cost basis than the least of the following amounts, subject to **(d)** and **(e)** below.

    **(i)** The actual cost to replace the damaged building or structure, provided that:

    **aa.** You report to us, within 90 days of the start of any additions, improvements or enlargements of $10,000 or more made to the described building(s) during the policy period; and

    **bb.** You agree to increase the Limit of Insurance for the described building(s) to reflect the replacement cost value of the additions, improvements or enlargements.

    **(ii)** The cost to replace, on the same premises, the damaged property with other property:

    **aa.** Of comparable material and quality; and

    **bb.** Used for the same purpose; or

    **(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

    If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been rebuilt at the original premises.

    **(b)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a

claim for the additional coverage this endorsement provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **(c)** We will not pay on a replacement cost basis for any loss or damage:

    **(i)** Until the lost or damaged property is actually repaired or replaced; and

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    **(d)** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

    **(e)** Any additional Limit of Insurance provided by this option does not apply to loss or damage caused directly or indirectly by mine subsidence.

**J.** Paragraph **G. Optional Coverages** does not apply.

**K.** Paragraph **H. Property Definitions** is amended as follows:

1. Paragraph **9.** "period of restoration" definition is deleted and replaced by the following:

    "Period of Restoration" means the period of time that:

    **a.** Begins:

    **(1)** For Business Income with no hour waiting period after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises or dependent property unless one of the optional waiting period endorsements is attached to this policy; or

    **(2)** For Extra Expense immediately after the time of direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises; and

    **b.** Ends on the earlier of:

    **(1)** The date when the property at the described premises or dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**(2)** The date when business is resumed at a new permanent location.

The expiration date of this policy will not cut short the "period of restoration".

**2.** Paragraph **14. "Valuable Papers and Records"** is deleted and replaced by:

**14.** "Valuable papers and records" means:

  **a.** Inscribed, printed or written:

    **(1)** Documents;

    **(2)** Manuscripts; and

    **(3)** Records,

    including abstracts, books, deeds, drawings, films, maps, mortgages, x-ray negatives and prints and patient charts and records.

But "Valuable Papers and Records" does not mean "money" or "securities".

**3.** The following definitions are added:

**15.** "Accounts Receivable" means:

  **a.** All amounts due from customers that you are unable to collect;

  **b.** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

  **c.** Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

  **d.** Other reasonable expenses that you incur to reestablish your records of "accounts receivable".

**4.** The following definitions are added and apply to the crime related coverage extensions:

**16.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**17.** "Custodian" means you or any of your partners or "members" or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**18.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount of details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**19.** "Employee" means:

  **a.** Any natural person:

    **(1)** While in your service or for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

    **(2)** Who you compensate directly by salary, wages or commissions; and

    **(3)** Who you have the right to direct and control while performing services for you.

  **b.** Any natural person who is furnished temporarily to you:

    **(1)** To substitute for a permanent "employee" as defined in Paragraph **19.a.** above, who is on leave; or

    **(2)** To meet seasonal or short-term work load conditions;

    while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises".

  **c.** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **19.b.** above.

  **d.** Any natural person who is:

    **(1)** A trustee, officer, "employee", administrator or "manager" except an administrator or manager who is an independent contractor of any "employee benefit plan"; and

    **(2)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan".

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

**e.** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you.

**f.** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any of the "premises".

**g.** Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy.

**h.** Any of your "managers", directors or trustees while:

  **(1)** Performing acts within the scope of the usual duties of an "employee"; or

  **(2)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors of board or trustees to perform specific, as distinguished from general directorial acts on your behalf.

But "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in **19.a.** through **19.h.** above.

**20.** "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**21.** "Forgery" means the signing of the name of another person or organization with intent to deceive. It does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**22.** "Fraudulent instruction" means:

  **a.** An electronic, telegraphic, cable, teletype, tele facsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

  **b.** A written instruction (other than those described in the Forgery or Alteration Coverage Extension) issued by you, which was forged or altered by someone other than you without your knowledge

or consent or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

  **c.** An electronic, telegraphic, cable, teletype, tele facsimile, telephone or written instruction initially received by you which purports to have been transmitted by an employee but which was in fact fraudulently transmitted by someone else without your or the employee's knowledge or consent.

**23.** "Funds" means "money" and "securities".

**24.** "Messenger" means you or a relative of yours or any of your partners or "members" or any "employee" while having care and custody of property outside the "premises".

**25.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, "electronic data" or any property specifically excluded by the Businessowners Coverage Form.

**26.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**27.** "Theft" means the unlawful taking of property to the deprivation of the insured.

**28.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "money" and "securities":

  **a.** By means of electronic, telegraphic, cable, teletype, tele facsimile or telephone instructions communicated directly through an electronic funds transfer system; or

  **b.** By means of written instructions (other than those described in the Forgery or Alteration Coverage Extension) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**29.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permissions.

INSURED'S COPY

# BUSINESSOWNERS LIABILITY ENHANCEMENT

## (INCLUDING BUSINESSOWNERS COMMON POLICY CONDITIONS AMENDMENTS)

BUSINESSOWNERS
**BP 72 47 09 19**

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The sections of the above form identified in this endorsement will be amended as shown below. However, **if (a) two or more Coverage Parts of this policy, or (b) two or more forms or endorsements within the same Coverage Part** apply to a loss, only the broadest coverage of this policy will apply, unless specifically stated otherwise within the particular amendment covering that loss.

With respect to coverage provided by this endorsement, the provisions of the above form apply unless modified by the endorsement.

The following changes are made to **SECTION II — LIABILITY , A. Coverages, 1. Business Liability:**

## A. SUPPLEMENTARY PAYMENTS

Sub-Paragraphs **1.(b)** and **1.(d)** of Paragraph **f. Coverage Extension — Supplementary Payments** are replaced by the following:

**(b)** Up to $3,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(d)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $1,000 a day because of time off from work.

## B. EXCLUSIONS

The following changes are made under Paragraph **B. Exclusions:**

### 1. NON-OWNED AIRCRAFT

Exclusion **g. Aircraft, Auto Or Watercraft** does not apply to any aircraft, not owned or operated by any insured that is hired, chartered or loaned with a crew paid by a party other than an insured.

If the insured has any other valid and collectible insurance for "bodily injury" or "property damage" that would be covered under this provision, or on any other basis, this coverage is then excess and subject to the Other Insurance provisions of this policy for Excess Insurance.

### 2. NON-OWNED WATERCRAFT

Paragraph **(2)** of Exclusion **g. Aircraft, Auto Or Watercraft** is replaced by the following:

**(2)** A watercraft you do not own that is:

**(a)** Less than 60 feet long; and

**(b)** Not being used to carry persons or property for a charge.

With respect to Paragraph **(a)** above, any person is an insured who uses or is responsible for the use of such watercraft with your expressed or implied consent.

If the insured has any other valid and collectible insurance for "bodily injury" or "property damage" that would be covered under this provision, or on any other basis, this coverage is then excess and subject to the Other Insurance provisions of this policy for Excess Insurance.

### 3. PERSONAL AND ADVERTISING INJURY CONTRACTUAL EXCLUSION AMENDMENT

Sub-paragraph **(4)** of Exclusion **p. Personal And Advertising** is replaced by the following:

**(4)** For which the insured has assumed liability in a contract or agreement arising out of an "advertisement". This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

### 4. DAMAGE TO PREMISES RENTED TO YOU

**a.** The last paragraph under Paragraph **1. Applicable to Business Liability Coverage** is replaced by the following:

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

Exclusions **c., d., e., f., g., h., i., k., l., m., n.** and **o.** in **SECTION II — LIABILITY** do not apply to damage by fire, lightning, explosion or water release to premises rented to you or temporarily occupied by you with permission of the owner. A separate Damage To Premises Rented To You Limit of Insurance applies to this coverage as described in Paragraph **D., Liability And Medical Expenses Limits Of Insurance in SECTION II — LIABILITY.**

**b.** Sub-paragraph **3.** of Paragraph **D., Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

The most we will pay under Business Liability Coverage for damages because of "property damage" to a premises while rented to you or temporarily occupied by you with the permission of the owner is the Damage To Premises Rented To You limit shown in the Declarations. For a premises temporarily occupied by you, the applicable limit will be the highest Damage To Premises Rented To You limit shown in the Declarations.

**c.** Sub-paragraph **a.** of Definition **9.** "Insured contract" in Paragraph **F. Liability And Medical Expenses Definitions** is replaced by the following:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract";

**5.** MEDICAL PAYMENTS FOR NON-FOR-PROFIT MEMBERS

Sub-paragraph **a.** of Paragraph **2. Applicable to Medical Expenses Coverage** is replaced by the following:

**a.** To any insured, except "volunteer workers" and "not-for-profit members".

**C.** **WHO IS AN INSURED**

Paragraph **C. Who Is An Insured** is amended to include the following:

**1.** BLANKET ADDITIONAL INSUREDS - AS REQUIRED BY CONTRACT

Subject to the **PRIMARY AND NON-CONTRIBUTORY** provision set forth in this endorsement, the following are included as an additional insureds when you have agreed in a written contract, written agreement or written permit to provide such person or organization coverage as additional insureds under your policy:

**a.** **Lessors of Leased Equipment**

Any person or organization from whom you lease equipment, but only with respect to liability from "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

**b.** **Managers or Lessors of Premises**

Any person or organization from whom you lease premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you.

This insurance does not apply to:

**(1)** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**(2)** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization from whom the property is leased.

**c.** **Mortgagees, Assignees or Receivers**

Any person or organization with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of your premises.

This insurance does not apply to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 47 09 19**
**Page 2 of 6**

**d. Owners, Lessees or Contractors**

Any person or organization for whom you are performing operations, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts of omissions of those acting on your behalf in the performance of your ongoing operations performed for that person or organization.

**e. Any Person or Organization Other Than A Joint Venture**

Any person or organization (other than a joint venture of which you are a member), but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts of omissions of those acting on your behalf in the performance of your ongoing operations or in connection with property owned by you.

This insurance does not apply to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

However, this provision does not apply to any architects, engineers or surveyors with respect to any injury or damage caused, in whole or in part, by the rendering of or failure to render any professional architectural, engineering or surveying services by or for you, including:

**a.** The preparing, approving, or failing to prepare or approve maps, shop drawing, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury", "property damage" or "personal and advertising injury".

**2. BROAD FORM VENDORS COVERAGE**

Subject to the **PRIMARY AND NON-CONTRIBUTORY** provision set forth in this endorsement, Paragraph **C. Who Is An Insured** is amended to include as an additional insured any person or organization (referred to below as vendor) for whom you have agreed in a written contract or written agreement to provide coverage as an additional insured under your policy. Such person or organization is an additional insured only with respect to "bodily injury" or "property damage" caused, in whole or in part, by "your products" which are distributed or sold in the regular course of a vendor's business, but the insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a written contract or written agreement; but this exclusion does not apply to liability for damages that the vendor would have in the absence of the written contract or written agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product; or

**f.** Products which, after distribution or sale by you, have been labeled or re-labeled or used as a container, or part of an ingredient of any other thing or substance by or for the vendor; but this insurance does not apply to any insured person or organization, from who you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 47 09 19**
**Page 3 of 6**

The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage".

**3.   NOT-FOR-PROFIT ORGANIZATION MEMBERS AS ADDITIONAL INSUREDS**

If you are an organization other than a partnership, joint venture or a limited liability company and you are a not for profit organization, **Who Is An Insured** is amended to include as additional insureds your officials, trustees, board members, insurance managers and "not-for-profit members" but only with respect to their liability for your activities or activities they perform on your behalf.

**4.   NEWLY FORMED OR ACQUIRED ORGAN-IZATIONS**

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However,

**a.**   Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.**   This coverage does not apply if the newly formed or acquired organization's coverage is excluded either by the provisions of this Policy or by endorsement; and

**c.**   This coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**d.**   This coverage does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as Named Insured in the Declarations.

**D.   INCIDENTAL MALPRACTICE**

Sub-paragraph **2.a.(1)(d)** of Paragraph **C. Who Is An Insured** is replaced by the following:

**(d)**   Arising out of his or her providing or failing to provide professional health care services. This does not apply to nurses, emergency medical technicians or paramedics if you are not in the business or occupation of providing any such professional services. This also does not apply to "bodily injury" caused by cardio-pulmonary resuscitation or first aid services administered by a co-"employee".

**E.   KNOWLEDGE OF OCCURRENCE, OFFENSE, CLAIM OR SUIT**

Paragraphs **a.** and **b.** of Paragraph **E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS,** Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** will not apply until after the "occurrence", or offense, or claim or "suit" is known to:

**(a)**   You, if you are an individual;

**(b)**   A partner, if you are a partnership;

**(c)**   An executive officer or insurance manager, if you are a corporation;

**(d)**   Your members, managers or insurance manager, if you are a limited liability company; or

**(e)**   Your elected or appointed officials, trustees, board members or your insurance manager if you are an organization other than a partnership, joint venture or limited liability company.

**F.   DEFINITIONS**

Paragraph **F. Liability And Medical Expenses Definitions** is amended as follows:

**1.   MENTAL ANGUISH**

(This provision does not apply in New York.)

Definition **3.** is replaced by the following:

**3.**   "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time. (In New York, mental anguish has been determined to be "bodily injury.")

**2.   TEMPORARY WORKERS AS EMPLOYEES**

Definition **5.** is replaced by the following:

**5.**   "Employee" includes a "leased worker" and a "temporary worker".

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

3. **MOBILE EQUIPMENT**

(This provision does not apply in the states of New York or Virginia.)

Paragraph **f.(1)** of Definition **12.** does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

4. **DISCRIMINATION**

(This provision does not apply in New York.)

**A.** The following is added to Definition **14.:**

"Personal and advertising injury" also means "discrimination" that results in injury to the feelings or reputation of a natural person, however only if such "discrimination" is:

   **a.** Not done by or at the direction of:

   **(1)** The insured; or

   **(2)** Anyone considered an insured under Paragraph **C. Who Is An Insured;**

   **b.** Not done intentionally to cause harm to another person.

   **c.** Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

   **d.** Not arising out of any "advertisement" by the insured.

**B.** The following definition is added:

"Discrimination" means:

   **a.** Any act or conduct that would be considered discrimination under any applicable federal, state, or local statute, ordinance or law;

   **b.** Any act or conduct that results in disparate treatment of, or has disparate impact on, a person, because of that person's race, religion, gender, sexual orientation, age, disability or physical impairment; or

   **c.** Any act or conduct characterized or interpreted as discrimination by a person based on that person's race, religion, gender, sexual orientation, age, disability or physical impairment.

   It does not include acts or conduct characterized or interpreted as sexual intimidation or sexual harassment, or intimidation or harassment based on a person's gender.

This provision does not apply if "personal and advertising injury" coverage is excluded either by the provisions of this policy or by endorsement.

5. **NOT FOR PROFIT MEMBERS**

The following definition is added:

"Not for profit members" means a person(s) who is a member of a not for profit organization, including clubs and civic organizations who receive no financial or other compensation.

**G.** **SECTION III — BUSINESSOWNERS COMMON POLICY CONDITIONS — Amendments**

1. **UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

The following is added to Paragraph **C. Concealment, Misrepresentation Or Fraud:**

However, if you should unintentionally fail to disclose any existing hazards in your representations to us at the inception date of the policy or during the policy period in connection with any additional hazards, we shall not deny coverage under this policy based upon such failure.

2. Paragraph **G. Liberalization** is replaced by the following:

**G.** **LIBERALIZATION**

If we revise this Coverage Form to provide more coverage without additional premium charge, subject to our filed company rules, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

3. **Primary and Non-Contributory Provision**

The following is added to Paragraph **2.** of Condition **H. Other Insurance:**

   **c.** This insurance is primary to and we will not seek contribution from any other insurance available to an additional insured under your policy provided that:

   **(1)** The additional insured is a Named Insured under such other insurance; and

   **(2)** You have agreed in a written contract or written agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

**4.** The following is added to Paragraph **2.** of Condition **K. Transfer Of Rights Of Recovery Against Others To Us:**

We will waive any right of recovery we may have against a person or organization because of payments we make for "bodily injury" or "property damage" arising out of your ongoing operations or "your work" done under a written contract or written agreement and included in the "products-completed operations hazard", if:

**1.** You have agreed to waive any right of recovery against that person or organization in a written contract or written agreement;

**2.** Such person or organization is an additional insured on your policy; or

**3.** You have assumed the liability of that person or organization in that same contract, and it is an "insured contract."

This amendment only applies to that person or organization identified above, and only if the "bodily injury" or "property damage" occurs subsequent to the execution of the written contract or written agreement.

Copyright, 2019 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 47 09 19**
**Page 6 of 6**

INSURED'S COPY

# ORDINANCE OR LAW COVERAGE ENDORSEMENT

BUSINESSOWNERS
**BP 72 67 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

1. If there is direct physical loss or damage to Covered Property at the described premises caused by or resulting from a Covered Cause of Loss we will pay the following to the extent it results from enforcement of an ordinance or law:

   a. **Coverage 1 - Loss to the Undamaged Portion of the Building.** The loss in value of the undamaged portion of the building that requires demolition of undamaged parts of the same building.

   b. **Coverage 2 - Demolition Cost.** The cost to demolish and clear the site of undamaged parts of the same building.

   c. **Coverage 3 - Increased Cost of Construction.** The increased cost to:

      (1) Repair or reconstruct damaged portions of the same building; and/or

      (2) Reconstruct or remodel undamaged portions of the same building, whether or not demolition is required.

      However:

      (1) This coverage applies only if the restored or remodeled building is intended for similar occupancy as the current building, unless such occupancy is not permitted by zoning or land use ordinance or law.

      (2) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   d. **Coverage 4 - Tenant's Improvements and Betterments.** The increased cost to repair, rebuild or reconstruct tenant's improvements and betterments.

   e. **Coverage 5 - Increased Period of Restoration.** If a Covered Cause of Loss causes or results in loss or damage to building, coverage is extended to include the amount of loss you sustain during the increased period of suspension of "operations" caused by or resulting from the enforcement of any ordinance or law.

2. The ordinance or law must:

   a. Regulate the demolition, construction or repair of buildings or establish zoning or land use requirements at the described premises; and

   b. Be in force at the time of loss.

3. We will not pay under this Coverage Extension for:

   a. Loss due to any ordinance or law with which:

      (1) You were required to comply before the loss, even in the absence of damage to the building; and

      (2) You failed to comply.

   b. The enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

   c. The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

4. The most we will pay under this Additional Coverage for:

   a. **Coverage 1.**

      (1) If the property is repaired or replaced on the same or another premises is the lesser of:

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BP 72 67 09 18
Page 1 of 2

INSURED'S COPY

**(a)** The amount you actually spend to repair, rebuild or reconstruct the undamaged portion of the building but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(b)** The amount it would cost to restore the undamaged portion to the same height, floor area, style and comparable quality of the original undamaged portion of the building; or

**(c)** The limit of insurance applicable to the Building shown in the Declarations.

**(2)** If the property is not repaired or replaced or if Replacement Cost or Guaranteed Replacement Cost does not apply is the lesser of:

**(a)** The actual cash value of the undamaged portion of the building at the time of loss; or

**(b)** The limit of insurance applicable to the Building shown in the Declarations.

**(3)** Coverage **1.** is included within and is not in addition to the Building Limits of Insurance shown in the Declarations.

**b.** **Coverage 2 and 3.**

**(1)** The total of all covered losses for Coverage **2** and Coverage **3**:

**(a)** For Buildings insured on a Replacement Cost or Guaranteed Replacement Cost basis is the percentage of the Building limit shown in the Schedule or the limit of insurance shown in the Schedule, whichever is greater, unless a higher percentage/limit is shown in the Declarations; or

**(b)** For Buildings insured on a Functional Replacement Cost basis, and including any loss to the building and any loss under Coverage **1** above, is included within the limit of insurance shown in the Declarations as applicable to the covered Building Property. But, Coverage **2** and Coverage **3** do not increase the limit of insurance when coverage is provided on a Functional Replacement Cost basis.

**(2)** Subject to **(1)** above, the following loss payment provisions apply:

**(a)** For Coverage **2.**, we will not pay more than the amount you actually spend to demolish and remove debris of the undamaged parts of the property.

**(b)** For Coverage **3**:

**(i)** We will not pay for the increased cost of construction:

**aa.** Until the property is actually repaired or replaced at the same or another premises; and

**bb.** Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(ii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(iii)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**c.** **Coverage 4.** Is the limit shown in the Schedule.

**d.** **Coverage 5.** Is the limit shown in the Schedule.

The terms of this Additional Coverage apply separately to each Building Limit of Insurance shown in the Declarations.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

# FORGERY OR ALTERATIONS ENDORSEMENT

BUSINESSOWNERS
**BP 72 68 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

This coverage is subject to the provisions applicable to:

1. **SECTION I — PROPERTY** of the Businessowners Coverage Form; and

2. The applicable property enhancement endorsement attached to this policy,

except as provided below:

The following provisions apply only to the coverage provided by this endorsement.

1. Coverage is provided for Forgery Or Alterations and applies to loss that you sustain resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   **a.** Made or drawn by or drawn upon you; or

   **b.** Made or drawn by one acting as your agent;

   or that are purported to have been so made or drawn.

   For the purposes of this endorsement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

   The loss you sustain must result directly from an "occurrence" taking place during the Policy Period shown in the Declarations which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in Paragraph **8.** below, Extended Period To Discover Loss provision.

2. If you are sued for refusing to pay any instrument covered in Paragraph **1.** above on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense.

3. The most we will pay for any "occurrence", including legal expenses, under this endorsement is the limit shown in the Schedule.

4. We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

5. You must include with your proof of loss any instrument involved in that loss, or if that is not possible, an affidavit setting forth the amount and cause of loss.

6. This endorsement is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this endorsement must be presented by you.

7. This endorsement does not cover:

   **a.** Acts by you, your partners or "members" or of "employees", "managers", directors, trustees or authorized representatives:

   **(1)** Whether acting alone or in collusion with other persons; or

   **(2)** While performing services for you or otherwise.

   **b.** Loss that is an indirect result of an "occurrence" covered by this endorsement including but not limited to loss resulting from:

   **(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities", or "other property";

   **(2)** Payment of damages of any type for which you are legally liable. But, we pay compensatory damages arising directly from a loss covered under this endorsement;

   **(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this endorsement.

   **c.** Fees, costs and expenses incurred by you which are related to any legal action except when covered under Paragraph **(2)** above.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BP 72 68 09 18
Page 1 of 2

INSURED'S COPY

**d.** Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property" or loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from an account that you have set up with an institution that allows the initiation of transfers, payments or delivery of "funds" by means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions, communicated directly through an electronic funds transfer system.

**8.** Extended Period to Discover Loss. We will pay for loss that you sustained prior to the effective date of cancellation or lapse of this endorsement, which is "discovered" by you no later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this endorsement, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**9.** For purposes of this endorsement, an "occurrence" is:

**a.** An individual act;

**b.** The combined total of all separate acts whether or not related; or

**c.** A series of acts whether or not related

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 72 68 09 18**
**Page 2 of 2**

INSURED'S COPY

# BUSINESS LIABILITY COVERAGE — AGGREGATE LIMITS OF INSURANCE

BUSINESSOWNERS
**BP 72 75 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION II — LIABILITY** is amended as follows:

Subparagraph **4.** of Paragraph **D. Liability And Medical Expenses Limits Of Insurance** is replaced by the following:

**4. Aggregate Limits**

  **a.** The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all:

    **(1)** "Bodily injury" and "property damage" except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

    **(2)** Medical expenses; and

    **(3)** "Personal and advertising injury" caused by offenses committed.

  **b.** The Product Aggregate Limit shown in the Declarations is the most we will pay for damage because of all "bodily injury" and "property damage" that is included in the "products-completed operations hazard".

Subject to Paragraph **a.** or **b.** above, whichever applies, the Damage To Premises Rented To You limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**INSURED'S COPY**

# EMPLOYMENT PRACTICES LIABILITY
# LIMITED DEFENSE EXPENSE REIMBURSEMENT

BUSINESSOWNERS
**BP 79 11 07 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SCHEDULE

Limit of Insurance:  $5,000.  Per claim "Defense Expenses"/
$5,000.  Annual Aggregate

## SECTION I — COVERAGE

**1. Insuring Agreement**

We will reimburse you for the "defense expenses" you incur as a result of a "civil suit" in which either "damages" are alleged or fact finding will take place, when either is the actual or alleged result of any "employment practice". This coverage only applies when the "civil suit" is brought against you during the policy period.  We have no right or duty to defend you for any such "civil suit".

We **DO NOT** have a duty to investigate, defend or settle any "civil suit" and we **DO NOT** have a duty to pay any damages, award, settlement, civil, criminal or administrative fine or penalty.   Our entire obligation under this endorsement is limited to the reimbursement of "defense expenses" you actually paid.

**2. Exclusions**

We have no obligation to reimburse "defense expenses" if a claim arises directly or indirectly from any:

**a.** A "civil suit" for any incident that happened prior to the effective date of this policy.

**b. (1)** "Employment practices" which were the subject of any demand, suit or other proceeding which was initiated against any insured; or

**(2)** Facts and circumstances which would cause a reasonable person to believe a "claim" would be made and which were known to any insured,

prior to the effective date of the earlier of (i) the first endorsement of this type that we issued to you of which the policy this endorsement is attached to was an uninterrupted renewal of this type of coverage, or (ii) this endorsement.

**c.** Breach of an express contract of employment or any express obligation to make payments in the event of termination of employment.

**d.** Of the following laws:

**(1)** Any workers compensation, disability benefits or unemployment compensation law, or any similar law; provided however, this exclusion shall not apply to any covered claim based upon, arising from or in consequence of any actual or alleged retaliatory treatment of the claimant by the insured on account of the claimant's exercise of rights pursuant to such law;

**(2)** Employees' Retirement Income Security Act of 1974, Public Law 93-406 (ERISA) as now or hereafter amended, or any similar state or other governmental law, including but not limited to fiduciary liability, and liability arising out of the administration of any employee benefit plan, and any other liability under such laws;

**(3)** The Fair Labor Standards Act, the National Labor Relations Act of 1938, the Worker Adjustment and Retraining Notification Act (Public Law 100-37991988), the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Occupational Safety and Health Act.  This exclusion also applies to any rules or regulations promulgated under any of the foregoing and amendments thereto or any similar provisions of any federal, state or local law.

**e.** Oral or written publication of material, if such material was published by or at the direction of the insured with knowledge of the material's falsity;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**BP 79 11 07 04
Page 1 of 3**

**f.** Dishonest, criminal or fraudulent acts of the insured or the willful failure by the insured or with the insured's consent to comply with any law or any governmental or administrative order or regulations relating to employment practices. Willful means acting with intentional or reckless disregard for such employment related laws, orders or regulations.

**g.** "Bodily Injury".

**h.** "Employment practices" which occur when or after:

   **(1)** You file for or are placed in any bankruptcy, receivership, liquidation or reorganization proceeding or;

   **(2)** Any other business entity acquires an ownership interest in you which is greater than fifty percent.

**i.** Lockout, strike, picket line, related worker replacement(s) or similar actions resulting from labor disputes or labor negotiations.

**j.** Any incident that is covered under another provision which forms a part of this policy or any other policy in which it is more specifically described.

## SECTION II — LIMITS OF INSURANCE

**1.** The limits of insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

   **a.** Named Insureds;

   **b.** "Civil Suits" brought; or

   **c.** Persons or organizations bringing "civil suits".

**2.** The "Defense Expenses" Limit is the most we will reimburse for any one "civil suit" and for all "civil suits" to which this coverage applies.

**3.** If this insurance is in effect for a period of more than one year, the limits apply separately to each consecutive annual period and to any remaining period of less than 12 months starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION III — CONDITIONS

**1. Duties in the Event of Claim**

   You must see to it that we are notified in writing as soon as practicable that a "civil suit" to which this insurance applies has been brought against you. Notice should include:

   **a.** How, when and where the incident that resulted in a "civil suit" took place; and

   **b.** Copies of notices or other legal papers received in connection with the "civil suit".

   **c.** Provide us with appropriate bills for all "defense expenses".

   **d.** Cooperate with us in determining the amount of and evaluating the propriety of "defense expenses" you actually paid.

## SECTION IV — DEFINITIONS

**1.** "Civil Suit(s)" means any civil proceeding in which either "damages" are alleged or fact finding will take place, when either is the actual or alleged result of any "employment practice". This includes:

   **a.** An arbitration proceeding in which such "damages" are claimed;

   **b.** Any other alternative dispute resolution proceeding in which such "damages" are claimed; or

   **c.** Any administrative proceeding established under applicable federal, state or local laws as may be applicable to "employment practices".

**2.** "Claimant" means the person making a covered claim or the person on whose behalf the EEOC or any other federal, state or local agency is making a covered claim.

**3.** "Defense Expense(s)" means necessary and reasonable legal fees, costs and expenses incurred by you as a result of an investigation, defense and appeal of a "civil suit". "Defense expense" shall not include your remuneration or overhead expenses.

**4.** "Employment Practice(s)" means any of the following actual or alleged practices which are directed against any of your "employees", "leased workers'", "temporary workers", former "employees" or any applicant for employment by you, and (ii) for which remedy is sought under any federal, state or local statutory or common civil employment law:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**BP 79 11 07 04**
**Page 2 of 3**

INSURED'S COPY

**a.** Wrongful refusal to employ a qualified applicant for employment;

**b.** Wrongful failure to promote, or wrongful deprivation of career opportunity;

**c.** Wrongful demotion, negligent evaluation, negligent reassignment or wrongful discipline;

**d.** Wrongful termination of employment, including retaliatory or constructive discharge;

**e.** Employment-related misrepresentation;

**f.** Harassment, coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender age, physical appearance, physical and/or mental impairments, pregnancy, sexual orientation or sexual preference, or any other protected class or characteristic established by any federal, state or local statute or ordinance.

**g.** Oral or written publication of material that slanders, defames or libels an "employee" or violates or invades an "employee's" right to privacy.

**SECTION V — MAXIMUM LIMIT OF REIMBURSEMENT**

The maximum limit of reimbursements is $5,000. This maximum limit of reimbursement is the most we will pay for "defense expense" as a result of "employment practices" that occur during the policy period, regardless of the number of "claimants" or number of "suits". All "employment practices" will be deemed to occur when the first of those practices allegedly occurred.

Covered claims made by more than one "claimant" that arise out of the same or series of related "employment practices" will be treated as a single "claim".

Includes copyrighted material of ISO Properties, Inc., with its permission.

INSURED'S COPY

# TWO OR MORE POLICIES ISSUED BY US
# ANTI STACKING ENDORSEMENT

BUSINESSOWNERS
**BP 80 30 09 18**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SECTION II — LIABILITY** is amended as follows:

The following condition is added to Paragraph **E. Liability and Medical Expenses General Conditions:**

**Two or More Policies Issued By Us**

Regardless of the Limits of Insurance shown in the Declarations of this policy, if any named insured shown in the Declarations covered by this policy is also covered under any other policy issued by us or any company affiliated with us, then:

1. The most we will pay for all such "bodily injury" or "property damage" and medical expenses arising out of any one "occurrence" will be the highest applicable Limit of Insurance under any one policy; and

2. The most we will pay for all such "personal and advertising injury" arising out of any one offense will be the highest applicable Limit of Insurance under any one policy; and

3. If this policy does not represent the highest applicable Limit of Insurance for "bodily injury", "property damage" or "personal and advertising injury", then the insurance provided by this policy does not apply.

All other terms of the policy remain the same.

Copyright, 2017 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**BP 80 30 09 18**
**Page 1 of 1**

INSURED'S COPY

| Previous Policy Number | Policy Number |
|---|---|
| S    2273553 | S    2273553 |

## SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST
### 900 E. 96TH STREET, INDIANAPOLIS, IN 46240
## DECLARATIONS - COMMERCIAL UMBRELLA LIABILITY COVERAGE

| Item One - Name of Insured & Mailing Address | Policy Period |
|---|---|
| SEE COMMERCIAL POLICY COMMON DECLARATION:   IL-7025 | From:   MARCH 15, 2020<br>To:      MARCH 15, 2021<br>12:01 A.M., Standard Time At The<br>Insured's Mailing Address. |

| Producer:<br>    SEE COMMERCIAL POLICY COMMON DECLARATION:   IL-7025 | Producer Number:<br>    00-37154-00000 |
|---|---|

**Named Insured is:** CORPORATION

**Business of the Named Insured:** LADIES CLOTHING

### Limits Of Insurance

   Occurrence Limit    $1,000,000.00          Aggregate Limit    $1,000,000.00

**Self Retained Limit:**          $.00

### Schedule of Underlying Insurance and Limits

**Standard Employers Liability or Stop-Gap Employers Liability Policy**          Policy No. WC9049118

**Company**  SELECTIVE INS CO OF THE S

| Policy Period<br>From:   MARCH 15, 2020<br>To:      MARCH 15, 2021 | Employers Liability Each Accident<br>Disease Each Employee<br>Disease Each Policy | $100,000<br>$100,000<br>$500,000 |
|---|---|---|

**Commercial General Liability Policy**          Policy No.

**Company**

| Policy Period<br>From:<br>To: | General Aggregate<br>Products-Completed Operations<br>Personal and Advertising Injury Limit<br>Each Occurrence Limit | |
|---|---|---|

**Automobile Liability Policy**          Policy No.

**Company**

| Policy Period<br>From:<br>To: | Bodily Injury and Property<br>Damage Combined Each Accident | |
|---|---|---|

### Premium Schedule:

| Estimated Exposure Base | Rate | Rate Per | Annual Minimum Premium | Estimated Premium Due |
|---|---|---|---|---|

In the event of cancellation by the Named Insured we will receive and retain not less than as the Policy Minimum Premium.          $200.00

### Forms and Endorsements:

    SEE FORMS AND ENDORSEMENT SCHEDULE:   IL-7035

| Estimated Total Premium |
|---|
| **$408.00** |

| FEBRUARY 28, 2020 | MID ATLANTIC REGION | |
|---|---|---|
| Issue Date | Issuing Office | Authorized Representative |

CX-0003 (01/99)                                    **INSURED'S COPY**

# DECLARATIONS – COMMERCIAL UMBRELLA LIABILITY COVERAGE
## SCHEDULE OF UNDERLYING INSURANCE AND LIMITS EXTENSION

| Coverage Effective Date | Policy Number |
|---|---|
| MARCH 15, 2020 | S 227355303 |

```
BOP                                    INCLUDES HIRED & NON-OWNED AUTO LIABILITY

                                       Policy No.       S  227355303
Company Selective Ins Co of the S      EACH OCCURENCE LIMIT:            $1,000,000
                                       GENERAL AGGREGATE LIMIT:         $3,000,000
                                       PRODUCT AGGREGATE LIMIT:         $3,000,000
Policy Period
  From:  MARCH 15, 2020
  To:    MARCH 15, 2021
```

**Policy No.**

**Company**

**Policy Period**
  **From:**
  **To:**

**Policy No.**

**Company**

**Policy Period**
  **From:**
  **To:**

**Policy No.**

**Company**

**Policy Period**
  **From:**
  **To:**

**Policy No.**

**Company**

**Policy Period**
  **From:**
  **To:**

**Policy No.**

**Company**

**Policy Period**
  **From:**
  **To:**

CX-0004 (01/99)

INSURED'S COPY

# COMMERCIAL UMBRELLA LIABILITY COVERAGE

COMMERCIAL UMBRELLA LIABILITY
**CXL 4 04 03**

Various provisions in this Coverage Part restrict coverage.  Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Coverage Part.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II — WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning — refer to **SECTION V — DEFINITIONS.**

In return for the payment of the premium, and subject to all terms and conditions of this Coverage Part, we agree with you to provide the insurance as stated in this Coverage Part.

## SECTION I — COVERAGES

### A. Insuring Agreement

1. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.  At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.  But:

   a. The amount we will pay for the "ultimate net loss" is limited as described in **Section III — Limits of Insurance;** and

   b. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgements or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section I — Coverages, C. Supplementary Payments.**

2. This insurance applies to "bodily injury", or "property damage" only if:

   a. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   b. The "bodily injury" or "property damage" occurs during the policy period; and

   c. Prior to the policy period, no insured listed under Paragraph **A.** of **Section II — Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**CXL 4 04 03**
**Page 1 of 17**

INSURED'S COPY

3. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **A.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

4. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **A.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **a.** Reports all, or any part of the "bodily injury" or "property damage" to us or any other insurer;

   **b.** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **c.** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

5. Damages because of that "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

6. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**B. Exclusions**

This insurance does not apply to:

**1. Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including "loading or unloading" or entrustment to others of watercraft over 50 feet in length or any aircraft.

   **a.** Owned by any insured;

   **b.** Chartered without crew by or on behalf of any insured; or

   **c.** Owned and operated by any employee of an insured.

   This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent; or

   **(2)** Liability assumed under any contract or agreement.

**2. Contractual Liability**

Any obligation or liability assumed by the insured under any contract or agreement.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

**3. Damage to Impaired Property or Property not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically destroyed or injured, arising out of;

   **a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   **b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**4. Damage to Property**

"Property damage" to:

   **a.** Property

   **(1)** You own including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

   **(2)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

INSURED'S COPY

**b.** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**c.** That particular part of real property on which you or any other contractors or subcontractors, working directly or indirectly on your behalf, are performing operations, if the "property damage" arises out of those operations; or

**d.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **c.** and **d.** of this exclusion do not apply to the extent that coverage is provided for the insured by "underlying insurance".

**5.  Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**6.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**7.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**8.  Employer's Liability**

"Bodily injury" to:

**a.** An employee of the insured arising out of and in the course of employment by the insured; or

**b.** The spouse, child, parent, brother or sister of that employee as a consequence of **a.** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

**9.  Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**a.** A person arising out of any:

**(1)** Refusal to employ that person;

**(2)** Termination of that person's employment; or

**(3)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1), (2)** or **(3)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**10.  E.R.I.S.A.**

Any obligation of the insured under the Employers' Retirement Income Security Act and any amendments thereto or any similar federal, state or local statute.

INSURED'S COPY

**11. Auto Coverages**

Any loss, cost or expense payable under or resulting from any first party "bodily injury" or "property damage" coverage, automobile no-fault law, uninsured motorists or underinsured motorists law or any similar law.

**12. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, unemployment compensation or disability benefits law, or under any similar law.

**13. Liquor Liability**

"Bodily injury", "property damage" or "personal and advertising injury" for which the insured may be held liable by reason of:

**a.** Causing or contributing to the intoxication of any person;

**b.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**14. Personal and Advertising Injury**

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising Injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. All "personal and advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

**d. Willful Violation Of Penal Statute Or Ordinance**

"Personal and advertising injury" arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured.

**e. Breach Of Contract**

"Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**f. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**g. Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in you "advertisement".

**h. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement" of copyright, trade dress or slogan.

**CXL 4 04 03**
**Page 4 of 17**

INSURED'S COPY

**i.   Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **13.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

**j.   Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns or over which the insured exercises control.

**k.   Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**15. Pollution**

Any damages arising out of the "pollution hazard". But, this exclusion does not apply with respect to "pollution hazard" coverage provided in any "Underlying Insurance", except:

**a.** Any "underlying insurance" "pollution hazard" coverage provided with "sub-limits"; or

**b.** Any coverage provided in "underlying insurance" claims-made coverage for the "Pollution Hazard".

This exclusion applies whether or not the "Pollutant" has any function in your business, operations, premises, site or location.

**16. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

**a.** Legal, accounting or advertising services;

**b.** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**c.** Supervisory, inspection or engineering services;

**d.** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**e.** Any health or therapeutic treatment, advice or instruction;

**f.** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**g.** Optometry or optical or hearing aid services including the prescribing, preparation, fitting demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**h.** Body piercing services;

**i.** Professional health care services as a pharmacist;

**j.** Law enforcement or firefighting services; and

**k.** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

INSURED'S COPY

**17. Racing or Stunting Activities**

"Bodily injury" or "property damage" arising out of the ownership or any insured's use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition or stunting activity or contest.

**18. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**19. War**

"Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C. Supplementary Payments**

**1.** When the duty to defend exists under this coverage part, we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur;

**b.** The cost of:

**(1)** Bail bonds up to $3,000; or

**(2)** The cost of appeal bonds to release attachments, but only for bond amounts with the applicable limit of insurance.

We do not have to furnish these bonds;

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claims or "Suit", including actual loss of earnings up to $250 a day because of time off from work;

**d.** All costs taxed against the insured in the "Suit";

**e.** Prejudgement interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgement interest based on the period of time after the offer;

**f.** All interest on the full amount of any judgement that accrues after entry of the judgement and before we have:

**(1)** Paid, or offered to pay; or

**(2)** Deposited in court;

The part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the Limits of Insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement to which "underlying insurance" applies;

**b.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same contract or agreement to which "underlying insurance" applies;

**c.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**CXL 4 04 03**
**Page 6 of 17**

INSURED'S COPY

**d.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree we can assign the same counsel to defend the insured and the indemnitee; and

**e.** The indemnitee:

   **(1)** Agrees in writing to:

     **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

     **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

     **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

     **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provide us with written authorization to:

     **(a)** Obtain records and other information related to the "suit", and

     **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorney's fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.  Such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgements, or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph **e.** above, are no longer met.

**3.** If we are prevented by law or otherwise from carrying out the provisions of Section **C.** Supplementary Payments, we will pay any expense incurred with our written consent.

**SECTION II — WHO IS AN INSURED**

**A.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

**1.** If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**CXL 4 04 03**
**Page 7 of 17**

INSURED'S COPY

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in **(1)(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned, occupied, or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

You, any of your "employees", "volunteer workers", or any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With Respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any other person or organization insured under any policy of "underlying insurance". The coverage afforded such insureds under this policy will be not broader than the "underlying insurance" except for this policy's Limits of Insurance.

**5.** Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance", subject to **Section III — Limits of Insurance.**

Additional insured coverage provided by this insurance will not be broader than coverage provided by "underlying insurance".

**6.** Any person using an aircraft you charter with pilot or air crew, and any person legally responsible for the use of the aircraft provided its actual use is with your permission; except no coverage is afforded:

**a.** The owner, pilot or air crew of the aircraft or any other person operating it; or

**CXL 4 04 03**
**Page 8 of 17**

INSURED'S COPY

**b.** Any manufacturer of aircraft, aircraft engines or aviation accessories, or any aviation sales, service or repair organization or airport or hangar operator or any of their "Employees".

**7.** Any organization you newly acquire or form other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier; and

**b.** Coverage is applicable only in excess of the limits of "underlying insurance", and you must add the organization to your "underlying insurance" as soon as practicable, advising us of the addition.  We may then adjust the premium charges.

**c.** Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**d.** Coverage does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**B.** Only with respect to liability arising out of the ownership, maintenance, or use of "covered autos":

**1.** You are an insured.

**2.** Anyone else while using with your permission a "covered auto" you own, hire or borrow is also an insured except:

**a.** The owner or anyone else from whom you hire or borrow a "covered auto".  This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

**b.** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**c.** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**d.** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered auto.

**e.** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

**3.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

No person is an insured as respects "Bodily Injury" to a fellow "employee" unless such insurance is provided the insured by "underlying insurance".

## SECTION III — LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the provisions below fix the most we will pay regardless of the number of:

**1.** Insureds;

**2.** Claims made or "suits" brought or number of vehicles involved; or

**3.** Persons or organizations making claims or bringing "suits".

**B.** Subject to **D.** below, The Occurrence Limit is the most we will pay for the "ultimate net loss" because of "bodily injury" and "property damage" arising out of any one "occurrence".

**C.** Subject to **D.** below, the Occurrence Limit is the most we will pay for the "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

**CXL 4 04 03**
**Page 9 of 17**

**D.** The Aggregate Limit is the most we will pay for all "ultimate net loss" because of "bodily injury", "property damage" and "personal and advertising injury" regardless of the number of covered "occurrences" during each annual period of this policy, except:

    **1.** The aggregate limit shall apply separately to and in excess of each aggregate limit of the "underlying policy".

    **2.** The aggregate limit does not apply to "auto" liability arising out of the ownership, maintenance, use or entrustment of any "covered auto". Use includes operation, "loading or unloading".

**E.** The Aggregate limit as described in **D.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months. The policy period begins with the effective date shown on the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be part of the last preceding period.

**F.** If the applicable limit of insurance of the "underlying policy" is less than stated in the Declarations because the aggregate limit of insurance of the "underlying policy" has been reduced or exhausted, we will, subject to the Limits of Insurance and all other provisions of this policy:

    **1.** Pay in excess of the reduced underlying limit of insurance; or

    **2.** Continue in force as "underlying insurance" until this policy expires or until our aggregate limit is exhausted;

provided such reduction or exhaustion is solely the result of damages paid because of an "occurrence" during this policy period.

**G.** If the applicable limit of insurance of an "underlying policy" is a "sub-limit", this insurance will not apply, whether or not such "sub-limit" has been reduced by any payments under the "underlying policy".

**H.** If the applicable limit of insurance of the "underlying policy" is more than that stated in the Declarations this insurance becomes excess of such higher limits of insurance.

## SECTION IV — CONDITIONS

**A. Appeals**

If the insured or the insured's "underlying insurer" elects not to appeal a judgment in excess of the underlying or "retained limit", we may elect to make such appeal at our cost and expense. We shall be liable, in addition to the applicable limit of insurance, for any taxable costs, payments and incidental interest. In no event shall our liability for "ultimate net loss" exceed the amount applicable to any one "occurrence" including all expenses of the appeal.

**B. Bankruptcy**

Your bankruptcy, insolvency or receivership, or, that of your estate, will not relieve us of our obligations under this Coverage Part.

In the event of bankruptcy, insolvency or receivership of any "underlying insurer", this policy will not apply as a replacement of the bankrupt or insolvent insurer. Our Limits of Insurance will only apply in excess of the minimum required limits of "Underlying Insurance" stated in this Coverage Part.

**C. Duties In The Event Of Occurrence, Claim Or Suit**

    **1.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **a.** How, when and where the "occurrence" or offense took place;

        **b.** The names and addresses of any injured persons and witnesses; and

        **c.** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **2.** If a claim is made or "suit" is brought against any insured, you must:

        **a.** Immediately record the specifics of the claim or "suit" and the date received; and

        **b.** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**CXL 4 04 03**
**Page 10 of 17**

INSURED'S COPY

**3.** You and any other involved insured must:

    **a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **b.** Authorize us to obtain records and other information;

    **c.** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**4.** No insureds will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

**D. Expanded Coverage Territory**

**1.** If a claim or "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico, or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the claim or "suit". We will reimburse the insured, under Supplementary Payments, for any approved expenses incurred for the defense of such "suit" or claim seeking damages to which this insurance applies, that we would have been paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such claims on the insured's behalf, we will reimburse the insured for such sums.

**2.** All payments or reimbursements we make for damages because of judgements or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**3.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

**4.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgements or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

**E. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**1.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**2.** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

INSURED'S COPY

**F. Loss Payable**

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgement after an actual trial or written agreement between the insured, claimant and us.

**G. Maintenance Of Underlying Insurance**

Each policy of "underlying insurance" must remain in force for the full term of this policy except:

**1.** For changes agreed to by us in writing;

**2.** For any reduction of the aggregate limits of such "underlying insurance" because of payment of claims, settlements or judgements arising out of occurrences during the policy period.

If you do not maintain "Underlying Insurance", we will pay only those damages or injuries that would have been paid had "Underlying Insurance" been maintained.

**H. Other Insurance**

**1.** This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has the duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**2.** When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**a.** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**b.** The total of all deductible and self-insured amounts under all that other insurance.

**I. Premium Audit**

**1.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**2.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**J. Premiums**

The First Named Insured shown in the Declarations will be:

**1.** Responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

The premium is fully earned if the Limits of Insurance are used up prior to the end of the policy period.

**K. Representations or Fraud**

By accepting this policy, you agree that:

**1.** The statements in the application and Declarations, and any subsequent notice relating to "underlying insurance", are accurate and complete;

**2.** Those statements are based upon representations you made to us; and

**3.** We have issued this policy in reliance upon your representations.

**4.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**CXL 4 04 03**
**Page 12 of 17**

INSURED'S COPY

**L.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies as if each Named Insured were the only Named Insured, and separately to each insured against whom claim is made or "suit" is brought.

**M.  Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request the insured will bring "suit" or transfer those rights to us and help us enforce them. Any recovery will be applied in the following order:

**1.**  To any person or insurer who may have paid for liability in excess of our limit of liability;

**2.**  To us up to the amount we paid under this policy; and, then

**3.**  To any person or insurer to the extent that the person or insurer is entitled to claim the remaining amount, if any.

Reasonable expenses incurred in the exercise of rights of recovery will be shared among all interests on a pro rata basis according to their respective losses.

**N.  Underlying Insurance**

The limits of "underlying insurance" shall apply, no matter what defense the "underlying insurer" may use because of the insured's failure to comply with any condition of the "underlying insurance" following an "occurrence".  You must inform us promptly of any changes in "underlying insurance".  We may make adjustments to our premium charges for this policy from the date of the changes to the "underlying insurance".  We must also be notified within 30 days if any coverage is canceled or aggregate limit exhausted.

**O.  When We Do Not Renew**

If we decide not to renew this Coverage, we will mail or deliver to the first Named Insured shown in the Declarations, written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V — DEFINITIONS**

**1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purpose of this definition:

   **a.**  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.**  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose or attracting customers or supporters is considered an advertisement.

**2.**  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

**3.**  "Bodily injury" means bodily injury, sickness, disease or disability sustained by a person, including death from any of these at any time including mental anguish or mental injury sustained by a person who has suffered a covered "bodily injury" as defined in this paragraph.

**4.**  "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

**5.**  "Covered auto" means only those "autos" to which "underlying insurance" applies.

**6.**  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

INSURED'S COPY

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work"; or your fulfilling the terms of the contract or agreement.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an "auto", aircraft or watercraft;

    b. While it is in or on an "auto", aircraft or watercraft;

    c. While it is being moved from an "auto" aircraft or watercraft to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the "auto", aircraft or watercraft.

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in **a.**, **b.**, **c.**, or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in **a.**, **b.**, **c.**, or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

       However, self-propelled vehicles with the following types of permanently attached equipment are not "Mobile Equipment" but will be considered "autos":

       (1) Equipment designed primarily for:

          (a) Snow removal;

          (b) Road maintenance, but not construction or resurfacing; or

          (c) Street cleaning;

       (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**CXL 4 04 03**
**Page 14 of 17**

INSURED'S COPY

**12.** "Occurrence" means:

    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions that result in "bodily injury" or "property damage". All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "Occurrence".

    **b.** An offense that results in "personal and advertising injury". This does not include an offense committed with actual malice. All damages that arise from the same general conditions shall be deemed to arise from one "Occurrence". All damages involving the same injurious act, regardless of the frequency, repetition or the number or kind of media used, or the number of claimants shall be deemed to arise from one "occurrence".

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication in any manner of material that violates a person's right of privacy; or

    **e.** Oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service.

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

    **h.** Discrimination because of race, religion, age, sex or physical disability.

    This does not apply:

        **(1)** To offenses committed by or at the direction of the insured; or

        **2)** If insurance for such offenses is prohibited by law;

    committed during the policy period.

**14.** "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**15.** "Pollution hazard" means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any "pollutants" arising out of the discharge, dispersal, seepage, migration, release or escape of such "pollutants".

    "Pollution hazard" includes losses, costs or expenses arising out of any obligation, order, direction or request of or upon any insured or others, including but not limited to any governmental obligation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, in any way respond to, or assess the effects of "pollutants".

**16.** "Products-completed operations hazard"

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned.

    **b.** "Your work" will be deemed completed at the earliest of the following times:

        **(1)** When all the work called for in your contract has been completed;

        **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

        **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise completed, will be treated as completed.

INSURED'S COPY

**c.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of it;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials;

   **(3)** Products or operations for which "underlying insurance" classifications or manual rules include products or completed operations coverage.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, (including systems and applications software), hard or floppy disks,  CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Retained limit" means the greater of:

  **a.** The total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any other insurance not shown in the declarations that is valid and collectible; or

  **b.** The limit shown in the Declarations as the "self-retained limit".

   However, "retained limit" does not mean any "sub-limit".

**19.** "Self-retained limit" means the dollar amount shown in the Declarations to be paid by an insured if no "underlying insurance" or any other insurance applies to an "occurrence" covered under this policy.  The "self-retained limit" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits. These provisions do not apply to any "sub-limit" which has been reduced or exhausted.

**20.** "Sub-limit" means a limit of insurance of the "underlying policy" which:

  **a.** As originally granted at the effective date of the "underlying policy", or

  **b.** At its original addition by endorsement to that "underlying policy" is an amount less than that stated in the Declarations of this policy.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Ultimate net loss" means the total of the following sums for each "occurrence" to which this policy applies:

  **a.** All sums for which the insured becomes legally obligated to pay as damages, either by reason of adjudication or settlement or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.. This includes deduction for recoveries and salvages paid or to be paid.

INSURED'S COPY

**b.** All expenses, other than defense settlement expenses provided in **Section I — Coverages, C. Supplementary Payments** incurred by or on behalf of the insured in the investigation, negotiation, settlement and defense of any "suit" seeking damages under this policy. However, the salaries of the insured's regular employees are excluded.

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the section titled Schedule of Underlying Insurance and Limits.

**25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the schedule of "underlying insurance".

**26.** "Underlying policy" means a policy providing "Underlying insurance" or any other applicable insurance.

**27.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**28.** "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

**29.** "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

     **(1)** Warranties or representation made at any time with respect to the fitness, quality, durability, performance, or use of your work; and

     **(2)** The providing of or failure to provide warnings or instructions.

INSURED'S COPY

# ASBESTOS EXCLUSION

COMMERCIAL UMBRELLA LIABILITY
**CXL  17 10 99**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**1.** It is agreed that this insurance does not apply to any loss or damage relating to the actual, alleged, or threatened presence of, or exposure to, "asbestos," including inhalation, ingestion, irritation, absorption or other similar physical exposure to "asbestos." Such presence of, or exposure to, "asbestos" includes, but is not limited to:

   **a.** structures or manufacturing processes containing "asbestos";

   **b.** the disposal of "asbestos" or goods, products or materials containing "asbestos";

   **c.** the storing or presence of "asbestos" or goods, products or materials containing "asbestos"; or

   **d.** the removal of "asbestos" from any goods, products, materials, structures or manufacturing processes,

   whether or not such "asbestos" is airborne.

**2.** We shall have no obligation under this coverage part:

   **a.** to investigate, settle or defend any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the presence of, or exposure to, "asbestos"; or

   **b.** to pay any damages, judgments, settlements, losses, costs or expenses of any kind or nature that may be awarded or incurred by reason of any such claim or suit or any such actual or threatened injury or damage from "asbestos"; or

   **c.** for any losses, costs or expenses arising out of any obligation, order, direction or request of or upon any insured or others, including, but not limited to, any governmental obligation, order, direction or request, to test for, monitor, clean up, remove, contain, treat, neutralize, in any way respond to, or assess the effects of "asbestos."

**3.** "Asbestos" includes asbestos, asbestos fibers, asbestos materials, and asbestos products, or any goods or products containing asbestos or asbestos fibers, materials, or products.

**CXL  17 10 99**

# PROPERTY OF OTHERS EXCLUSION

COMMERCIAL UMBRELLA LIABILITY
**CXL 63 01 99**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to "Property Damage" to:

**1.**   Property rented or occupied by the insured;

**2.**   Property loaned to the insured;

**3.**   Property in the care, custody or control of the insured.

**CXL 63 01 99**

INSURED'S COPY

# AUTO LIABILITY LIMITATION

COMMERCIAL UMBRELLA LIABILITY
**CXL 103 10 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

Paragraph **11. Auto Coverages** under **SECTION I, B. Exclusions** is deleted in its entirety and replaced by the following:

This insurance does not apply to:

**11. Auto Coverages**

**a.** Any loss, cost or expense payable under or resulting from any first party "bodily injury" or "property damage" coverage, automobile no-fault law, uninsured motorists or underinsured motorists law or any similar law; or

**b.** Any other "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance, operation, use, "loading or unloading" or entrustment to others of any "auto".

Paragraph **b.** of this exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

Copyright, 2019 Selective Insurance Company of America.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CXL 103 10 19
**Page 1 of 1**

INSURED'S COPY

# PERSONAL AND ADVERTISING INJURY LIABILITY LIMITATION

COMMERCIAL UMBRELLA LIABILITY
**CXL 132 04 03**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claims made or "suits" brought against the insured for liability arising out of "personal and advertising injury".

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

**CXL 132 04 03**

INSURED'S COPY

# PENNSYLVANIA CHANGES — CANCELLATION AND NONRENEWAL

COMMERCIAL UMBRELLA LIABILITY
**CXL 162 04 03**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

A. **COMMON POLICY. CONDITIONS, A. Cancellation,** is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **CANCELLATION OF POLICIES IN EFFECT FOR LESS THAN 60 DAYS**

   We may cancel this policy by mailing or delivering to the first Named Insured written Notice of Cancellation at least 30 days before the effective date of cancellation.

3. **CANCELLATION OF POLICIES IN EFFECT FOR 60 DAYS OR MORE**

   If this policy has been in effect for 60 days or more, or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of Cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to the Company or its agents or indirectly under a premium finance plan or extension of credit. Notice of Cancellation will be mailed at least 15 days prior to the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of Cancellation will be mailed or delivered at least 60 days prior to the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting inforce policies.  Notice of Cancellation will be mailed or delivered at least 60 days prior to the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of Cancellation will be mailed or delivered at least 60 days prior to the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of Cancellation will be mailed or delivered at least 60 days prior to the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the Company.

4. Notice of Cancellation will state the specific reasons for cancellation.

5. If the Company cancels, the unearned premium will be returned to the Named Insured within 10 business days after the effective date of cancellation. If the Named Insured cancels, the unearned premium will be returned within 30 days after the effective date of cancellation.

6. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**CXL 162 04 03**
**Page 1 of 2**

INSURED'S COPY

**B.** **SECTION IV — CONDITIONS, O. When We Do Not Renew,** is replaced with the following:

    **1.** **Nonrenewal**

        If we decide not to renew this policy, we will mail or deliver written notice of Nonrenewal, stating the specific reasons for Nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

    **2.** **Increase of Premium**

        If we increase your renewal premium, we will mail or deliver to the first Named Insured:

        **a.** Written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be registered or first class mail. Proof of mailing will be sufficient proof of notice.

INSURED'S COPY

# PENNSYLVANIA NOTICE

COMMERCIAL UMBRELLA LIABILITY
**CXL 167 01 99**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of a policy of insurance:

1.  Surveys

2.  Consultation or advice; or

3.  Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1.  If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents employees or service contractors;

2.  To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3.  If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**CXL 167 01 99**

INSURED'S COPY

# EMPLOYEE BENEFITS LIABILITY LIMITATION

COMMERCIAL UMBRELLA LIABILITY
**CXL 211 04 03**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to damage sustained by an "employee", prospective "employee", former "employee" or their beneficiaries or legal representatives in the "administration" of the insured's Employee Benefits Program, caused by a negligent act, error or omission of the insured or any other person for which the insured is legally liable.

Except, this exclusion does not apply to the extent that coverage is provided for the insured by the terms and conditions of the Employee Benefits Program Liability provided by the "underlying policy" of insurance set forth in the schedule of "underlying insurance".

**ADDITIONAL DEFINITION:**

**ADMINISTRATION:**

**a.** Giving counsel, other than legal counsel, about the Employee Benefits Program;

**b.** Providing information about the content of the Employee Benefits Program;

**c.** Handling records in connection with the Employee Benefits Program; and

**d.** Enrolling, terminating or cancelling any "employee's" or former "employee's" participation in a plan included in your Employee Benefits Program;

Provided all such acts are authorized by you.

**CXL 211 04 03**

INSURED'S COPY

# EXCLUSION — LEAD HAZARD

COMMERCIAL UMBRELLA LIABILITY
**CXL 318 04 03**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to:

**a.** "Bodily injury" arising out of the ingestion, inhalation, or absorption of lead in any form;

**b.** "Property damage" or "personal and advertising injury," arising from the presence of lead in any form; or

**c.** Any loss, cost or expense arising out of any orders by, or on behalf of, any governmental authority to test for, monitor, cleanup, remove, contain, treat, detoxify, or neutralize in any form.

at or from any premises, sites or locations which are, or were at any time, owned by, rented to, loaned to, or used by any insured, or arising from operations by any insured.

**CXL 318 04 03**

INSURED'S COPY

# FUNGI OR BACTERIA EXCLUSION

COMMERCIAL UMBRELLA LIABILITY
**CXL 383 07 02**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**A.** **Section I Coverages, B. Exclusions** is amended by the addition of the following provision.

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**CXL 383 07 02**

INSURED'S COPY

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

COMMERCIAL UMBRELLA LIABILITY
**CXL 388 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CXL 388 01 15**
**Page 1 of 1**

INSURED'S COPY

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

COMMERCIAL UMBRELLA LIABILITY
**CXL 400 04 03**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**I.**   The insurance does not apply

**A.**   Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

**B.**   Under any Liability Coverage, to "bodily injury" and "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located with the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property there at.

**II.**   As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**CXL 400 04 03**
**Page 1 of 2**

INSURED'S COPY

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radio-active contamination of property.

**CXL 400 04 03**
**Page 2 of 2**

INSURED'S COPY

# RESULTING DAMAGE TO YOUR WORK ENDORSEMENT

COMMERCIAL UMBRELLA LIABILITY
**CXL 423 07 14**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

The Definition of "occurrence" is deleted in its entirety and replaced by the following:

**12.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions and includes:

**i.** "Property damage" to property that is not "your work" but is caused by "your work"; and

**ii.** "Your work" if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the "property damage" to "your work" is included in the "products-completed operations hazard".

All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "occurrence".

**b.** An offense that results in "personal and advertising injury". This does not include an offense committed with actual malice. All damages that arise from the same general conditions shall be deemed to arise from one "occurrence". All damages involving the same injurious act, regardless of the frequency, repetition or the number or kind of media used, or the number of claimants shall be deemed to arise from one "occurrence".

All other terms, conditions, provisions, and exclusions of the policy not changed by this endorsement shall continue to apply as written.

Copyright, 2014 Selective Insurance Company of America.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CXL 423 07 14**
**Page 1 of 1**

INSURED'S COPY

# EXCLUSION — EMPLOYMENT PRACTICES LIABILITY

COMMERCIAL UMBRELLA LIABLITY
**CXL 453 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**A.** Exclusion **B.9. Employment Related Practices** of **SECTION I — COVERAGES** is deleted in its entirety and replaced by the following:

This insurance does not apply to any liability for any claim based upon, arising out of, directly or indirectly resulting from "employment practices wrongful acts", whether or not such coverage is provided for by the "underlying insurance".

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following is added to **SECTION V — DEFINITIONS:**

**1.** "Employment Practices Wrongful Acts" means any of the following employment related acts: if alleged by or on behalf of a claimant:

    **a.** violations of any federal, state, or local civil rights laws;

    **b.** wrongful dismissal, discharge, discipline, or termination of employment whether actual or constructive;

    **c.** breach of a written or oral employment contract or implied employment contract;

    **d.** demotion, denial of tenure, failure or refusal to hire or promote, or wrongful deprivation of a career opportunity;

    **e.** negligent reassignment, hiring, supervision, evaluation, training, or retention;

    **f.** misrepresentations;

    **g.** defamation (including libel and slander), invasion of privacy, false arrest, detention, or imprisonment;

    **h.** sexual or workplace harassment;

    **i.** any violation of employment discrimination laws based upon such person's race, sex, religion, sexual orientation, disability, marital status, pregnancy, age, national origin, veteran status or any other status that is protected pursuant to any foreign, federal, state, or local statutory law or common law;

    **j.** failure to prevent the existence of an abusive or hostile work environment;

    **k.** wrongful infliction of emotional distress, mental anguish, or humiliation;

    **l.** retaliatory treatment of an "employee" alleged to be because such individual:

        **a.** exercised his or her rights under law, including rights under workers compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act, or any other law relating to employee rights;

        **b.** refused to violate any law or opposed any unlawful practice;

        **c.** assisted or testified in or cooperated with any legal proceeding or formal governmental investigation regarding alleged violations of law by you;

        **d.** disclosed or expressed an intent to disclose to a superior or to any governmental agency any alleged violations of law; or

        **e.** filed or expressed intent to file any claim against you under the Federal False Claims Act or any other similar foreign, federal, state, or local "whistle blower" law.

Copyright, 2012 Selective Insurance Company of America. All rights reserved.

**CXL 453 04 13**
**Page 1 of 1**

INSURED'S COPY

# COMMERCIAL UMBRELLA LIABILITY 2015 CHANGES

COMMERCIAL UMBRELLA LIABILITY
**CXL 462 11 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

**A.** Paragraph **1.** of **SECTION I — COVERAGES, B. Exclusions** is replaced by the following:

   **1. Aircraft Or Watercraft**

   This insurance does not apply to:

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including "loading or unloading" or entrustment to others of watercraft over 50 feet in length or any aircraft.

   **a.** Owned by any insured:

   **b.** Chartered without crew by or on behalf of any insured; or

   **c.** Owned and operated by any employee of an insured.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of watercraft over 50 feet in length or any aircraft subject to Paragraphs **a., b.,** or **c.**

   This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent; or

   **(2)** Liability assumed under any contract or agreement.

**B.** Paragraph **13.** of **SECTION I — COVERAGES, B. Exclusions** is replaced by the following:

   **13. Liquor Liability**

   This insurance does not apply to "bodily injury" or "property damage" for which any insured may be held liable by reason of:

   **a.** Causing or contributing to the intoxication of any person;

   **b.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   **c.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

   **i.** The supervision, hiring, employment, training or monitoring of others by that insured; or

   **ii.** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

   if the "occurrence" which caused the "bodily injury" or "property damage" involved that which is described in Paragraph **a., b.** or **c.** above.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

However, if **CXL 50** is attached to the Policy, the provisions of that endorsement apply in lieu of the above.

**C.** Subparagraphs **b.** and **c.** under **14. Personal and Advertising Injury** of **SECTION I — COVERAGES, B. Exclusions** are replaced by the following:

This insurance does not apply to:

**b.   Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.   Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**D.** Paragraph **16. Professional Services** of **SECTION I — COVERAGES, B. Exclusions** is replaced by the following:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes, but is not limited to:

**a.**   Legal, accounting or advertising services;

**b.**   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

**c.**   Engineering services, including related supervisory or inspection services;

**d.**   Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**e.**   Any health or therapeutic service treatment, advice or instruction;

**f.**   Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

**g.**   Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**h.**   Body piercing services;

**i.**   Services in the practice of pharmacy;

**j.**   Law enforcement or firefighting services; and

**k.**   Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

INSURED'S COPY

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the if the "occurrence" which caused the "bodily injury" or "property damage" or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

This exclusion does not apply to the extent that coverage is provided for the insured by "underlying insurance".

E.  The following is added to **SECTION I — COVERAGES, B. Exclusions:**

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

This insurance does not apply to:

**(1)**  Damages because of "bodily injury", "property damage" or "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)**  Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

F.  The following is added to **SECTION I — COVERAGES, B. Exclusions:**

**Recording And Distribution Of Material Or Information In Violation Of Law**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**  The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**  The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)**  Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Copyright, 2015 Selective Insurance Company of America. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**CXL 462 11 15**
**Page 3 of 3**

We will provide the insurance described in this policy in return for the premium

and compliance with all applicable provisions of this policy

Secretary                                        Chairman

**Misc-1597 (10/06)**

INSURED'S COPY

# POLICY
# SCHEDULE

SELECTIVE INSURANCE
BRANCHVILLE, NEW JERSEY 07890          ISSUE DATE:  03/01/2020

| Policy No | Issued To |
|---|---|
| S  2273553 | JUL-BUR ASSOCIATES INC AND JULIE'S BOTTEGA |

| Period | Transaction Type | Agent Number |
|---|---|---|
| 03/15/2020  03/15/2021 | RENEWAL | 00-37154-00000 |

| Billing Type | Transaction Eff. Date | Number of Remaining Installments |
|---|---|---|
| DIRECT BILL | 03/15/2020 | 04 |

BILL ACCOUNT: 198 316 168

PAYMENT WILL BE BILLED AS FOLLOWS:

| | SCHEDULED BILL DATE | SCHEDULED DUE DATE | PREMIUM AMOUNTS |
|---|---|---|---|
| 01. | 03/09/2020 | 03/29/2020 | 1,477.00 |
| 02. | 06/09/2020 | 06/29/2020 | 1,477.00 |
| 03. | 09/09/2020 | 09/29/2020 | 1,477.00 |
| 04. | 12/09/2020 | 12/29/2020 | 1,477.00 |
| | | TOTAL | $5,908.00 |

THIS IS NOT A BILL.
Your bill will be sent under separate cover. This is a Payment Schedule of your policy
premium due based on your selected installment plan. Changes made to the policy premium
after the issue date listed above, will be reflected on future bills.

An installment fee of $8.00 may be added to each installment bill.  Policies not paid
by the installment due date are subject to a late fee of $20.00 for each late
payment.  An insufficient fund fee of $25.00 will be charged for payments returned by
your financial institution.

A reinstatement fee may be incurred when a policy is reinstated after a
non-pay cancellation is processed. Fee amounts are generally $35 for
commercial line policies and will appear on the next bill.

MISC-1591 (02/16)

**INSURED'S COPY**

## IMPORTANT NOTICE ABOUT YOUR PAYMENT PLAN
## AND LATE PAYMENTS UNDER YOUR PAYMENT PLAN:

If you have selected a payment plan option to pay for Your policy or policies with Us, we will send You a bill or email notification when premium is due. Bills will show (1) the billed minimum amount due on Your account for that month, and (2) the total balance due on Your account, including late and installment fees, if any have been charged. On or before the due date We specify in Your bill, You will be required to pay Us the total billed minimum amount shown in order to stay current in your payments due to Us (excluding any policy or policies that are pending cancellation).

Any time a payment is late and You fall behind on the amount that is owed to Us for the policy premium, we will issue a policy cancellation notice for failure to pay the premium, and we may charge you a late fee. For the first two times you fall behind, if You pay the total amount due before the cancellation effective date indicated in the notice, the policy or policies will remain in effect. If, however, We issue a third cancellation notice for nonpayment of premium, We will accelerate the remaining payments due under the payment plan and require You to pay **the full outstanding policy premium (not just the total billed minimum amount in the most recent bill) on or before the cancellation effective date.** If You do not pay the full outstanding balance on or before the cancellation effective date, We will cancel Your policy. If Your policy or policies are cancelled or expired, Your enrollment in an electronic payment option will continue, despite the fact that the policy(s) have been cancelled with Selective and may remain in effect until such time as any payment for any earned premiums, audit balances or other amounts related to your account are settled. If more than one policy is subject to a payment plan, We will apply partial payments proportionately to the billed minimum amount for each policy. Any policy that is not paid in full after this allocation will be subject to cancellation for nonpayment of premium, as provided in the policy.

Selective Insurance
Main Administrative Offices
40 Wantage Avenue Branchville
New Jersey 07890
(973) 948-3000

"Selective Insurance" refers to the following affiliated insurers:
Selective Insurance Company of America, Selective Way Insurance Company, Selective Insurance Company of South Carolina, Selective Insurance Company of the Southeast, Selective Insurance Company of New York, Selective Insurance Company of New England, Selective Casualty Insurance Company, Selective Fire and Casualty Insurance Company, and Selective Auto Insurance Company of New Jersey. The declarations page of your policy identifies the insurance carrier that issued your "Selective Insurance" policy.

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF PENNSYLVANIA

---

JUL-BUR ASSOCIATES INC. ~~AND~~and
JULIE'S
BOTTEGA

Plaintiffs,

vs.

SELECTIVE INSURANCE COMPANY OF
AMERICA and SELECTIVE INSURANCE
COMPANY OF THE SOUTHEAST

Defendants.

---

FIRST AMENDED
COMPLAINT

JURY TRIAL DEMANDED

No.: 2:20-cv-01977-TJS

---

Plaintiffs, Jul-Bur Associates, Inc., and Julie's Bottega, bring this Amended Complaint, alleging against Defendants, Selective Insurance Company of America and Selective Insurance Company of the Southeast, as follows:

## I.    NATURE OF THE CASE

1.    This is a civil action seeking declaratory relief arising from Plaintiffs' contract of insurance with the Defendants.

2.    In light of the Coronavirus global pandemic and state orders mandating all nonlife-sustaining businesses in the Commonwealth to cease operations and stay at home, Plaintiffs shut their doors on March 16, 2020.

3.    Plaintiffs' insurance policy provides coverage for all non-excluded business losses, and thus provides coverage here.

4.    As a result, Plaintiffs are entitled to declaratory relief that their business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

## II.    JURISDICTION

5.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332, because there is complete diversity of citizenship between Plaintiffs and the Defendants.

Plaintiffs are a Pennsylvania Corporation. Defendant Selective Insurance Company of America is a New Jersey Corporation with its principal place of business in New Jersey. Defendant Selective Insurance Company of the Southeast is an Indiana Corporation with its principal place of business in Indiana. Further, ~~Plaintiff~~ Plaintiffs have suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value those business losses. *Id.* at § 1332(a).

6.     The Court has personal jurisdiction over the Defendants because at all relevant times they have engaged in substantial business activities in the Commonwealth of Pennsylvania. At all relevant times Defendants transacted, solicited, and conducted business in Pennsylvania through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in Pennsylvania.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the Defendants are corporations that have substantial, systematic, and continuous contacts in the Commonwealth of Pennsylvania, and as a result are subject to personal jurisdiction in this District.

8.     The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

### III.    PARTIES

9.     At all relevant times, Plaintiffs Jul-Bur Associates, Inc and Julie's Bottega (Julie's Bottega") ~~was~~ were authorized to do business and was doing business in the Commonwealth of Pennsylvania, County of Montgomery, Lower Merion Township, in Bala Cynwyd, PA, 19004. Julie's Bottega owns, operates, manages, and/or controls a retail clothing store by the same name

located at 156 Montgomery Avenue, Bala Cynwyd, PA 19004-2969.

10.    At all relevant times, Defendants Selective Insurance Company of America and Selective Insurance Company of the Southeast (collectively hereinafter referred to as "Selective") are corporations doing business in the Commonwealth of Pennsylvania, subscribing to Policy Number S 2 2 73 5 5 3 issued to the Plaintiffs for the period of March 15, 2020 to March 15, 2021. *See* Policy Declaration page, attached hereto as Exhibit 1. Defendants Selective transact business of insurance in the Commonwealth of Pennsylvania and within the County of Montgomery and the basis of this suit arises out of such conduct.

## IV.    FACTUAL BACKGROUND

### A.    Insurance Coverage

11.    On or about March 15, 2020, Selective entered into a contract of insurance with the Plaintiffs, whereby Plaintiffs agreed to make payments to Selective in exchange for the Defendants' promise to indemnify the Plaintiffs for losses including, but not limited to, business income losses at Plaintiffs' place of business located in Bala Cynwyd, PA at the address noted above in this Amended Complaint (the "Insured Property").

12.    The Insured Property consists of offices and a retail store located at 156 Montgomery Avenue, Bala Cynwyd, PA 19004-2969 which is owned, leased by, managed, and/or controlled by the Plaintiffs.

13.    The Insured Property is covered under a policy issued by Selective with Policy Number S 2273553 (hereinafter "Policy").

14.    The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, contamination coverage, and

additional coverages between the period of March 15, 2020 through March 15, 2021.

15.     Plaintiffs faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

16.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiffs' Insured Property. This additional coverage is identified as coverage under "Civil Authority."

17.     The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy.

18.     An all-risk policy is one that protects against catastrophic events, such as the Coronavirus (also known as COVID-19). COVID-19, a pandemic currently being experienced on a global scale, has resulted in the widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiffs' Insured Property and adjacent properties.

19.     Plaintiffs' all-risk policy includes coverage for business interruption, which is standard in most all-risk commercial property insurance policies, along with coverage for extended expenses.

20.     Plaintiffs purchased the aforementioned Policy expecting to be insured against losses, including, but not limited to, business income losses at its clothing store.

21.     Plaintiffs purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

22.     Based upon information and belief, the Policy provided by Defendants included language that is essentially standardized language adopted from and/or developed by the ISO ("Insurance Service Office"). The ISO, founded in 1971, provides a broad range of services to the property and casualty insurance industry. In addition to form policies, ISO collects and manages databases containing large amounts of statistical, actuarial, underwriting, and claims information, fraud-identification tools, and other technical services. ISO describes itself as follows: "ISO provides advisory services and information to many insurance companies. ... ISO develops and publishes policy language that many insurance companies use as the basis for their products." ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 11, 2020); see also Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 11, 2020).

23.     The language in the Policy is language that is "adhesionary" in that Plaintiffs were not participants in negotiating or drafting its content and provisions.

24.     Plaintiffs possessed no leverage or bargaining power to alter or negotiate the terms of the Policy, and more particularly, Plaintiffs had no ability to alter, change or modify standardized language derived from the ISO format.

25.     Plaintiffs purchased the Policy with an expectation that they were purchasing a policy that would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiffs as a result of Covid-19.

26.     At no time had Defendants, or their agents, notified Plaintiffs that the coverage that Plaintiffs had purchased pursuant to an all-risk policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, of providing benefits in the occurrence of business interruption and incurring

extended expenses.

27.     The purported exclusions of the Policy that Defendants have or are expected to raise in defense of Plaintiffs' claim under the Civil Authority coverage of the Policy are strained and contradictory to the provision of Civil Authority Order coverage.

28.     Furthermore, Defendants' expected application of exclusions to undermine Plaintiff's bargained-for coverage violates public policy of the Commonwealth of Pennsylvania as a contract of adhesion and hence not enforceable against Plaintiffs.

29.     Access to Plaintiffs' business was prohibited by Civil Authority Orders and the Policy provides for coverage for actual loss of business sustained and actual expenses incurred as a covered loss caused by the prohibitions of the Civil Authority Orders in the area of Plaintiffs' Insured Property.

30.     The reasonable expectations of Plaintiffs were that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety in the immediate area surrounding the Insured Property.

31.     The Policy does not exclude the losses suffered by Plaintiffs and therefore the Policy does provide coverage for those losses.

32.     Plaintiffs suffered direct physical loss or damage within the definitions of the Policy as loss of use of property, as in this case, constitutes loss or damage.

33.     The virus and bacterium exclusions do not apply because Plaintiffs' losses were not directly caused by a virus, bacterium or other microorganism. Instead, Plaintiffs' losses were caused by the entry of Civil Authority Orders, particularly those by Governor Wolf and by the Pennsylvania Department of Health, to mitigate the spread of COVID-19.

34.     Further, the Virus Exclusion was first permitted by state insurance departments

due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses, and so the Virus Exclusion offers mere clarification of existing law. To the contrary, before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage. Defendant's use of the Virus Exclusion to deny coverage here shows that the Virus Exclusion was fraudulently adopted, adhesionary, and unconscionable. *See* https://www.propertycasualty360.com/2020/04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/ (last visited June 12, 2020).

~~18~~35. Based on information and belief, the Defendants have accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown from a virus pandemic.

~~19.~~ ~~The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here.~~

### B. The Coronavirus Pandemic

~~20~~36. The scientific community, and those personally affected by the virus, recognize the Coronavirus (also known as Covid-19) as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the offices and retail store constituting the Insured Property.

~~21~~37. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three

days on plastic and stainless steel. See https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

~~22~~38. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

39. On March 11, 2020 the World Health Organization ("WHO") made theassessment that COVID-19 shall be characterized as a pandemic. *See* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited June 11, 2020).

~~23~~40. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

41. A particular challenge with the novel coronavirus is that it is possible for a person to be infected with COVID-19 but be asymptomatic. Thus, seemingly healthy people unknowingly spread the virus via speaking, breathing, and touching objects.

42. While infected droplets and particles carrying COVID-19 may not be visible to the naked eye, they are physical objects which travel to other objects and cause harm. Habitable surfaces on which COVID-19 has been shown to survive include, but are not limited to, stainless steel, plastic, wood, paper, glass, ceramic, cardboard, and cloth.

~~24~~43. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

44. Courts in France have ruled that business interruption coverage applies where businesses lost revenue as a result of being forced to close their doors due to orders of civil authority in response to the COVID-19 Pandemic. *See*

https://www.insurancejournal.com/news/international/2020/05/22/569710.htm  (Last Visited

June 11, 2020).

45.    The determinations by courts in France, and potentially other countries, that

coverage exists is consistent with public policy that in the presence of a worldwide Pandemic

such as COVID-19, businesses that possess business interruption insurance coverage should

recover their losses from the insurance carriers.

### C.    Civil Authority

25 46.   On March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of

Disaster Emergency, the first formal recognition of an emergency situation in the

Commonwealth as a result of COVID-19. *See* Exhibit 2.

26 47.   On March 19, 2020 Governor Wolf issued an Order requiring all non-life-

sustaining businesses in Commonwealth to cease operations and close all physical locations.

Businesses that were permitted to remain open were required to follow "social distancing

practices and other mitigation measures defined by the Centers for Disease Control." *See*

Exhibit 3; https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-

Business-Closure-Order  Closure-Order (last visited April 7, 2019 2020).

27 48.   On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of

Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe, and Montgomery Counties. *See*

Exhibit 4 3. On that same date, the Pennsylvania Department of Health issued a similar Order,

noting that "operation of non-life-sustaining businesses present the opportunity for unnecessary

Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 263 of 320
[Different first page setting changed from on in original to off in modified.]
Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 10 of 18

gatherings, personal contact and interaction that will increase the risk of transmission and the risk of community spread of COVID–19." *See* Exhibit ~~5~~4.

~~28~~49. On April 1, 2020, Governor Wolf extended the March 23, 2020 Stay at Home Order to the entire Commonwealth of Pennsylvania. *See* Exhibit ~~6~~5.

~~29~~50. The Pennsylvania Supreme Court recently clarified the Governor's Orders and supported Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020).

~~30~~51. Further, on April 10, 2020 President Trump seemed to support insurance ~~coverage~~ coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I

would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

3152. The President is articulating a few core points:

    a.    Business interruption is a common type of insurance, especially for restaurants (and by extension, other forms of retail establishments).

    b.    Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

    c.    This pandemic should be covered unless there is a specific exclusion for pandemics.

    d.    If insurers deny coverage, they would be acting in bad faith.

    e.    Public policy considerations support a finding that coverage exists and that Defendants' denial of coverage would be in violation of public policy.

3253. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of of the property becoming contaminated.

54. Plaintiffs did not have the ability or right to ignore these Orders made by agents of civil authority, including the Governor of Pennsylvania, as doing so would expose Plaintiffs to fines and sanctions.

[Different first page link-to-previous setting changed from off in original to on in modified.]
[Different first page setting changed from on in original to off in modified.]

[Different first page setting changed from on in original to off in modified.] Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 265 of 320
[Different first page setting changed from on in original to off in modified.]
Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 12 of 18

55.    However, Plaintiffs' adherence to the requirements of these Orders and proclamations was in furtherance of the Orders' intent to protect the public and supportive of public policy to attempt to minimize the risk of spread of COVID-19.

### D.    Impact on Julie's Bottega

~~33~~56.    As a result of the Orders referenced herein, Plaintiffs ceased retail operations on March 16, 2020 and continues to be shutdown.

~~34~~57.    As a further direct and proximate result of the Orders, Plaintiffs have been forced to lay off a part-time employee.

~~35~~58.    Plaintiffs' business, prior to the Orders, had normal business hours of Monday through Saturday, from 10 am to 5 pm, each day.

~~36~~59.    The months of March and April are typically the busiest months of the year for Plaintiffs 'business, and during those months, Plaintiffs typically held "trunk shows" involving the showing of a variety of the kinds of goods and materials that Plaintiffs sold, i.e., clothing, accessories, etc., which typically attracted a high volume of customers entering the Insured Property to view the goods and materials being displayed in the trunk shows. The trunk shows typically caused high foot traffic into the Insured Property of Plaintiffs.

~~37~~60. Plaintiffs' business is not a closed environment, and because people – staff, customers, community members, and others – cycle in and out of the retail store, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

[Different Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 266 of 320
[Different first page setting changed from on in original to off in modified.]
Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 13 of 18

Such                                                                                                                           risk

of contamination would have been heightened during March and April because of the aforesaid

trunk shows causing high foot traffic inside of the Insured Property.

~~38~~61. The Insured Property is more susceptible to being or becoming contaminated, as

both respiratory droplets and fomites are more likely to be retained on the Insured Property and

remain viable for far longer as compared to other facilities with open-air ventilation.

~~39~~62. Plaintiffs' business is also highly susceptible to rapid person-to-property

transmission of the virus, and vice-versa, because the activities of the staff require them to work

in close proximity to one another and because staff routinely assist customers in selecting

clothing, provide tailoring services, and assist in customers in trying on clothing for fit.~~.~~

63.     As a retail boutique of women's clothing, Plaintiffs' business, prior to the

Pandemic, frequently served customers who would visit the store and use the fitting rooms to

try on clothing.

64.     Trying on clothing necessarily involves customers touching many objects in

Plaintiffs' store and potentially person-to-person interaction.

65.     Because of COVID-19's persistence in locations and surfaces, and the prospect

of causing asymptomatic responses in some people, the risk of infection to persons is not only

high, but could also cause persons with asymptomatic responses to come into contact with

others who may develop serious illness.

66.     The Civil Authority Orders entered by the state and local government were the

lawful exercise of authority to protect the public and minimize the risk of spread of disease.

67.     Even with the entry of these Civil Authority Orders, there remained physical

impact not only within Plaintiffs' Insured Property but in and around the surrounding location

[Different first page header setting changed from on in original to off in modified.] Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 267 of 320

[Different first page setting changed from on in original to off in modified.]

Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 14 of 18

of the Insured Property due to the difficulty of identifying the presence of COVID-19.

68. Upon information and belief, individuals have contracted the COVID-19 illness in Montgomery County and/or in and around the location of the Insured Property, thereby confirming the presence of COVID-19 and its impact on property and locations in and around Plaintiffs' Covered Property, supporting the propriety of the entry of the Civil Authority Orders.

~~40~~69. The virus is therefore physically impacting Julie's Bottega and the Insured Property. Any effort by the Defendants to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiffs and the public.

~~41~~70. A declaratory judgment determining that the coverage provided under the Policy ~~will~~is necessary to prevent the Plaintiffs from being left without the vital coverage acquired to ensure ~~the~~ survival of ~~the~~Plaintiffs' business due to the shutdown caused by the ~~civil authorities' response is necessary~~Civil Authority Orders. As a result of these Orders, Plaintiffs have incurred, and ~~continues~~continue to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

V. **CAUSE OF ACTION**
**DECLARATORY RELIEF**

~~42~~71. Plaintiffs ~~re~~-allege and incorporate by reference into this cause of action each ~~and~~ and every allegation set forth in each and every paragraph of this Amended Complaint.

~~43~~72. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare

[Different first page setting changed from on in original to off in modified.] Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 268 of 320
[Different first page setting changed from on in original to off in modified.]

Case 2:20-cv-01977-TJS  Document 11  Filed 06/17/20  Page 15 of 18

the                                                                                                                                rights

and other legal relations of any interested party seeking such declaration, whether or not further

relief is or could be sought." 28 U.S.C. § 2201(a); *see also Principal Life Ins. Co. v. Minder,*

No. CIV A 08-5899, 2009 WL 1917096 (E.D. Pa. July 1, 2009); *Miller v. Liberty Mut.*

*Grp.,* 97 F. Supp. 2d 672 (W.D. Pa. 2000).

44<u>73</u>. An actual controversy has arisen between Plaintiffs and the Defendants as to

the rights, duties, responsibilities and obligations of the parties under the Policy in that

Plaintiffs contend and, on information and belief, the Defendants disputes and denies that:

a.   The Orders constitute a prohibition of access to Plaintiffs' Insured Property;

b.   The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c.   The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here.

d.   The Orders trigger coverage;

e.   The Policy provides coverage to Plaintiffs for any current and future civil authority closures of retail establishments in Montgomery County due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

f.   <u>Under the circumstances of the COVID-19 pandemic and the entry of the Civil Authority Orders, Plaintiffs had no choice but to comply with the Orders, and Plaintiff's compliance resulted in business losses, business interruption and extended expenses, and therefore constitute covered losses;</u>

g.   <u>Defendants' denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiffs' required compliance with the Orders, violates public policy;</u>

f<u>h</u>.   The Policy provides business income coverage in the event that

Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 269 of 320
*[Different first page link-to-previous setting changed from off in original to on in modified.]*
*[Different first page setting changed from on in original to off in modified.]*
Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 16 of 18

Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and

~~g~~i. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

~~45~~74. Plaintiffs seeks a Declaratory Judgement to determine whether the Orders ~~constitute~~ constitute a prohibition of access to Plaintiffs' Insured Property as Civil Authority as defined in the Policy.

~~46~~75. Plaintiffs further seek a Declaratory Judgement to affirm that the Orders trigger coverage.

~~47~~76. Plaintiffs further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs for any current and future Civil Authority closures of retail businesses such as Plaintiffs' in Montgomery County due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

~~48~~77. Plaintiffs do not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief.

## VI.     __PRAYER FOR RELIEF__

WHEREFORE, ~~Plaintiff~~Plaintiffs herein prays as follows:

1) For a declaration that the Orders constitute a prohibition of access to Plaintiffs' Insured Property.

[Different first page header setting changed from on in original to off in modified.]
[Different first page setting changed from on in original to off in modified.]

2)    For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

3)    For a declaration that the Orders trigger coverage under the Policy.

4)    For a declaration that the Policy provides coverage to Plaintiffs for any current and future closures in Montgomery County due to any physical loss or damage directly or indirectly arising out of the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters.

5)    For a declaration that the Policy's exclusions for virus and bacteria do not apply to the circumstances presented in this lawsuit and the kind and types of damages and losses suffered by Plaintiffs.

6)    For a declaration that under the circumstances of the COVID-19 pandemic and the entry of the Civil Authority Orders, Plaintiffs had no choice but to comply with the Orders and Plaintiff's compliance resulted in business losses, business interruption and extended expenses, and therefore constitute covered losses.

7)    For a declaration that Defendants' denial of coverage for losses that were caused by entry of the Civil Authority Orders and Plaintiffs' required compliance with those Orders violates public policy.

48)   For a declaration that the Policy provides coverage to Plaintiffs for any current, future and continued civil authority closures of non-essential businesses due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage

[Different first page link-to-previous setting changed from off in original to on in modified.]
[Different first page setting changed from on in original to off in modified.]

Case 2:20-cv-01977-TJS Document 19 Filed 07/22/20 Page 271 of 320
[Different first page link-to-previous setting changed from on in original to off in modified.]
[Different first page setting changed from on in original to off in modified.]

Case 2:20-cv-01977-TJS Document 11 Filed 06/17/20 Page 18 of 18

parameters.

~~5~~9)    For a declaration that the Policy provides business income coverage in the event

that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiffs' Insured

Property or the immediate area of the Plaintiffs' Insured Property.


10)    For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.


Dated: ~~April 21~~June 17, 2020                              Respectfully submitted,

                                                             */s/ Richard M. Golomb*
                                                             Richard M. Golomb, Esq.
                                                             Kenneth J. Grunfeld, Esq.
                                                             **GOLOMB & HONIK, P.C.**
                                                             1835 Market Street, Suite 2900
                                                             Philadelphia, PA 19103
                                                             Telephone: (215) 985-9177
                                                             Facsimile: (215) 985-4169
                                                             rgolomb@golombhonik.com
                                                             kgrunfeld@golombhonik.com

                                                             Arnold Levin, Esq.
                                                             Laurence ~~S.~~ Berman, Esq.




~~Esq.~~
                                                             Frederick Longer, Esq.
                                                             Daniel Levin, Esq.
                                                             Michael Weinkowitz, Esq.
                                                             **LEVIN SEDRAN & BERMAN~~, L.L.P.~~ LLP**
                                                             510 Walnut Street, Suite 500

Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com

paul.evans@beasleyallen.com

*Counsel for Plaintiff*

| Summary report: Litéra® Change-Pro TDC 10.1.0.700 Document comparison done on 6/17/2020 10:54:56 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Selective_ Julie_s Bottega complaint.PDF | |
| **Modified filename:** 2020-06-17 - Jul-Bur First Amended Complaint.PDF | |
| **Changes:** | |
| Add | 233 |
| Delete | 116 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 349 |

# EXHIBIT C

k5e2SocH

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    SOCIAL LIFE MAGAZINE, INC.,

 4                    Plaintiff,                New York, N.Y.

 5              v.                              20 Civ. 3311(VEC)

 6    SENTINEL INSURANCE COMPANY
      LIMITED,
 7
                    Defendant.
 8
      ------------------------------x          Teleconference
 9                                             Order to Show Cause

10                                             May 14, 2020
11                                             10:00 a.m.

12    Before:

13                    HON. VALERIE E. CAPRONI,

14                                             District Judge

15

16                            APPEARANCES

17

18    GABRIEL J. FISCHBARG
           Attorney for Plaintiff
19

20    STEPTOE & JOHNSON, LLP
           Attorneys for Defendant
21    BY:  CHARLES A. MICHAEL
           SARAH D. GORDON
22

23

24

25
```

k5e2SocH

1            THE COURT:  Good morning, everybody.

2            Do I have a court reporter on the line?

3            THE COURT REPORTER:  Good morning, your Honor.

4    Kristen Carannante.

5            THE COURT:  Good morning.

6            Okay.  Do I have Mr. Fischbarg for the plaintiff?

7            MR. FISCHBARG:  Yes, Judge.  Hi.

8            THE COURT:  Mr. Fischbarg, is anyone else on the line

9    for the plaintiff?

10           MR. FISCHBARG:  Yes.  The plaintiff is on a separate

11   phone available if you need evidence or --

12           THE COURT:  The principal of Social Life?

13           MR. FISCHBARG:  Yes.  He is in my office, you know,

14   more than six feet away, and --

15           THE COURT:  Okay.

16           And who do I have for the defendant?

17           MR. MICHAEL:  Good morning, your Honor.  This is

18   Charles Michael, from Steptoe & Johnson, for the defendant.

19   With me is my partner Sarah Gordon, who was just admitted *pro*

20   *hac vice*, and who will be doing the presentation today.

21           THE COURT:  Terrific.

22           All right --

23           MS. GORDON:  Good morning, your Honor.

24           THE COURT:  Good morning.

25           Only people who are speaking need to note their

k5e2SocH

1    appearances, and I have got those, Mr. Fischbarg and

2    Ms. Gordon.  Everybody else, please mute your telephone.

3         Also, if you hear that sound that sounds like someone

4    has dropped off the line once we get started, I need you to

5    stop talking so that I can make sure that I have still got the

6    court reporter and your adversary on the line.

7         So, Mr. Fischbarg, this is your motion, so you get to

8    go first.

9         MR. FISCHBARG:  Yes.  So I submitted a reply

10   memorandum, you know, in the afternoon yesterday.  I was just

11   wondering if --

12        THE COURT:  Yes.  I saw that.  Thank you.

13        MR. FISCHBARG:  Okay, so you were also able to read

14   it, I suppose?

15        THE COURT:  Yes, yes.

16        MR. FISCHBARG:  Okay.

17        So I guess the only other thing I want to add that's

18   not in the papers, and then I don't know if your Honor has any

19   issues that you want to talk about, is I mentioned that Liberty

20   Mutual had this exclusion for viruses and it is also evident

21   that other insurance companies have the same exclusion,

22   including Travelers Insurance Company, and they filed the --

23   they actually filed a federal lawsuit for declaratory judgment

24   in California, Docket No. 20 Civ. 3619, to preempt such claims,

25   I guess to enforce their exclusion for viruses.  So to the

k5e2SocH

1   extent that the defendant is claiming some kind of overreach by

2   the plaintiff here, I don't think it is proper.  There are

3   several insurance companies who are capable of putting in a

4   virus exclusion in their policies, and in this case there is

5   none.  So --

6          THE COURT:  Let me ask you something.  First off, I

7   want to start with basics.  Do you agree that New York law

8   applies?

9          MR. FISCHBARG:  Yes.

10         THE COURT:  All right.  So the -- is it the *Roundabout*

11   *Theatre* case?

12         MS. GORDON:  Yes, your Honor.

13         THE COURT:  First Department case?

14         MS. GORDON:  Yes, your Honor.  This is Ms. Gordon on

15   behalf of Sentinel.

16         THE COURT:  Thank you.

17         Mr. Fischbarg, it would seem to me that the *Roundabout*

18   case is a real problem for your position.

19         Would you like to explain to me why it doesn't

20   preclude your claim?

21         MR. FISCHBARG:  Yes.  That case applies to off-site

22   property damage rendering the premises at issue inaccessible.

23   So in this case, you don't have off-site property damage.  You

24   have on-site property damage.

25         THE COURT:  What is the damage?  There is no damage to

k5e2SocH

1    your property.

2              MR. FISCHBARG:  Well, the virus exists everywhere.

3              THE COURT:  It damages lungs.  It doesn't damage

4    printing presses.

5              MR. FISCHBARG:  Right.  Well, that's a different

6    issue, whether or not -- that's a different issue than the

7    *Roundabout* case that had to do with accessibility.  Now we are

8    jumping to the topic of whether a virus can cause physical

9    damage to a printing press, as your Honor mentioned.  So that's

10   a separate issue, and there are a lot of cases that we have

11   cited where this type of material, a virus, does cause physical

12   damage.

13             THE COURT:  What's your best case?  What do you think

14   is your best case under New York law?

15             MR. FISCHBARG:  Well, the problem is, under New York

16   law, there isn't much law.  The New Jersey federal court, in

17   *TRAVCO*, citing other cases, including from other circuits,

18   where physical damage had a broader interpretation that

19   includes loss of use and not just, you know, something where

20   you take a hammer and break an item.

21             THE COURT:  With loss of use, I mean, loss of use from

22   things like mold is different from you not being able to,

23   quote, use your premises because there is a virus that is

24   running amuck in the community.

25             MR. FISCHBARG:  Okay.  I would disagree with that.  I

k5e2SocH

1   would say virus and mold are equivalent.  They are both

2   physical items which, if they land on a surface or are on a

3   surface, just like spores that are also listed in the policy,

4   mold is also listed in the policy.  I would say that the virus,

5   mold spores --

6           THE COURT:  Hang on --

7           MR. FISCHBARG:  -- anything --

8           THE COURT:  A second.

9           Do I still have the court reporter?

10          THE COURT REPORTER:  Yes, your Honor.

11          THE COURT:  Do I have I still have, Ms. Gordon?

12          MS. GORDON:  Yes, your Honor.

13          THE COURT:  All right.  Go ahead.

14          MR. FISCHBARG:  Mold spores, bacteria, virus, all

15  those are physical items which damage whatever they are on,

16  whatever they land on.  And in this case, the virus, when it

17  lands on something and you touch it, you could die from it.

18  So --

19          THE COURT:  That damages you.  It doesn't damage the

20  property.

21          MR. FISCHBARG:  But you are not able to use the

22  property because it damages you.  So it's a corollary.  In

23  other words, this policy, by the way, mentions the word "virus"

24  and "bacteria" in it in two places.

25          THE COURT:  Where does it mention it?

k5e2SocH

1          MR. FISCHBARG:  It mentions it in the PDF as well as

2    Exhibit 9, page 36 and 37, which is page 7 of 25 of the special

3    property coverage form under additional coverages, section

4    5(j), where the insured would cover certain law enforcement

5    orders requiring you to -- requiring remediation.  But it

6    contains an exclusion for bacteria and viruses, and it uses the

7    word "bacteria" and it uses the word "virus."

8          So what this is really referring to is the *Legionella*

9    bacteria, which is causes Legionnaires' disease typically.

10   That's the bacteria.  Virus is obviously something else.  So

11   this is obviously referring to when there is a Legionnaires'

12   outbreak in a building, which could happen in New York pretty

13   often, every few years, and then the building gets shut down

14   and they have to do remediation.  Either they -- at least as a

15   bacteria*, Legionella* bacteria only occurs in water or pipes or

16   in mist.  So the building is shut down, and then you might have

17   to -- and now there is a new code where the buildings have to

18   test their cooling systems for *Legionella* bacteria.  So that's

19   an example where a bacteria causes property loss, or loss of

20   use, or damage, physical damage to property.  And I would say

21   the virus is equivalent to that bacteria.  So --

22         THE COURT:  But it's not.  This is different.  The

23   virus is not specifically in your property that is causing

24   damage.  It is everywhere.  The Legionnaire example is very

25   different.  Because it's not like Legionnaire is running

k5e2SocH

1     rampant throughout the city, and therefore your office building

2     can get closed.  It is that the Legionnaire bacteria is in that

3     building causing --

4               MR. FISCHBARG:  Yes.

5               THE COURT:  -- that building to be shut down.

6               MR. FISCHBARG:  Yes.  Yes.

7               So this virus is everywhere, including this office in

8     particular, this office.  In other words, they just did a

9     random survey of people going into a grocery store in New York,

10    and 20 percent tested positive.  So, Judge, that's just a

11    one-sample test.  So if the infection rate in New York City is

12    20 percent, then the virus is literally everywhere.  So if

13    it --

14              THE COURT:  That's what --

15              MR. FISCHBARG:  -- is --

16              THE COURT:  That is what has caused the damage is that

17    the governor has said you need to stay home.  It is not that

18    there is any particular damage to your specific property.

19              MR. FISCHBARG:  Well, okay, that's --

20              THE COURT:  You may not even have the virus in your

21    property.

22              MR. FISCHBARG:  Well, okay, that's -- I would

23    disagree.  The virus not just causes -- it lands on equipment,

24    it lands everywhere.  That's why all of these -- all of the

25    health guidelines from the World Health Organization and

k5e2SocH

1  elsewhere talk about wearing gloves, talk about wiping things

2  down, because it lands on surfaces.  It doesn't just get

3  transmitted through the air.  Another way of getting it is

4  through contact --

5          THE COURT:  Right, but what --

6          MR. FISCHBARG:  -- when it touches your --

7          THE COURT:  What evidence do you have that your

8  premises are infected with the COVID bug.

9          MR. FISCHBARG:  Well, the plaintiff is here.  He got

10  COVID.  So that's evidence there.

11          THE COURT:  Well, it's not evidence that he got it in

12  his office.

13          MR. FISCHBARG:  Yes, but, okay, it's not -- we're

14  not -- I don't know what burden of proof we are looking at,

15  whether it is beyond a reasonable doubt --

16          THE COURT:  No, it's --

17          MR. FISCHBARG:  -- or more likely than not, more

18  likely than not, he can testify where he was and more likely

19  than not he either got it from his office or he got it from his

20  home.  So that's a different burden of proof.  If you are

21  looking for some kind of burden of proof to show that he got it

22  from his office, I mean, that's an evidentiary question, and we

23  can get an epidemiologist to testify and get an expert to

24  testify on that, which I understand is going to happen in the

25  other lawsuits that have been filed across the country

k5e2SocH

1    regarding --

2              THE COURT:  Okay.

3              MR. FISCHBARG:  -- this issue.

4              THE COURT:  Okay.

5              MR. FISCHBARG:  So . . .

6              THE COURT:  Anything further, Mr. Fischbarg?

7              MR. FISCHBARG:  No, I guess that's all for now.  Thank

8    you.

9              THE COURT:  Okay.  Thanks.

10             Ms. Gordon.

11             MS. GORDON:  Thank you, your Honor.  This is Sarah

12   Gordon on behalf of Sentinel, and we agree with your Honor's

13   thoughts here.

14             The property policy has two distinct requirements

15   here.  There has to be direct physical loss or physical damage

16   to the property and the cause of the business interruption

17   damages they are seeking has to be direct physical loss or

18   damage, and the cause here is not physical damage.

19             We think, you know, as your Honor rightly pointed out,

20   *Roundabout* controls.  It is under New York law.  It's a First

21   Department case from 2002.  There are no subsequent decisions

22   that have disagreed or overturned it here in New York; and, if

23   anything, it has been confirmed by this . . .

24             THE COURT:  Hang on.  Did I lose my court reporter?

25             THE COURT REPORTER:  No, Judge.  I'm here.

k5e2SocH

1          THE COURT:  Did I lose Mr. Fischbarg?

2          MR. FISCHBARG:  No, I'm here.

3          THE COURT:  Okay.

4          MS. GORDON:  This court, your Honor, in *Newman Myers*,

5     adopted the exact same rationale for a law firm that was trying

6     to assert damages where there were no -- business interruption

7     damages, where there was no physical harm to the property.

8     And, you know --

9          THE COURT:  Let me interrupt you for a second.

10         So Judge Engelmayer in *Newman* went out of his way to

11    talk about a case where there was a bunch of -- there was a

12    rock slide which didn't actually hit the house or the premises,

13    and yet they got coverage and coverage for the invasion of

14    fumes.

15         MS. GORDON:  Yes, your Honor.

16         So for most of the cases, there are a number of them,

17    there is -- what has happened is something physically has

18    happened to the property that prevents people from being on the

19    property.  So, for example, in *Gregory Packaging*, in New

20    Jersey, there was ammonia leaked out and they couldn't be on

21    the property, so something physically happened.  You couldn't

22    necessarily see it or touch it, but there were fumes and it was

23    unsafe to be there.  The same thing with *Motorists*, where there

24    was *E. coli* in the well.  You couldn't be in that house because

25    you were exposed to other things that had the *E. coli*.

1          The property has to be entirely unusable or

2     uninhabitable for physical loss or damage to constitute a loss

3     of use.  We don't think that's the law in New York in any

4     circumstance, but even in those other cases, there is nothing

5     equivalent here.  Mr. Fischbarg's client can go to his

6     premises.  There is no ammonia or mold or anything in the air

7     that's not going to allow him on to the property.  In fact, the

8     governor's orders explicitly allow him to go to the property

9     and get his mail or do routine business functions.  The only

10    rule is that he has to stay six feet apart from other people.

11    So those cases are entirely distinguishable.

12          And when a business, a property is allowed to remain

13    open or people can still occupy the premises, there is no

14    direct physical loss or damage.  That was the case -- that's

15    what the court said in *Port Authority*, that's what happened in

16    *Mama Jo's*, where the restaurant was allowed to be open.  The

17    cases where there is direct physical loss or damage, you

18    literally cannot be on the premises because there is something

19    there that is making it uninhabitable, and here that just isn't

20    true.

21          THE COURT:  Okay.  Mr. Fischbarg I will give you the

22    last word.

23          MR. FISCHBARG:  All right.  So I would disagree that

24    he is allowed to go to the premises.  In fact, the opposite is

25    true.  The executive order 202.8 says it requires 100 percent

k5e2SocH

reduction.  So he can't go there, and he is not allowed to go

there, and that is a separate claim.  It is the civil authority

claim besides the breach of contract claim.

THE COURT:  Doesn't the executive order say -- I'm

sorry, which executive order are you talking about?

MR. FISCHBARG:  It is . . .

It is Exhibit 3 of the declaration, and then on page

2, "Each employer shall reduce the in-person workforce at any

work locations by 100 percent no later than March 22 at 8p.m."

And then it says --

THE COURT:  Right, but that doesn't mean the boss

can't go to the work location.

MR. FISCHBARG:  I would say he is -- he is an employee

and he can't go.  I think it does.  In my building here in New

York, there is nobody here.  I'm the only one.  There is no

bosses in any of the offices.

THE COURT:  There is nothing about the governor's

order that prohibits a small businessperson or a big

businessperson from going into their office to pick up mail, to

water the plants, to do anything like --

MR. FISCHBARG:  Your Honor --

THE COURT:  -- that, including employees that are

working.

MR. FISCHBARG:  Sorry.

MS. GORDON:  Your Honor, this is Sarah Gordon.  Oh, go

k5e2SocH

1    ahead, Mr. Fischbarg.

2              MR. FISCHBARG:  Okay.

3              Again, I would disagree.  I think the order is pretty

4    clear that 100 percent means that you are not supposed to go to

5    work, and that's what people have been doing in New York.  They

6    are not going into the office.  And to the extent they are

7    getting mail, I mean, there is work-arounds where the workers

8    in the building have been leaving it downstairs for people to

9    pick up, but the way it's been implemented is that 100 percent

10   means no one is going to any office.

11             THE COURT:  You are in your office.

12             MR. FISCHBARG:  Yeah, I'm not -- I'm considered, by

13   the way -- lawyers are considered essential, and if you are a

14   sole practitioner, you are considered essential.  So I have the

15   exclusion, and that's why I am here, but otherwise I wouldn't

16   be here.  So . . .

17             MS. GORDON:  Your Honor, if I may?  We submitted with

18   Mr. Michael's affidavit, Exhibit D, a printout from the Empire

19   State Development website.  And on question 13, it addresses

20   exactly this issue.  It says, "What if my business is not

21   essential but a person must pick up mail or perform a similar

22   routine function each day?"  And the answer provided by the

23   Empire State is, "A single person attending a nonessential

24   closed business temporarily to perform a specific task is

25   permitted so long as they will not be in contact with other

k5e2SocH

1    people."

2              THE COURT:  I thought I had read that somewhere.

3              MS. GORDON:  Yes.  It is in Mr. Michael's declaration,

4    and I think it's ECF 18-4, page 304.

5              THE COURT:  Okay.

6              MR. FISCHBARG:  Right, but I think the executive order

7    supersedes that is what I would argue.

8              THE COURT:  Okay.

9              Mr. Fischbarg, you have got to demonstrate a

10   probability of success on the merits.  I feel bad for your

11   client.  I feel bad for every small business that is having

12   difficulties during this period of time.  But New York law is

13   clear that this kind of business interruption needs some damage

14   to the property to prohibit you from going.  You get an A for

15   effort, you get a gold star for creativity, but this is just

16   not what's covered under these insurance policies.

17             So I will have a more complete order later, but your

18   motion for preliminary injunction is going to be denied.

19             Anything further for the plaintiff?

20             MR. FISCHBARG:  I guess just a housekeeping thing.  We

21   filed an amended complaint.  Are we going to deem it served or

22   does it have to be re-served?

23             THE COURT:  Has the defendant -- does the defendant

24   want to be reserved or will you take the amended complaint?

25             MR. MICHAEL:  Your Honor, this is Charles Michael.

k5e2SocH

1           We have entered a notice of appearance, and so I think

2     once they filed it on ECF, that service, we are happy to

3     consider it served.  That's fine.  And he does have one

4     amendment as of right.

5           THE COURT:  Correct.

6           MR. MICHAEL:  That was within his right to file it.

7           THE COURT:  Does defendant plan to move or answer?

8           MR. MICHAEL:  Probably to move.  We would have to

9     discuss it with our client, but I believe so.

10          THE COURT:  Okay.  What are the parties' position on

11    discovery while the motion to dismiss is pending?

12          MR. FISCHBARG:  Well, I would say there are two

13    motions filed -- there is one in the Eastern District of

14    Pennsylvania and one in, I think, the Northern District of

15    Illinois -- for an MDL, multi-district litigation, involving a

16    lot of lawsuits combining, so I think this might be happening

17    in each state until that motion is decided, and I think the

18    briefing schedule is in June --

19          MS. GORDON:  We -- your Honor --

20          MR. FISCHBARG:  -- so I think --

21          MS. GORDON:  Sorry, Mr. Fischbarg.

22          MR. FISCHBARG:  So I would say that this case might be

23    transferred to the multi-district panel at some point.

24          THE COURT:  Okay.  So, Mr. Fischbarg, what I am

25    hearing you say is that you are perfectly happy to have the

k5e2SocH

1   defendants not move until we find out whether or not your case

2   is going to get scooped up into the MDL?

3          MR. FISCHBARG:  Yes, correct.

4          THE COURT:  All right.  I presume that the defendants

5   are perfectly happy to do nothing until you hear back from the

6   MDL.

7          MS. GORDON:  Your Honor, I need to consult with my

8   client on that.  I'm not sure that that's true.  We don't think

9   these cases are appropriate for consolidation in the MDL for

10  many of the reasons which were evident today, given the

11  different states' conclusions on these laws.  So I need to

12  consult with my client on the motion practice.  We may intend

13  to want to move in any event.

14         THE COURT:  Okay.  Well, you could move, but if there

15  is a likely -- if there is some likelihood that they are going

16  to get scooped into the MDL, I'm not likely to decide it until

17  that decision is made.  So it is entirely -- I guess from my

18  perspective I don't really care, but from your client's

19  perspective, they may be making a motion to dismiss that's

20  unnecessary.  If you are right, and you may well be right, that

21  they are not going to MDL these kinds of cases, then all that's

22  happening is this is just being delayed into the summer for you

23  to incur fees making a motion to dismiss.

24         So why don't you talk to your client, figure out what

25  you want to do.  One way or the other, it does not seem to me

k5e2SocH

1    to make sense to proceed with discovery in this matter,

2    certainly under the circumstances that everyone is in, and

3    particularly the plaintiff is in, strapped for revenue, until

4    we figure out whether a lawsuit is going to go forward.

5          So talk to your client, figure out whether -- the

6    defendant should talk to Sentinel.  Figure out whether you are

7    happy staying this case pending a decision on the MDL or not,

8    and just write me a letter and let me know.

9          MS. GORDON:  Yes, your Honor.  Thank you.

10         MR. MICHAEL:  Your Honor --

11         THE COURT:  Anything further from the plaintiff?

12         MR. MICHAEL:  Just one housekeeping matter.  This is

13   Charles Michael, again, for the defendant.

14         THE COURT:  Okay.

15         MR. MICHAEL:  I just wondered if there was any special

16   procedures for ordering the transcript or if we go just through

17   the normal Southern District website?  I didn't know, under the

18   COVID circumstances, if there is something different we should

19   do.

20         THE COURT:  I don't think there is anything different,

21   but we have got the court reporter on.

22         So, Madam Court Reporter, is there anything different

23   they need to do?

24         THE COURT REPORTER:  At the end of this proceeding, I

25   am going to email the parties with their instructions.

k5e2SocH

1            THE COURT:  Okay.

2            MR. MICHAEL:  Terrific.  Thank you so much.

3            THE COURT:  Anything further from the plaintiff,

4   Mr. Fischbarg?

5            MR. FISCHBARG:  No.  Thank you, Judge.

6            THE COURT:  Anything further from the insurance

7   company?  Ms. Gordon?

8            MS. GORDON:  No.  Thank you, your Honor.

9            THE COURT:  All right.  Thank you, all.

10            MR. FISCHBARG:  Okay.  Bye, Judge.

11            MR. MICHAEL:  Thank you, your Honor.

12                         oOo

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

_____

GAVRILIDES MANAGEMENT COMPANY,

                    Plaintiff,

vs.                                        File No. 20-258-CB

MICHIGAN INSURANCE COMPANY,

          Defendant.

_____/


          DEFENDANTS MOTION FOR SUMMARY DISPOSITION
   BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE
          LANSING, MICHIGAN - WEDNESDAY, JULY 01, 2020



APPEARANCES:

For the Plaintiff:          Matthew J. Heos-P73786
                            3452 East Lake Lansing Road
                            East Lansing, Michigan 48823
                            517-256-4240


For the Defendant:          Henry Emrich-P29948
                            2025 East Beltline Avenue SE-#600
                            Grand Rapids, Michigan 49546
                            616-285-0143


Recorded/transcribed by:    Susan C. Melton, CER 7548
                            Certified Electronic Reporter
                            (517) 483-6500 x6703

TABLE OF CONTENTS

WITNESSES PAGE

None.

EXHIBITS

None admitted.

1   |   Lansing, Michigan

2   |   Wednesday, July 01, 2020

3   |   2:58:57 PM

4   |   THE COURT: This is, pardon me if I massacre

5   this, Gavri--, Gavrilides Management Company, et al versus

6   Michigan Insurance Company, docket number 20-258-CB. And

7   this is the time set for Defendant Michigan Insurance

8   Company's Motion for Summary Disposition. And just for the

9   record, could I have your appearances, please?

10   |   MR. HEOS: Yes, your Honor. Matthew Heos and Nick

11   Gavrilides is here in the courtroom also with me. He is

12   the owner of the immediate plaintiff company's.

13   |   MR EMRICH: Henry Emrich on behalf of Michigan

14   Insurance Company, your Honor and my assistant Chenney

15   Ward.

16   |   THE COURT: Okay, thank you. And your motion, Mr.

17   Emrich, if you wish to go ahead.

18   |   MR. EMRICH: Thank you, your Honor. I am going to

19   assume that the Court has read all of the pleadings in

20   this case, so I'll try not to belabor some of the points.

21   I think the, the key fact that we need to focus on is that

22   as we've argued is that there's no question here but the

23   policies that insure Mr. Gavrilides properties against,

24   against direct physical loss or damage to the property and

25   contrary, any claim with the policy benefits in question

3

1       this business income coverage is illusory, the policy in

2       question here clearly provides that for the business

3       coverage, the business income coverage to apply and, and

4       most of the other primary coverages under their policy,

5       there must be a direct physical loss of or damage to the

6       insured property in order for it to apply.

7                 And I think it's important as we'll discuss

8       later in our argument depending on what Mr. Heos has to

9       say, why this is important, we must focus on the fact that

10      there must be direct physical loss or damage to the

11      insured property and not direct physical loss of use of or

12      damage to the property as has been suggested by Mr.

13      Gavrilides and his attorney in order for the coverage at

14      issue to apply.

15                While I acknowledge, your Honor, that this is a

16      somewhat unique, extraordinary if you will, matter to be

17      filing at this point in the proceedings as our initial

18      pleading; I think it's important to understand that when

19      we look at Mr. Gavrilides complaint, it does not contain

20      one single allegation that this insured property has in

21      any way been damaged or lost.  To the contrary, the

22      allegations in the complaint affirmatively allege that the

23      plaintiff business interruption claim is based on the

24      "Stay at Home" orders of Governor Whitmer. There is no

25      allegation of any kind that the property in question has

4

1    in any way been damaged, lost or anything of the sort.

2         Given that this motion has been brought under

3    2.116(c)(10), plaintiff must produce some evidence to

4    contradict the uncontroverted facts that have been alleged

5    not only in the complaint, but in the affidavit submitted

6    Mr. Gavrilides and in any of the other materials that Mr.

7    Heos has attached to his response as, as indicated, most

8    importantly, the affidavit of Mr. Gavrilides that

9    reiterates the admissions in the complaint that there has

10   not been any loss of or damage to either of the properties

11   for which they seek coverage.

12        The insureds property today exists in the very

13   same condition as it existed the day prior to the

14   effective date of the "Stay at Home" order.  They have not

15   been lost, they have not been damaged, they have not

16   required any repairs because of any damage to those

17   properties. The business operation, its, its operation as

18   a restaurant today is, is the same as the day prior to the

19   effective date of the order, albeit with some modifi-

20   cations that had been required to avoid grouping and to

21   maintain social distancing in, in a sense improvements to

22   the real estate.  Not repairs, you know, and, and it's

23   been maintained as a take-out, take-out operation at least

24   until recently when they resumed the dining operation.

25   There has been no loss of or damage to either building

5

1       that has prevented the plaintiff from operating as a

2       restaurant or entering it for that matter if--, as they

3       have. If plaintiffs wanted to sell either building today,

4       they could do so. And while plaintiffs have provided some

5       speculative evidence about the decreased value of that

6       property, although, as I read Mr.--, as I read the

7       materials that Mr. Heos kindly attached to his response,

8       the fact of the matter is it pointed out in that article

9       was that while they operation of a commercial property may

10      get harder, it's not impossible to operate it in the

11      future under our new normal.

12             Because plaintiffs complaint, the affidavit, the

13      other information that has been provided to your Honor

14      provides no evidence of any damage to that property.

15      Plaintiffs could never prove that either property suffered

16      any direct physical loss from the imposition of Governor

17      Whitmer's emergency order.  And thus, could never recover

18      business interruption coverage under this policy based on

19      the facts that have been presented to the Court. The same

20      holds true under the business cover, income coverage, if a

21      civil authority prevents or prohibits access to either

22      property because of direct physical damage to an adjacent

23      or nearby property for the very same reason.  There has

24      been no direct physical loss or damage to any adjacent

25      property that has been alleged, that has been provided to

1    the Court in Mr. Heos response. And frankly, when you look

2    at the order that they have, that is at issue in this

3    case, there's nothing there that prevents access to Mr.

4    Gavrilides properties whatsoever.

5                In summary, your Honor, there are no facts

6    alleged in the complaint or in any of the materials that

7    I've looked at, including Mr. Gavrilides affidavit, that

8    shows there has been direct physical loss of or damage to

9    the insured property. And for those reasons, your Honor,

10   we believe that our motion--, for those reasons alone, we

11   believe our motion for summary disposition should be

12   granted.

13               I'd just like to make a couple of additional

14   points before I shut up. I really believe summary

15   disposition is warranted on this basis alone and I would

16   turn the Court to the case that we've discussed in our, in

17   our brief, your Honor, that's referred to Universal

18   Insurance Production versus Chubb. And that's the decision

19   of the Eastern District of Michigan involving a claim that

20   involved insured property. It was damaged by a pervasive

21   odor that developed in the property as a result of mold

22   that grew in the property because of some water seepage.

23   And why that case is important is because it discusses the

24   Michigan Rules of Contract Interpretation, that still

25   apply today, policy language is clear and unambiguous on

7

1  its face, which we believe is clearly the case here that

2  states that the words and the terms of the policy should

3  be enforced utilizing plain and commonly understood

4  meanings.

5  And when I said earlier that that's important

6  when we talk about what direct physical loss of or damage

7  to property means, it means we look at those words. We

8  don't add words such as loss of use, that Mr. Heos and Mr.

9  Gavrilides have added in order to understand what we're

10  talking about here. We look at the language in the policy.

11  Every case that Mr. Heos produced your Honor, says the

12  very same thing. In Univer--, Universal, like here, the

13  policy was an 'all-risk' policy that required, like here,

14  direct physical loss or damage to the insured property in

15  order to trigger coverage unless that coverage was

16  excluded.

17  As Universal pointed out, applying a dictionary

18  meaning of direct and physical as meaning something

19  immediate or proximate as a premise to something that is

20  distant or incidental and physical meaning something that

21  has a material existence meant in the context of a loss

22  involving a contaminant that, unlike here, per the  uncon-

23  troverted allegations of the complaint and other evidence

24  produced by plaintiff in response to this motion. That in

25  order for direct physical loss of the property in this

8

1       context, the contaminant must actually alter the structure

2       integrity of the property in order to trigger coverage

3       under language that is at issue in this case.  And it

4       didn't happen in Universal, as the Court denied coverage

5       there, granted affirmed summary disposition. And

6       importantly your Honor, it hasn't even been alleged in

7       this case. Regardless of any authority to the contrary,

8       anywhere else in the country, this remains the law in our

9       courts when interpreting policy terms at issue. There is a

10      requirement that there be direct physical loss of or

11      damage to property. And the allegations produced here in

12      the complaint and the evidence that's been attached have

13      specifically acknowledged no such contamination and no

14      such damage to the property as a result of that contami-

15      nation.

16              As in Universal, your Honor, the mere presence

17      of odor or even mold was not any evidence of structural or

18      tangible damage to the insured property. And as such, no

19      direct physical loss or damage to the property had-, was

20      occurred. Here, your Honor, we have the very same thing

21      except that we have not even had any allegations of any

22      damage to the property caused by this unfortunate, this

23      horrible virus.

24              Finally, and although we do not believe the

25      Court even has to get to this point, even if we assume for

1    purposes of this motion that contamination occurred on
2    each premises and that somehow effected the structural
3    integrity of either building, again, neither scenario is
4    alleged. And even if it were, we do not believe under the
5    circumstances and the science that exists that it would
6    necessarily constitute direct physical loss over damage to
7    the property. The buyer's exclusion of the policy, which
8    clearly and unequivocally states that it applies to all
9    coverages and endorsement and that the company will not
10   pay for loss or damages caused by or resulting from any
11   virus, bacteria or other microorganism that induces or is,
12   is capable of inducing physical distress, illness or
13   disease. And Lord knows, that that has certainly been the
14   case with what's happened with Covid-19 throughout our
15   country.

16            Clearly, your Honor, that exclusion, again, I
17   don't believe you even have to get there, but that
18   exclusion would clearly exclude any claim here even if
19   plaintiff's could prove direct physical loss of or damage
20   to the insured property or any nearby property that
21   resulted in a civil authority issuing an order prohibiting
22   access to the property.  As of eight days ago, your Honor,
23   they have only been few jurisdictions in this country,
24   Florida and Pennsylvania, that have discussed and applied
25   this, a similar exclusion as at issue in this case and in

1      every one of those cases, the Court has enforced that

2      exclusion as written because it's clear and unambiguous.

3      Again, your Honor, for all the reasons that we've set

4      forth here today and the brief that we filed and our

5      reply, we request that the Court grant our Motion for

6      Summary Disposition at this time. Thank you.

7                  THE COURT:    Thank you. Mr. Heos?

8                  MR. HEOS: Thank you, your Honor and may it

9      please the Court. And obviously Mr. Emrich and I have a

10     different interpretation of direct physical loss of or

11     damage to covered properties because here the loss comes

12     from the issue of the executive order restricting use of

13     property. Physically you cannot use for, for dine-in

14     services any of the interior of the building for a period

15     of time. And a complete prohibition isn't contemplated by

16     the language of the contract, I think a limited

17     restriction also falls within the coverage. And I think

18     that if you're gonna accept the defendants argument you

19     would have to limit the meaning to destruction of the

20     physical building itself, but we know that the coverage

21     extends to non-destructive loss, civil authority being

22     one.

23                  I put in example in the brief subterranean

24     pollution, you can look at asbestos or a computer virus is

25     something that would occur that there would be no physical

11

1    destruction to the property itself. The fact of the matter

2    is that Mr. Gavrilides can't use the covered properties

3    because of or he's lost rather the use of those properties

4    because of the order and it looks like that will continue

5    in some form for a while. So, I think that counsel is

6    wrong in trying to limit the scope even with the case law

7    he cited, most of which is persuasive and not binding.

8    That's number one, Judge.

9              And as for the virus exclusion itself, the only

10   case law we have relates to person to person transmission

11   of a virus at the covered property.  And I think that fits

12   more with what's going on. We see in the news that Harpers

13   in East Lansing and even the Hotcat in Kalamazoo is making

14   headlines of people contracting Covid there. But, the

15   impetus of the order was to protect public health and

16   welfare, which is the governor's duty. It's not caused by

17   a virus. It would be the same order as with the damn in

18   Midland being issued to protect public health and welfare.

19   It wasn't caused by a flood.  It was caused by the

20   Governor's duty to act and protect the people she's

21   charged with protecting and I think that's what happening.

22             Or it's distinguishable from the case and I

23   think it's Bowler, the case cited regarding the virus. And

24   I think that if you go further in accepting defendant's

25   position, then we get into the illusory promise of well if

1     the government issues an order, we're not gonna cover it

2     because any decision of a government body or group of

3     people is excluded. And so then, you get into the circle

4     in the contract where if you're going to buy into counsels

5     logic, it would make that provision illusory. And for

6     those reasons, I think that the motion should actually

7     roll back on the defendants because the language to

8     support the claim, to the extent that the Court thinks

9     there's a deficiency in my pleading and is gonna grant

10    defendants motion, I'd like Leave to Amend the Complaint.

11    But, I don't think that's the case here. And with that,

12    I'll leave it, if the Court would like to ask any

13    questions, I'm happy to take them.

14              THE COURT: I don't have any. Thank you. I'll

15    give Mr. Emrich rebuttal time.

16              MR. EMRICH: Thank you, your Honor. Your Honor,

17    what I would say is that when we talk about these cases

18    that Mr. Heos has mentioned that might provide coverage in

19    certain situations, I read those cases a little while ago

20    and I'm kind of tired reading some of these cases about

21    insurance coverage. But, the point in every one of those

22    cases is that the condition she referred to actually

23    caused damage to the property.

24              In this case, there has not been any such

25    damage. And if we look at what the coverage for business

13

1       loss or business--, the business income loss that they're

2       seeking says, it says that if the business, the coverage

3       would apply if the business operation is suspended

4       provided the suspension must be caused by the direct

5       physical loss of or damage to property. In this case, that

6       hasn't occurred. Nothing prevents Mr. Gavrilides from

7       using that property. It has been used as such. The fact

8       that there may be other coverages that may provide some

9       limited coverage, they're against what Mr. Heos is arguing

10      because clearly, if those coverages were covered under

11      this language, then why have a special coverage that

12      provides certain conditions for its application.

13              The point is, in each of those civil authority

14      cases that he talked about, the property actually

15      sustained damage. Here it didn't sustain damage. As to his

16      claim in this case, that he wants an opportunity to amend

17      his complaint if the Court feels compelled to grant my

18      motion, what is that going to accomplish? He's already

19      alleged in his complaint and his client has already signed

20      an affidavit where he no doubt put his hand up and swore

21      to the contents of that affidavit in which he said there

22      has been no damage to that property.

23              We don't create coverage by-, because somebody

24      thinks they ought to have coverage. But, that, that, that

25      whole line of cases Roy versus Continental Insurance and

14

1   some of the other cases in our, in our brief that we

2   cited, clearly supports the notion that the reasonable

3   expectation concept doesn't apply in Michigan. It just

4   doesn't cut it. There is no coverage here, your Honor.

5   That exclusion is clear. If the Court feels that there may

6   be or that there may be a situation that would give rise

7   to, but again, you have to come forward at the time that

8   you, that you respond to this motion with some evidence

9   that suggests that. That hasn't happened here. I mean even

10  when you look at the response that he's filed, he talks

11  about scenario's that have absolutely no bearing to this

12  case.

13          And you know, I'll just make one last point,

14  your Honor, you know, when I was a young Prosecutor, I had

15  the benefit of being able to argue a number of cases to

16  juries that required me to prove the defendant's guilt

17  beyond a reasonable doubt. And in those cases, I was

18  trained to listen closely to the defendant's argument and

19  had been the case where the facts were particularly

20  egregious, a defense attorney would often not even talk

21  about those facts and talk about the law. And he talked

22  about how that law was somehow created this reasonable

23  doubt in hopes of creating some confusion on the part of

24  one juror who might then find in his clients favor because

25  reasonable doubt existed. And, and in those cases, I would

15

1    make sure that when I got up in rebuttal, just as I have

2    been given the opportunity to here, I would point that out

3    to the jury and indicate to them that there's a reason for

4    that. And that's because they didn't want you to talk

5    about the facts that clearly supported conviction.

6              On the other hand, if it was a case where the

7    law, you know, or the facts may have been murky, but the

8    law was clear, the defense attorney would only focus on,

9    you know, on those facts and not talk about the law. And

10   again, I point that out to the jury there.  But, in this

11   case, you know, and there were cases back then to, like

12   our case here that were neither supported by the facts or

13   the law. Which I believe is clearly the case in this case.

14   And the defense attorney would get up and argue something

15   that to the jury that had absolutely nothing to do with

16   the case in hopes of confusing them. Just like Mr. Heos

17   has suggested by talking about these asbestos cases or

18   some of these other cases that have nothing to do with

19   this.

20             Well in this case, when you look at his

21   responsive pleading, he talks about an accident situation

22   that has absolutely no application here. Nothing to do

23   with this case. While in his argument, he starts out

24   talking about a discussion of the virus of racism and as

25   there, as there, we would point out, if we were in front

16

1    of a jury, just like I'd point out to them and I'm

2    pointing out to you, it hasn't got anything to do with

3    this case. Your Honor, the reason for that and the reason

4    for the topic of that is that he knows that neither the

5    facts or the law support his claim and nothing he could

6    file as an amendment would change that.

7            He is hoping to somehow create this little bit

8    of possibility, some scintilla that some evidence is gonna

9    pop up that shows that the property has been damaged in

10   hopes that he could trigger coverage. And as this Court

11   knows under the cases we've discussed in our brief, that

12   is not sufficient to deny summary disposition in a case

13   that clearly warrants it even at this early stage.

14           Thank you your Honor for your patience. Thank

15   you Mr. Heos, we've never met. I've heard a lot of good

16   things about you. Mr. Gavrilides, nice to have met you,

17   very sorry for the situation you're in. It's just crazy

18   all the way around. And just like having to argue this

19   case on TV is really just disconcerting for me.  But, in

20   any event, thank you your Honor for your patience.

21           THE COURT: Thank you. You're on Youtube not TV.

22   But--

23           MR. EMRICH: I meant screen.  Yeah, whatever.

24           THE COURT: Right.

25           MR. EMRICH: The screen.

17

1          THE COURT: I, I did read the briefs. I studied

2     them very carefully and I've listened to the argument of

3     counsel today. And taking all the-, that together I, I

4     note that the plaintiff speaks of and focuses on arguments

5     about access to the property, use of the property and

6     definitions of loss and damage. But, the first inquiry has

7     to start with a full look, not just isolating some words

8     or phrases from the policy. But, a full look at the

9     coverage that's provided under the policy.

10         Coverage is provided for actual loss of business

11    income sustained during a suspension of operations. The

12    policy goes on to provide the 'suspension must be caused

13    by direct physical loss of or damage to property.' And it

14    also provides 'the loss or damage must be caused by or

15    result from a covered cause of loss. The causes of loss

16    special form provides that a covered cause of loss means

17    risks of direct physical loss.'

18         So, whether we're talking about the cause for

19    the suspension of the business or the cause for the loss

20    or the damage, it is clear from the policy coverage

21    provision only direct physical loss is covered. Under

22    their common meanings and under federal case law as well,

23    that the plaintiff has cited that interprets this standard

24    form of insurance, direct physical loss of or damage to

25    the property has to be something with material existence.

1    Something that is tangible. Something according to the one

2    case that the plaintiff has cited from the Eastern

3    District, that alters the physical integrity of the

4    property.  The complaint here does not allege any physical

5    loss of or damage to the property. The complaint alleges a

6    loss of business due to executive orders shutting down the

7    restaurants for dining, for dining in the restaurant due

8    to the Covid-19 threat.

9          But, the complaint also states that a no time

10   has Covid-19 entered the Soup Spoon or the Bistro through

11   any employee or customer and in fact, states that it has

12   never been present in either location. So, there simply

13   are no allegations of direct physical loss of or damage to

14   either property. The plaintiff seems to make in the

15   briefing, at least, two arguments about the language in

16   the coverage provision and what it means.

17         The first argument is that the plaintiff says

18   coverage applies to "direct physical loss or damage to

19   property."  Even if that were the wording of the coverage

20   provision, it wouldn't save the plaintiff from the

21   requirement that the loss or damage must be physical and

22   the analysis could end right there. But, I have to go on

23   to say that this is not even the wording of the coverage

24   provision. Coverage according to the policy applies to a

25   suspension caused by "direct physical loss of or damage to

19

1    property." So, I'm not going to get into a detailed
2    analysis of the rules of grammar. But, common rules of
3    grammar would apply to make that phrase a short-cut way of
4    saying "direct physical loss of property or direct
5    physical damage to property." So, again, the plaintiff
6    just can't avoid the requirement that there has to be
7    something that physically alters the integrity of the
8    property. There has to be some tangible, i.e., physical
9    damage to the property.

10           Then the plaintiff in the briefing, at least,
11   seems to make a second argument that and this is not 100%
12   clear, but, it seems like the plaintiff is saying that the
13   physical requirement is met because people were physically
14   restricted from dine-in services. But, that argument is
15   just simply nonsense. And it comes nowhere close to
16   meeting the requirement that there's some, there has to be
17   some physical alteration to or physical damage or tangible
18   damage to the integrity of the building.

19           So, the next argument that the plaintiff makes
20   is that the virus and bacteria exclusion is vague and
21   can't apply here.  The plaintiff has not adequately
22   explained how the term virus is vague. And in fact,
23   supplies a completely workable, understandable, usable
24   definition of the word virus. The argument in this regard
25   really seems to be more that the virus exclusion doesn't

1      apply. And it goes something like this as far as I can

2      tell, first, a virus can't cause physical loss or damage

3      to property because virus' harm people, not property.

4      Second, the damage caused here was really caused by

5      actions of the civil authority to protect public health.

6      And then third, therefore, coverage for acts of any

7      person, group, organization or governmental body applies.

8      But, that argument bring us right back to the direct

9      physical loss or damage requirement.  Again, going back to

10     the cause of loss special form B, as in boy, exclusions

11     provides that acts of government are only covered when

12     they result in a covered cause of loss.  A covered cause

13     of loss, again, is direct physical loss. So, even if the

14     virus exclusion did not apply, which the plaintiff has not

15     supported that it doesn't apply, I only argue that it's

16     vague, which I reject. But, even if it did not apply, it

17     could only be coverage for governmental actions that

18     resulted in direct physical loss or damage.

19            And then, finally, the plaintiff argues that the

20     policy has a contradiction in it that renders it illusory.

21     So, the plaintiff says that the policy extends coverage

22     for governmental acts. But, then, it takes it away in the

23     causes of loss special form.  But, that's simply not true.

24     Coverage is provided for actual loss of business income

25     sustained during the suspension of operations.  However,

1    according to the coverage provision, the suspension must

2    be caused by direct physical loss of or damage to

3    property.  And governmental acts are likewise covered if

4    it results in a covered cause of loss, which is again, a

5    direct physical loss.  There is no granting of coverage

6    and then excluding the same coverage in the policy. As a

7    matter of fact, the policy is consistent throughout and

8    consistent with federal law cited by the plaintiff. It

9    requires physical loss or damage.

10            There is a virus exclusion even if plaintiff was

11   alleging, was alleging, even if there were allegations in

12   the complaint alleging actual physical loss or damage,

13   which the complaint does not do. But, there is a virus

14   exclusion that would also apply. And governmental action

15   that results in direct physical loss is covered. But

16   again, there is no direct physical loss alleged here.

17            Now, I have to address a little bit this, that

18   it was brought as a (c)(10) motion. The actually the

19   defendant hasn't provided any support by way of factual

20   support, depositions, affidavits, et cetera, for a (c)(10)

21   motion. So, if the defendant doesn't do that, then the

22   plaintiff has no burden under Maiden versus Rosewood. So,

23   there's no shifting burden until the moving party first

24   does it. But, I don't think it properly is labeled a

25   (c)(10) motion. I think it's a (c)(8) motion. Because this

22

1       is the motion that can be decided as a matter of law. Take

2       all the allegations in the complaint as true and examine

3       nothing more than the contract upon which the complaint is

4       based, the policy of insurance and as a matter of law, the

5       plaintiffs complaint cannot be sustained. And although the

6       plaintiff has requested a chance to amend without any

7       indication of how they would do that, there actually is no

8       factual development that could change the fact that the

9       complaint is complaining about the loss of access or use

10      of the premised due to executive orders and the Covid-19

11      virus crisis. So, there's no factual development that

12      could possibly change that or amendment to the complaint

13      that could possibly change that those things do not

14      constitute the direct physical damage or injury that's

15      required under the policy as I've outlined.

16              So, for those reasons, I am granting the

17      Defendant's Motion for Summary Disposition.  I'm doing it

18      under MCR 2.116 (c)(8). And Mr.—

19              MR. EMRICH: Thank you, your Honor.

20              THE COURT: Mr. Emrich, will you submit an order?

21              MR. EMRICH: Certainly will, your Honor.

22              THE COURT: Okay.

23              MR. EMRICH: Thank you.

24              THE COURT: Thank you.

25              MR. HEOS: Thank you very much.

1              THE COURT: That will conclude our hearing.

2              (Hearing concludes at 3:32:35 PM.)

3

4

5

6

7

8

9

10       STATE OF MICHIGAN)

11                        )

12       COUNTY OF INGHAM)

13

14

15

16       I certify that that this transcript, consisting of 24

17   pages, is a complete, true, and correct transcript of the

18   proceedings and testimony taken in this case on Wednesday,

19   July 01, 2020.

20

21

22   July 09, 2020                    _____

23                                    Susan C. Melton-CER 7548

24                                    30th Circuit Court

25                                    313 West Kalamazoo Avenue

26                                    Lansing, Michigan 48901

27                                    517-483-6500 ext. 6703

28

                                      24

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GAVRILIDES MANAGEMENT COMPANY
LLC, GAVRILIDES PROPERTY
MANAGEMENT LLC, & GAVRILIDES
MANAGEMENT WILLIAMSTON LLC,

Case No.  20-258-CB

HON. JOYCE DRAGANCHUK

        Plaintiffs,

v

MICHIGAN INSURANCE COMPANY,

        Defendant.

| | |
|---|---|
| Matthew J. Heos (P73786) | Henry S. Emrich (P29948) |
| THE NICHOLS LAW FIRM, PLLC | SECREST WARDLE |
| Attorney for Plaintiffs | Attorneys for Defendant |
| 3452 E. Lake Lansing Road | 2025 East Beltline Ave SE, Suite 600 |
| East Lansing, MI  48823 | Grand Rapids, MI 49546 |
| 517-256-4240 | 616-285-0143 |
| mheos@nicholslaw.net | hemrich@secrestwardle.com |

### ORDER GRANTING DEFENDANT MICHIGAN INSURANCE COMPANY'S MOTION FOR SUMMARY DISPOSITION

At a session of said Court, held in the
City of Mason, County of Ingham,
State of Michigan, on  *July 21, 2020*

PRESENT:    Hon. JOYCE DRAGANCHUK
                 CIRCUIT COURT JUDGE

This matter having come before the Court on Defendant Michigan Insurance Company's Motion for Summary Disposition, and the Court having reviewed the briefs from both parties and heard oral argument from both parties in open court, and the Court being otherwise fully advised in the premises:

Defendant Michigan Insurance Company's Motion for Summary Disposition has been GRANTED for the reasons stated from the bench on the record.

3

**IT IS SO ORDERED** that the judgment in favor of Defendant is entered as a matter of law pursuant to MCR 2.116(c)(8), and that this matter is dismissed with full prejudice.

    This Order resolves the last pending claim and closes the case.

Hon. JOYCE DRAGANCHUK
CIRCUIT COURT JUDGE    P-39417

6146558_1

SECREST WARDLE

4