IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUL-BUR ASSOCIATES, INC.** *et al.,* | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **SELECTIVE INSURANCE** | : | |
| **COMPANY OF AMERICA** *et al.,* | : | **No. 20-1977** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                                        FEBRUARY 11, 2021

Insurance is a creature of state law. Congress' passage of the McCarran Ferguson Act in 1945 effectively ensured that states were the primary insurance regulators. 15 U.S.C. § 1011 *et seq*. The thinking is that state, rather than federal, oversight can be more sensitive to local economic and social circumstances. So, the state systems of regulation can more readily protect consumer interests. The Pennsylvania Insurance Department, headquartered in Harrisburg, regulates the Commonwealth's insurance market, including overseeing the rates and language of commercial policies. It is also in Harrisburg that last year, the Governor directed non-essential businesses throughout the Commonwealth to cease operations and close their physical locations. The closure orders precipitated untold number of business income insurance claims.

Jul-Bur Associates, Inc. and Julie's Bottega (collectively, Julie's) filed one such claim. Julie's own and operate a women's apparel boutique in a Philadelphia suburb. After the Commonwealth issued shutdown orders causing it and many other non-essential businesses to temporarily close shop, Julie's sought coverage under its commercial property insurance policy. But the insurer denied the claim.

Julie's seeks a declaration that it is entitled to coverage for losses that it has incurred as a result of the closure orders under the policy issued by Selective. Selective responded with a motion

to dismiss the Amended Complaint. For the reasons that follow, the Court declines to exercise jurisdiction over this declaratory judgment action.

## BACKGROUND AND PROCEDURAL HISTORY

In March 2020, Pennsylvania Governor Tom Wolf announced a series of statewide orders described as intended to slow the spread of the COVID-19 virus. On March 6, Governor Wolf issued a Proclamation of Disaster Emergency, formally recognizing the effects of the pandemic within the Commonwealth. Doc. No. 11 (Am. Compl.) ¶¶ 46-48. A week later, Julie's received a commercial property insurance policy through Selective Insurance Company of America and Selective Insurance Company of the Southeast. *Id.* ¶ 11. The Policy runs from March 15, 2020 to March 15, 2021. *Id.* ¶ 10.

Julie's alleges that it purchased the all risk insurance policy in anticipation that a closure might cause it to lose business income. *Id.* ¶¶ 20-21, 25. It further alleges that, at the time of purchase, Defendants did not notify Julie's that the all-risk policy contained exclusions and provisions that would deny the insured coverage for losses caused by COVID-19. *Id.* ¶ 26.

The very next day, March 16, Julie's shut its doors. *Id.* ¶ 2. On March 19, the Commonwealth suspended all non-essential business operations. *Id.* ¶ 47. Because Julie's is considered non-essential, it was impacted by this order (although it was already temporarily shuttered).

Julie's alleges that the months of March and April are typically its high-volume months. It typically hosts "trunk shows" at its boutique, which generates a large amount of foot traffic at the covered premises. *Id.* ¶ 59. The nature of its business, which encourages clients to try on clothing and which provides tailoring services, necessarily brings people into close contact. *Id.* ¶¶ 61-64. Upon information and belief, Julie's alleges that individuals contracted the virus in the surrounding county as well as in and around the location of its covered premises.

Julie's submitted a claim to Selective for reimbursement for losses allegedly caused by the shutdown orders and Julie's compliance with them. Specifically, Julie's sought coverage under the Civil Authority provision of the Policy.[1] Selective denied the claim on the grounds that the business merely sustained economic losses which are not covered by the Policy. In the alternative, the Policy's virus exclusion barred coverage for indirect damage caused by the COVID-19 virus. *Id.* ¶ 34.

## LEGAL STANDARD

Under the Declaratory Judgement Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). The DJA is thus an exception to the general rule that federal courts have the duty to exercise jurisdiction conferred on them. *Id.* The court may decline jurisdiction for a case brought under the DJA "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

## DISCUSSION

The sole claim in the Amended Complaint arises under the Declaratory Judgment Act. Although neither party has challenged this Court's jurisdiction, the Third Circuit Court of Appeals has concluded that a district "court may *sua sponte* exercise its discretion not to hear a case under

---

[1] Although Julie's did not attach a copy of the Policy to the Amended Complaint, Selective included a copy along with its motion. Doc. No. 19. The Court can consider the language in the Policy even though it was not attached to the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (the court may consider matters extraneous to the pleadings when a document is "integral to or explicitly relied upon in the complaint").

The Court accepts that the document provided by Selective is identical to that which Julie's references in the Amended Complaint.

3

the Declaratory Judgment Act." *V&S Elmwood Lanes, Inc. v. Everest Nat'l Ins. Co.*, No. CV 20-3444, 2021 WL 84066, at *2 (E.D. Pa. Jan. 11, 2021) (citing *Impala Platinum Holdings Ltd. v. A-1 Specialized Servs. & Supplies*, No. 16-1343, 2016 WL 8256412, at *23 (E.D. Pa. Sept. 16, 2016)).

## I. Retaining Jurisdiction under the DJA

When the plaintiff brings independent legal claims in addition to declaratory relief, the district court has a "virtually unflagging obligation" to exercise jurisdiction. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017). However, the Court may decline jurisdiction of an action seeking only declaratory relief. In weighing whether to decline jurisdiction, the Court applies the *Reifer* factors set forth by the Third Circuit Court of Appeals. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014).

As a threshold matter, Julie's does not assert an independent legal claim, such as claiming breach of contract, in addition to seeking declaratory relief. Am. Compl. ¶ 77 ("Plaintiffs do not seek any determination of whether the Coronavirus is physically in or at the Insured Property, amount of damages, or any other remedy other than declaratory relief."). So, the Court does not have an absolute obligation to retain jurisdiction. For that reason, the Court will proceed to considering the *Reifer* factors.

## II. The *Reifer* Factors

The Third Circuit Court of Appeals has articulated the following list of non-exhaustive factors for whether a district court should decline jurisdiction under the DJA:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

4

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146. When the court is faced with resolving new or unsettled state law matters, our Court of Appeals has counseled that the "proper relationship between state and federal courts requires district courts to 'step back'" and allow the claims to proceed through the state courts. *Id.* at 141 (quoting *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000)). Factors five, six, and eight are especially relevant in the insurance context. *Id.* at 140. Moreover, the appellate court has noted, "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Summy*, 234 F.3d at 136.

Here, factors one, three, and five weigh in favor of declining jurisdiction.

As to factor one, because the Court is sitting in diversity, it must apply state law. *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) ("The District Court, exercising diversity jurisdiction in [a] declaratory judgment action, was obliged to apply the substantive law of Pennsylvania."). But here, the very issues the Court is presented with and asked to resolve are novel questions of state law. The Commonwealth's appellate courts have not yet articulated the contours of COVID-19 related insurance coverage. This includes addressing whether "direct physical loss" in the context of commercial insurance policies can cover the sorts of business losses sustained by Julie's—loss of use of function. In this case, because the issues of

state law are not well settled, the Court is asked to predict how the Pennsylvania Supreme Court would interpret "direct physical loss." Although the Court can issue a decision as to how it expects Pennsylvania courts to rule, those issues are themselves presently winding through the state courts.

For factor three, the Court must consider the public's interest in settling the uncertainty of the obligation. The Third Circuit Court of Appeals has cautioned that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atlantic Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003). That is the case here. "[T]he public interest will not be better served by the federal court deciding the insurance coverage issue when the state court, which has more familiarity with the underlying cases, can equally well decide the issue." *Burke-Dice v. Gov't Emps. Ins. Cos.*, No. CV 17-3198, 2017 WL 3485873, at *4 (E.D. Pa. Aug. 15, 2017).

At this point, the Pennsylvania state courts have not yet built a body of case law addressing certain commercial issues peculiar to the COVID-19 pandemic. *V&S Elmwood Lanes*, 2021 WL 84066, at *4. This is likely due, in no small part, to the recency of the pandemic and the extent and nature of losses claimed.

To be sure, the Court can, and routinely does, apply general principles of insurance contract interpretation under Pennsylvania law. But insurance disputes arising from government shutdown orders described as intending to address the pandemic pose a new slate of state-law specific issues. Moreover, Julie's has asked for a declaration that, "Defendants' denial of coverage for losses . . . violates public policy." Am. Compl. ¶ 73(g). Resolution of these claims is "deeply tied to Pennsylvania public policy," and it is well documented that the inability to cover business losses, for many insureds, can mean closing shop permanently. *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, No. 2:20-CV-1066, 2020 WL 5651598, at *5 (W.D. Pa. Sept. 23, 2020). And, the alleged losses here are not the stuff of a run of the mill insurance dispute. The closure orders had

far-reaching consequences beyond a single covered premise.[2] To that end, the Court is mindful of the compelling public interest in having these issues adjudicated by the Commonwealth courts when it has discretion to decline jurisdiction.

Similarly, as to factor five, the Court should give "serious consideration," *Reifer*, 751 F.3d at 148, to the fact the same issues are pending in Pennsylvania state courts. *See Covid Coverage Litigation Tracker*, U. Penn. Carey L. Sch., available at cclt.law.upenn.edu/cclt-case-list (last visited Feb. 11, 2021) (tracking approximately 200 cases filed in state and federal courts in Pennsylvania).

These cases filed in state court likewise present the same issues the Court faces here—whether the same boilerplate language in commercial property insurance contracts entitles the insured to coverage for losses caused by COVID-19. To the extent the Court can avoid a potentially inconsistent decision with those reached by state courts, it will step back and refrain from adding a square to an already disjointed patchwork of decisions.

Factor four is neutral. Declaratory relief is available under the Pennsylvania Declaratory Judgments Act, 42 Pa. C.S. § 7531 *et seq*. The parties can assert the same claims and defenses in state court as in a federal forum. Similarly, factor two is neutral. Adjudication in either forum poses roughly the same amount of inconvenience or convenience to both parties. The parties are not yet engaged in discovery so the parties will not be forced back to square one if the Court declines jurisdiction.

---

[2]   Pennsylvania reportedly has experienced the second-highest rate of business closures among the states, with three in ten businesses closing as a result of statewide government-mandated closure orders. U.S. Bureau of Labor Statistics, 2020 Results of the Bureau Response Survey to the Coronavirus Pandemic, available at https://www.bls.gov/brs/2020-results.htm (last accessed Feb. 11, 2021). In the Philadelphia region alone, reports tally that hundreds of small businesses have permanently closed. Christian Hetrick and Sophie Burkholder, *COVID-19 Has Shut Hundreds of the Philly-Area's Small Businesses, Yelp Says. And That's Just for Starters*, Phila. Inquirer (Aug. 9, 2020), available at https://www.inquirer.com/business/small-business/philadelphia-small-business-shut-yelp-ppp-loans-retail-restaurants-temple-wharton-20200809.html (last accessed Feb. 11, 2021).

Factors six and seven do not appear to apply in this case. There is no pending state court proceeding as between these two parties, so res judicata is not a concern. Likewise, factor eight is irrelevant because this insurance case does not implicate the duty to defend.

Having carefully weighed the *Reifer* factors—particularly factors one, three, and five, the Court exercises its discretion to decline jurisdiction over this case. The Court's decision aligns with other federal district courts within this Circuit who likewise have declined jurisdiction over COVID-19 business interruption cases when the plaintiff has presented only a request for declaratory relief. *See, e.g.*, *i2i Optique LLC v. Valley Forge Ins. Co.*, No. CV 20-3360, 2021 WL 268645 (E.D. Pa. Jan. 27, 2021); *V&S Elmwood Lanes*, 2021 WL 84066; *Mattdogg, Inc. v. Phila. Indem. Ins. Co.*, No. CV206889FLWLHG, 2020 WL 6111038 (D.N.J. Oct. 16, 2020); *Venezie Sporting Goods*, 2020 WL 5651598; *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. CV 20-787, 2020 WL 5051459 (W.D. Pa. Aug. 27, 2020); *Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, No. CV 20-2561, —— F.Supp.3d ——, ——, 2020 WL 4735498 (E.D. Pa. Aug. 14, 2020); *Umami Pittsburgh, LLC d/b/a Umami v. Motorists Com. Mut. Ins. Co.*, No. 20-2561 (W.D. Pa. Aug. 14, 2020). In each of these cases, the courts declined to exercise jurisdiction to "permit state courts to resolve unsettled state law matters" arising out of language in the commercial property insurance policies. *Reifer*, 751 F.3d at 141. The Court agrees that the singular challenges posed by the COVID-19 pandemic and the resulting legal challenges that implicate state insurance law and by extension, public policy, are best reserved to the Commonwealth's appellate courts.

8

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants the motion to dismiss without prejudice to Plaintiffs' right to file a declaratory judgment action in state court. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**